UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

JONATHAN R. MILLER,          .     Case No. 2:21-cv-02219-ER
                             .
          Plaintiff,         .
                             .     U.S. Courthouse
     v.                      .     601 Market Street
                             .     Philadelphia, PA 19106
BREM MOLDOVSKY, et al.,      .
                             .
          Defendants.        .
                             .     July 1, 2021
. . . . . . . . . . . . ..         2:07 p.m.

TRANSCRIPT OF INITIAL PRETRIAL CONFERENCE/
MOTION TO DISMISS HEARING
BEFORE HONORABLE EDUARDO C. ROBRENO
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          JONATHAN R. MILLER, ESQ.
                            100 Overlook Center, 2nd Floor
                            Princeton, NJ 08540

For the Defendant:          BREM MOLDOVSKY, ESQ.
                            BREM MOLDOVSKY, LLC
                            100 North 18th Street, Suite 300
                            Philadelphia, PA 19103

                            GERALD JAY POMERANTZ, ESQ.
                            GERALD JAY POMERANTZ & ASSOCIATES
                            1500 John F. Kennedy Boulevard
                            2 Penn Center, Suite 1320
                            Philadelphia, PA 19102

Audio Operator:             KENNETH DUVAK

TRANSCRIBED BY:             NEAL R. GROSS

Proceedings recorded by electronic sound
recording, transcript produced by transcription service.

1             THE COURT:  Good afternoon.  Please be seated.  Okay.
2   And you may remove your mask, if you so wish.
3             Okay.  We are here to consider, among others, the
4   motion to dismiss.  Let me see.  We don't have a docket here.
5   Okay, here we go.
6             So, Mr. Moldovsky, want to proceed?
7             MR. MOLDOVSKY:  Yes, Your Honor.  Would you like us
8   to rise or sit?
9             THE COURT:  You can do it here.  You should rise, but
10  you can either come here or do it from there, whatever is
11  comfortable.
12            MR. MOLDOVSKY:  I'll do it here with my notes, if
13  that's --
14            THE COURT:  Okay.  Very well.  Now, we know Mr.
15  Pomerantz is somewhere here in the building making his way
16  here, but go ahead.
17            MR. MOLDOVSKY:  And I'm sure he's okay with going
18  head, Your Honor.
19            THE COURT:  Okay.
20            MR. MOLDOVSKY:  Your Honor, I want to be sure and
21  non-repetitious of the motion that was filed in the related
22  matter.  That's Mr. Pomerantz.
23            THE COURT:  Mr. Pomerantz has joined us.
24            MR. POMERANTZ:  I apologize, Your Honor.
25            THE COURT:  It will be fine.  You should wear a tie

1    in court.

2              MR. POMERANTZ:  I had one.  I expected to be here ten

3    minutes ago --

4              THE COURT:  Okay, okay.  Why don't we go ahead?

5              (Simultaneous speaking.)

6              MR. MOLDOVSKY:  And, accordingly, Your Honor, for the

7    motion to dismiss, I want to focus on what I think is the most

8    important point -- and, particularly, with bearing in mind, if

9    Your Honor didn't grant the other motion, why is this any

10   different?

11             THE COURT:  Right.

12             MR. MOLDOVSKY:  So, with that, the first thing I

13   would say is this: clearly, with Mr. Miller, the main part of

14   the case against him was malpractice.  He was my attorney.  And

15   breach of fiduciary duty.  We had an expert report, we did a

16   certificate of merit.  They attacked that.  Judge Baldi upheld

17   it at that level.  Judge Baldi said we could reach a jury on

18   the breach of fiduciary duty claims.

19             And, accordingly, that being the main part of the

20   case with Miller, even in a light most favorable to the

21   plaintiff at this stage of the case, even with that, and even

22   looking at the phone stuff in the light most favorable -- and

23   I'll get to that in a moment -- still, clearly with him, and

24   very different than Elner who, if anything, you know, we had

25   explained, was a part of it.  But the main part of the

1    malpractice -- Elner wasn't sued for malpractice and breach of

2    fiduciary duty.  He was for aiding and abetting, but the main

3    part of that case, for him, arguably, was the phone.

4            For Miller, the main part of that case was clearly

5    the malpractice.  The malpractice was legitimate.  And I would

6    even say that the certificate of merit alone, and then being

7    attacked and surviving that, and then Judge Baldi's comments,

8    that that equals probable cause.

9            Something else that's different.  In that case, they

10   made a point of saying, well, when we dismiss -- or when we let

11   Elner parties out of the case, we just amended the complaint

12   and then they weren't a part of it; whereas, with Mr. Miller,

13   we went through the formal device that has been held by case

14   law -- and, again, it's all in our papers -- held by case law

15   to be that if you do it by that device, even with prejudice,

16   it's been held to be that it's not a termination in their

17   favor.  And so, here, when we did it without prejudice, it

18   certainly wasn't.

19           THE COURT:  Now, let me ask you a question.  When you

20   dismiss the Bucks County case, what do the Pennsylvania Rules

21   of Procedure require you to do?

22           MR. MOLDOVSKY:  Require us to file like we did.  And

23   I can look at the exact form, but the exact note is giving

24   notice that we are terminating without prejudice discontinuing

25   or --

1           THE COURT:  But do the rules require either consent

2    of the other party or order of the court?

3           MR. MOLDOVSKY:  I'm very comfortable answering that,

4    Your Honor, as a practitioner of this.  No, you can just do it,

5    and that's why they accepted it.  There was no --

6           THE COURT:  But what do the rules provide us?

7           MR. MOLDOVSKY:  The rules allow that you can do it --

8           THE COURT:  Because, you know, the federal rules

9    would require you to obtain consent of all parties if an answer

10   or motion for summary judgment has been filed.

11          MR. MOLDOVSKY:  In that matter, Your Honor, if

12   nothing else, no answer had been filed yet.

13          THE COURT:  Okay.  So you --

14          MR. MOLDOVSKY:  So that's part of the --

15          THE COURT:  There was no answer filed in that case,

16   so, under the rules, you were authorized to dismiss the case.

17          MR. MOLDOVSKY:  Right, exactly.  And the case file

18   holds that when you do that at that phase and there's no

19   answer, et cetera --

20          THE COURT:  And did the judge enter some kind of

21   order or was that your precipe -- is what you did, you filed a

22   precipe of dismissal?

23          MR. MOLDOVSKY:  I believe so, Your Honor.  Dismissal,

24   discontinuance.  We can check exactly.

25          THE COURT:  Okay.

1           MR. MOLDOVSKY:  But, yes, that's exactly right.
2    Under that rule -- and the case law says, under that rule, when
3    you do that, it's not a --
4           THE COURT:  No answer had been filed.
5           MR. MOLDOVSKY:  No answer had been filed.
6           THE COURT:  Okay.  Go ahead.  So you are
7    distinguishing, which was going to be my first question, what's
8    the difference between the Elner theory and the Miller theory.
9           MR. MOLDOVSKY:  My answer would be, while they're
10   both involved with the same thing, the difference would be
11   that, for him, the major part of that case was that we were
12   suing him in legal malpractice, again, with full --
13          THE COURT:  When you say "him," you mean Miller?
14          MR. MOLDOVSKY:  Mr. Miller.  Excuse me.  I'm sorry,
15   Your Honor.  Mr. Miller, for legal malpractice, breach of
16   fiduciary duty, based on years of things.  That was the main
17   part of the case for Miller.
18          For Mr. Elner, the bigger part of the case, which is
19   only so big, was about the phone records, which, by the way, we
20   still don't know if they had tens of calls, 50 calls, a hundred
21   calls.  What we do know is that for all of those calls there
22   were only two.  Any of my lines only go to Pennsylvania.  So I
23   was always in Pennsylvania.  If I wasn't in Pennsylvania, I was
24   at my 610 cell.  We know, for the critical call on
25   Thanksgiving, I was right in my home in Pennsylvania.

1          So, I don't want to overstate too much what we went
2    over before, but I did want to point out that, looking at it in
3    the light most favorable to them, particularly for Mr. Miller,
4    who, more than Mr. Elner, knew me for years, had been at the
5    home office in Pennsylvania, says in papers that he knows that
6    that's my main place, that he knows I'm there.  He doesn't
7    think there's any chance that I'm sitting up in an office
8    building in New York.  Again, we'll show that Elner knew also,
9    and we showed here.
10         And, actually, that's something else.  We didn't
11   gather it together as much, and we'll still have more, but here
12   we did submit papers showing that Elner knew I was in
13   Pennsylvania, he was mailing to Pennsylvania, the phone record
14   is only in Pennsylvania.
15         THE COURT:  And what are the damages for that cause
16   of action?
17         MR. MOLDOVSKY:  So I'm clear, Your Honor, what you're
18   asking, you're asking about the underlying --
19         THE COURT:  For a violation of the wiretap, yes.
20         MR. MOLDOVSKY:  I can check it exactly, but,
21   basically, I think the statute invokes, and we cite to it in
22   there, but I think it invokes damages and it invokes this,
23   like, X amount per violation.  And, you know, the statute can
24   involve not just the recording of it, the possession of it, the
25   use of it.  So even four years later, if you're sitting on top

1  of it, it's still a fresh issue.

2          THE COURT:  You think transcripts are covered by the

3  statute?

4          MR. MOLDOVSKY:  I do.  My short answer is I really

5  do.  It's the transcribing of it, so the transcript, too.  I do

6  and we can check it, but I do believe so.

7          THE COURT:  Okay, okay, okay.  I got your point here,

8  Mr. Moldovsky, to begin with.  Let me ask Mr. Miller, and maybe

9  we can join what the issues are here.

10          So, Mr. Miller, what's the difference here between

11  your case and Mr. Elner's case?

12          MR. MILLER:  Well, according to Mr. Moldovsky, the

13  cases are nearly identical and the theories are nearly

14  identical.

15          MR. MOLDOVSKY:  You agree with that?

16          MR. MILLER:  I think he's put himself into a box with

17  respect to collateral estoppel.

18          With respect to his claims against me, may I

19  approach, Your Honor?

20          THE COURT:  Yes.

21          MR. MILLER:  Excuse me.  It's been a year and a half

22  since I've been in a courtroom.  I want to get the full

23  experience.

24          THE COURT:  Absolutely.

25          MR. MILLER:  Just to hit on it, the initial, my

1  initial point in my brief, Your Honor, in my case, Mr.

2  Moldovsky has not submitted a legal brief.  He's not submitted

3  anything that this court can properly consider on a Rule 12(b)

4  motion.

5          To the extent that he's pointing to papers that were

6  filed in Mr. Elner's case and saying it's the same thing, I

7  think we can all go home at this point.

8          To the extent that Mr. Moldovsky is now saying that

9  the focus of his case against me was not the wiretaps, and I

10  can address all of the points, Your Honor, but not the wiretaps

11  but the alleged malpractice.  For purposes of the Rule 12(b)(6)

12  motion, Your Honor, the only thing that can be considered is

13  what's actually in the complaint.  There's no basis for looking

14  at any alleged statements by Mr. Stretten (phonetic) who

15  sometimes is wearing the hat of an attorney with respect to Mr.

16  Moldovsky, and sometimes he's wearing the hat of an expert

17  witness.  This is not appropriate for consideration on a Rule

18  12(b)(6) motion.

19          THE COURT:  But let me ask you a little broader

20  question.  When you look at your complaint and you look at Mr.

21  Elner's complaint, putting aside the defenses, just in terms of

22  the complaint, is it the same theories?

23          MR. MILLER:  I think I present the facts a little bit

24  differently than Mr. Haines (phonetic) does, and that's, in

25  large part, to my great familiarity with what happened in Bucks

1    County for nine months.  I presented different.  I focused less

2    on the jurisdictional issue, although I do focus that there was

3    never, a venue was never appropriate in Bucks County, nor

4    anywhere else in Pennsylvania with respect to me.  The

5    jurisdictional issue, I didn't argue that in Bucks County.  I'm

6    a Pennsylvania attorney.  I don't know that I can that I'm not

7    subject to jurisdiction in Pennsylvania.  That's not an

8    argument I'm going to make.  But with respect to venue,

9    certainly, I was not subject to venue in Pennsylvania.

10            With respect to --

11            THE COURT:  You mean in Bucks County?

12            MR. MILLER:  Anywhere in Pennsylvania, Your Honor.

13            THE COURT:  Okay.

14            MR. MILLER:  I have no, if you look at the

15    Pennsylvania venue statute, I'm not subject to venue in Bucks

16    County.  And you can go through the 50 or 60 counties of

17    Pennsylvania, I'm not subject to venue there.  I am a

18    Pennsylvania attorney, for what that means; but, as I read the

19    venue statute, the venue was inappropriate for me.  But that's

20    not a part the --

21            THE COURT:  Right.

22            MR. MILLER:  -- of my action here.  The part of my

23    action is that, to the extent that he's alleged in Bucks County

24    malpractice, I don't know how many claims, ten different

25    flavors of malpractice --

1          THE COURT:  Okay.  You've both been to, and I think

2     that's because you've been in combat for so long --

3          MR. MILLER:  Yes.

4          THE COURT:  -- and I'm trying to get the big picture

5     here --

6          MR. MILLER:  Okay.

7          THE COURT:  -- as to how this is going to proceed

8     because I see the Elner v. Moldovsky and Miller v. Moldovsky as

9     being pretty close in context.  There may be slightly different

10    facts, of course, because they're different individuals.  But,

11    ultimately, it would seem to me that the two cases have some

12    connection or some relationship.

13         Then I'm looking at Moldovsky v. Elner and that's a

14    wiretap case, and that brings us back to the Bucks County case.

15     So we're sort of going all the way around here, and there has

16    to be, there should be some way that would put us on an

17    efficient path to resolution here.  That's what I'm trying to

18    seek at this particular point.

19         I don't think, Mr. Moldovsky, that at this stage of

20    the proceeding you're entitled to a motion to dismiss.  I don't

21    think the record is sufficiently developed to determine in the

22    light most favorable to the plaintiff that they have not

23    asserted a plausible cause of action.  I think you have a

24    number of defenses to that, but the defenses are both factual

25    and legal and they need to be developed.

1          What I would like to seek is some assistance from you

2    as to how to handle these cases.  Mr. Miller, do you think

3    that, for pretrial purposes, it would be efficient and fair to

4    consolidate Elner v. Moldovsky and Miller v. Moldovsky?

5          MR. MILLER:  The short answer, Your Honor, is yes.  I

6    believe that Mr. Elner has his own counsel.  I can't speak for

7    Mr. Elner or his counsel --

8          THE COURT:  Well, just speak for yourself.

9          MR. MILLER:  But as for myself, it's very clear to

10   me, Your Honor, that Your Honor would be best -- the best way

11   to approach the matters is to consolidate them.

12         THE COURT:  Just for pretrial purposes.  We don't

13   know whether or not a trial would then go in different

14   directions.  In other words, if you're going to take that

15   position and if you're going to exchange documents, you'd have

16   to keep changing your hat here as to which case you're in.

17         MR. MILLER:  I'm not in the other two cases.  I do

18   not represent Mr. Elner in Pennsylvania.

19         THE COURT:  Yes.

20         MR. MILLER:  With respect to pretrial deadlines and

21   such, the other case is a little bit further in the game.  I

22   guess it was filed in November or December.

23         THE COURT:  I think we issued a pretrial order in the

24   5th of May.

25         MR. MILLER:  I just don't want my right to discovery

1   --

2             THE COURT:  We are maybe 60 days into that case.

3             MR. MILLER:  I just don't want my right to discovery

4   to be foreshortened.

5             THE COURT:  Right.

6             MR. MILLER:  I wouldn't be opposed if the cases

7   proceed pretrial in lockstep or even in consolidation, so long

8   as I don't lose time.

9             THE COURT:  Okay, good.  Okay.  Let me then go to Mr.

10  Moldovsky.  Thank you, Mr. Miller.

11            Mr. Moldovsky, how much discovery have you taken in

12  Elner?

13            MR. MOLDOVSKY:  Your Honor, we have sent out our

14  first round of requests, RONs (phonetic) and document requests.

15   We've noticed Mr. Elner.  We've asked if they would produce

16  others, and we heard yes to one but we should subpoena the

17  others.  And they've asked me for general dates for deposition

18  of me, and I provided that to them.

19            THE COURT:  Okay.

20            MR. MOLDOVSKY:  So that gives you the --

21            THE COURT:  So you're starting, you're starting off

22  with nothing has actually, no depositions have been taken and

23  no documents have been exchanged yet.

24            MR. MOLDOVSKY:  No.  And, obviously,  we're anxious

25  to get the phone records.  That's --

1          THE COURT:  Yes.

2          MR. MOLDOVSKY:  -- what we've been looking for the

3    whole time.

4          THE COURT:  Okay.  Are the phone records from Elner?

5          MR. MOLDOVSKY:  Right.  Mr. Miller has them, as well.

6     And, basically, they're the phone records of my discussions

7    with Mr. Elner, so not like attorney-client between him and Mr.

8    Elner, the discussions with me and Mr. Elner.

9          THE COURT:  Yes.

10          MR. MOLDOVSKY:  But, obviously, also the records that

11    are a part of, that show where he was and where I was when

12    those phone calls happened, as cell records generally show.

13          THE COURT:  Now, on the 19th, I believe, Mr. Lang

14    (phonetic), is that when Moldovsky v. Elner?  When is that set

15    for, that we have a hearing or a conference?  July 20th.

16          Now, on July 20th, we have maybe an initial pretrial

17    conference.

18          MR. MOLDOVSKY:  On the third matter, the other one.

19          THE COURT:  On the third matter.

20          MR. MOLDOVSKY:  Right.

21          THE COURT:  And I wonder if we put an issue, a rule

22    to show cause why Elner v. Moldovsky and Miller v. Moldovsky

23    should not be consolidated and have everybody here and take

24    care of that.

25          What's your thinking of whether they can be or should

1   be consolidated for pretrial purposes?

2           MR. MOLDOVSKY:  I had mixed thoughts, Your Honor, and

3   that's why I raised it.  I think it's a good idea, it's always

4   a good idea.  It's appropriate to raise.  And, at the same

5   time, being very fair, sometimes all the heat altogether with

6   these parties, maybe it's best, you know, through discovery, to

7   stay separate.

8           So I have to admit, I'm a little bit open, so I raise

9   it not trying to be gamey in any way.  And not to ask the

10  question back, I'm curious what Your Honor thinks.  Again, I

11  can see benefits of them all being together --

12          THE COURT:  Well, that's why I think that, and I

13  don't want to just spring this on you without you having had an

14  opportunity to think about that, I think what I'll do is I'll

15  issue a rule to show cause, and then everybody will have had a

16  chance to think about it.  And if you want to oppose it, please

17  do so, by all means.  Don't think that I'm going to try to ram

18  something down your throat.  This is just an idea as to whether

19  or not this will be more economical for everybody.  You're all

20  busy practices.  I'm sure this takes up your time and whether

21  you want to make it more efficient or not.

22          MR. MOLDOVSKY:  I certainly do, Your Honor.  And,

23  again, I raised it as part of my papers.  I've always been in

24  favor of it.  I'm just trying to be respectful that I can see

25  other voices, so, if Your Honor was inclined, I'm all onboard

1    if Your Honor thinks it's a good idea.

2           Mr. Elner -- Mr. Miller.

3           MR. MILLER:  That's fine, Your Honor.  I just wanted

4    to point out for the Court's benefit that Mr. Moldovsky filed

5    and recently dismissed a 542-paragraph, 20-count complaint for

6    a million dollars against me and various other defendants in

7    the Southern District of New York.  He dismissed that case.

8    He's intending, based on his Rule 26(f) submission to refile

9    those claims or some of those claims in some form or another

10   here.

11          So in terms of case management, you know, he has a

12   due process right to file anything he wants, as long as it's

13   not frivolous, if you have some thoughts about that.  But in

14   terms of case management --

15          THE COURT:  So you think that maybe the case may not

16   be quite as similar as it appears on the surface; is that your

17   point?  As Elner.

18          MR. MILLER:  I can just speak to what was in the

19   Southern District of New York, which itself was a little bit

20   hard to understand.

21          THE COURT:  Yes.

22          MR. MILLER:  But a grab bag assortment of claims for

23   malpractice against me, breach of fiduciary duty, unauthorized

24   practice of law for some reason --

25          THE COURT:  Yes.

1           MR. MILLER:  -- it just goes on and on.  There were

2      many -- you know, I can't speak to it because, frankly, I can't

3      understand the complaint.

4           THE COURT:  Okay.

5           MR. MILLER:  But --

6           THE COURT:  Well, what's the point?

7           MR. MILLER:  Well, my point is that that case, Mr.

8      Moldovsky has a due process right to assert counterclaims, of

9      course, Your Honor; but, in terms of case management, you

10     should be aware that a rather large set of counterclaims

11     appears to be on its way into this courtroom.  That's all.

12          THE COURT:  Okay.

13          MR. MOLDOVSKY:  Your Honor, would you like me to

14     speak to that or you're not --

15          THE COURT:  I don't think that's relevant today.  The

16     only question is whether those kinds of claims then separate

17     the case out from Elner; that is, whether or not what the point

18     Mr. Miller was making, and I'm not sure this was his point,

19     that there's more to this whole thing than what appears in the

20     complaint.

21          MR. MOLDOVSKY:  Here's, Your Honor, where my thinking

22     is currently on that.  The claims in the Southern District of

23     New York, I have a sense from the judge in that case that you

24     have so many cases, you're in venues, you need one more.  I try

25     to pick up the vibes from the court of where the court is

1    thinking, and, with that, I thought there are a couple of

2    cases.

3            So what I'm thinking is that, and, actually, in

4    thinking that if the cases remained on their own tracks in

5    particular, what I would do is the claims that I have against

6    Miller I would do just with Miller in the case just with

7    Miller; and then the claims that, the rest of the claims, and

8    we would probably turn things a bit, too, but the claims about

9    malpractice and fraud with Mr. Miller, I would do those right

10   here in this case that he started.

11           The other claims, essentially the claims that involve

12   Mr. Elner and Mr. Miller, they also involve parties that are

13   not subject to jurisdiction here in the Eastern District, like

14   Jill Elner and particularly Mr. Fink (phonetic).  And,

15   accordingly, I was just going to put them in the New York State

16   Supreme Court.  So that was my --

17           THE COURT:  This is why I think we need to have

18   Elner's counsel here because my memory is that his whole point

19   was, if I'm correct and I'm going by memory, that his point was

20   my case is very simple, it's Buck County; I'm not involved in

21   all these other cases in other venues, et cetera.  So he may

22   not be of the mind that we want to empty everything into this

23   case.

24           MR. MOLDOVSKY:  Which is, I was, with what I just

25   described, I'm kind of going with that.  If I was going with

1    that, what I would do, and I plan to raise it soon enough in

2    that case, what I did is I pled counterclaims, which are

3    relatively pretty simple and involve, basically, Elner.  And

4    then what I said is if somehow the claims don't go on in the

5    Southern District, then they could here.  But, again, my

6    feeling is I could be content with Mr. Elner with the

7    counterclaims that we did and, rather, proceed with Mr. Miller

8    counterclaims and then, for the balance of the ones that

9    involve parties not subject to this Court's jurisdiction, I

10   would do up in New York State, which allows that.

11             So that's what I was planning to, but, to be fair --

12             THE COURT:  Is that in federal court or state court?

13             MR. MOLDOVSKY:  The one that I'm going to --

14             THE COURT:  In New York.

15             MR. MOLDOVSKY:  The one that I just withdrew is in

16   federal court.  The one that we'll start will be in New York

17   State Court, where, again, the rules are --

18             THE COURT:  I'm sorry.  Say that --

19             MR. MOLDOVSKY:  The one that I'll proceed with will

20   be in New York State Court.

21             THE COURT:  It's already there?

22             MR. MOLDOVSKY:  It didn't start yet, no.

23             THE COURT:  On the federal court, you haven't filed

24   that yet?

25             MR. MOLDOVSKY:  I've filed it, and we discontinued it

1   without prejudice based on seeing from the judge that the judge

2   was asking questions of all these other venues.

3          THE COURT:  Yes.  Okay.  So what's going on in the

4   state court?

5          MR. MOLDOVSKY:  Well, again, so what I would do is

6   the claims from that case, the ones that can just be against

7   Mr. Miller, that make sense enough just against him, I would do

8   in this case, those counterclaims.  And the claims that are

9   about a group of people, Mr. Elner, Mr. Miller, and a couple of

10  people up there that are not subject to jurisdiction here, I

11  would do in the New York State Court.

12         And by the way, just as a bit of background, yes,

13  there's already a New York State Court with this client, Mr.

14  Elner, and that's what this really is about.  They owe our --

15  and, actually, the court just set up on July 26th there a new

16  judge just stepped in.  They just set up, and I won't get too

17  far afield, they just set up a hearing to hear our motion again

18  for summary judgment --

19         THE COURT:  Is that in New York State Court?

20         MR. MOLDOVSKY:  New York State Court --

21         THE COURT:  In Manhattan or where?

22         MR. MOLDOVSKY:  Manhattan.  And my firm and the other

23  firm, he's the third firm, we're both owed over a half a

24  million dollars, including interest.  That's what this is

25  fueling all of this.  He owes each firm over a half a million

1   dollars.  And as I think Your Honor knows, they already did all

2   the attacks on us on malpractice and everything possible.  All

3   of that was thrown out by the Federal District and then the 2nd

4   Circuit which called the claims baseless.

5          So it's been a long road and --

6          THE COURT:  Well, okay.  Let's do this.  Let's have

7   the hearing, the initial pretrial conference hearing, which is

8   set for July 20th.  We will issue also a rule to show cause why

9   the cases of Elner v. Moldovsky and Miller v. Moldovsky should

10  not be consolidated for pretrial purposes, and we'll see what

11  happens there.  And also that day we'll be taking up Moldovsky

12  v. Elner, and we'll put all the cases on either separate tracks

13  or related tracks.  But I don't think we can proceed today at

14  all without Elner's counsel being here, and, of course, he has

15  no reason why he's not here.  But we'll do that.

16         Now, Mr. Pomerantz, is there anything that you'd like

17  to add to this?  Are you satisfied with this?

18         MR. POMERANTZ:  I am, Judge.  My involvement in this

19  was in the hope of officially  getting those without the extent

20  of litigation.  I'm sort of a byproduct sitting by.

21         THE COURT:  Okay.  Very well.  Thank you.

22         Okay.  I think that I'll take a look also at your

23  26(f) reports, although they're not as valuable in this case as

24  they typically are because the parties have not been of the

25  same mind as to what the issues are or how they should be

1  disposed of.  And I'm getting a bit of an education on that,
2  but I think by the 19th we will have a path to litigation in
3  this case.
4           You know, typically, a judge would then say, faced
5  with this type of case where passions seem to be greater than
6  the financial interests ultimately involved, that we should try
7  to cool those passions and engage in more rational or
8  reasonable discussion of the issues.  I'm sure other judges
9  have already invoked those thoughts in the many venues that you
10 have traveled through before you get here.  But, so far, you
11 have all behaved in a very professional way, so I will do the
12 best I can to try to streamline this matter and, at the
13 appropriate time, maybe give you some thoughts as to the
14 possible direction of this whole controversy.
15          I get a sense that until all these matters are either
16 tried or settled, they're not going to be settled on any kind
17 of a piecemeal way, even though they're different parties and
18 they're different interests.  Ultimately, to obtain peace, I
19 think it has to be a peace across the board, and I don't think
20 we are anywhere near where that is going to take place.
21          Let's proceed.  You're all very experienced.
22 Sometimes, the dynamics of litigation move the parties.  The
23 difficulty is that often happens when the lawyer and the client
24 are different because the clients have the passion and the
25 lawyers have the reason.  And as the cases progress, the reason

1    tends to influence the passions.  But when you have the same

2    entity or person having both a passion and a reason, then it's

3    difficult.  It's kind of schizophrenic to try to say to your

4    lawyer's side go get them, kill them, and the reason side said,

5    yes, but at what cost and what's the likelihood that we're

6    going to prevail?  So maybe we'll try to sort that out in here.

7            MR. MOLDOVSKY:  Your Honor, I would just add, if I

8    could, it's not impossible there could be piecemeal workouts of

9    things.  Part of the challenge is, when you put the whole thing

10   together, there's also the first law firm that is involved, and

11   it's a little tricky because they say some of what I was paid

12   by the federal judge they should have.  So there is some

13   intermixing that's tough.

14           But nothing is impossible, so maybe a magistrate or

15   something at one point, you know, could be helpful.

16           THE COURT:  Mr. Miller, final word?

17           MR. MILLER:  Yeah, a word and request.  With respect

18   to the proceeding, the current proceedings in New York State

19   Court, not the one that Mr. Moldovsky says that he's going to

20   file -- I've lost track of how many filings there are, but,

21   nevertheless, the one that's current in New York Supreme Court,

22   there is oral argument on three dispositive motions on July

23   26th, including my client, which is Mr. Elner in New York.  Mr.

24   Elner and his two companies have a motion for --

25           THE COURT:  They are your clients?

1          MR. MILLER:  In New York, not in Pennsylvania.  Yes,

2    it may be schizophrenic, but it's very clear, at least to me.

3          In New York, we have a motion for partial summary

4    judgment.  Obviously, I'm hopeful that it will be granted.  Mr.

5    Moldovsky has the opposite hope.  But if it is granted, then I

6    believe Mr. Moldovsky would be entirely out of the New York

7    Supreme Court case, and that might be a ripe time to talk about

8    settling in Pennsylvania.

9          I do have a question, Your Honor.  Are we having the

10   Rule 16 conference today, or are we deferring --

11         THE COURT:  We are.  This is a Rule 16 conference

12   that we're engaged in right now.

13         MR. MILLER:  Okay.  So, with respect to that, so, the

14   rule to show cause that Your Honor is going to issue about

15   consolidation, that would include me, and I would be coming to

16   court --

17         THE COURT:  Exactly.

18         MR. MILLER:  -- on the 20th or something like that?

19         THE COURT:  Exactly.

20         MR. MILLER:  That's fine.  So I would point out, with

21   respect to the Rule 16 conference aspect of it, that my part of

22   the report, there's a typo where I talk about the discovery

23   limitations.  I've taken the position that, although Mr.

24   Moldovsky -- the Defendants, including Mr. Pomerantz, are

25   saying 25 per side or 50 per side, that it should be per party

1   because Mr. Pomerantz and Mr. Moldovsky --

2          THE COURT:  Their interest are identical or very

3   similar, so you have two parties to it, even though there are

4   three individuals.

5          MR. MILLER:  Their interests are not identical, Your

6   Honor.  They have different defenses, they have different

7   facts.  Mr. Pomerantz was acting as an attorney and, under the

8   Jagadeti (phonetic) Act, he's got defenses that Mr. Moldovsky

9   doesn't have and vice versa.  Mr. Moldovsky was a Bucks County

10  action and also here as a party.  He didn't have, as Your Honor

11  points out, advice of, you know, more reasoned counsel.  He was

12  litigating for himself, so he doesn't have the same defenses

13  that Mr. Pomerantz has and vice versa.  So to the extent that

14  we're seeking any kind of discovery limitations on document

15  requests or interrogatories, my position is that it needs to be

16  per party.  So if it's 25 interrogatories, it's third party and

17  not, you know, not --

18         THE COURT:  Not 50 from their side you mean.

19         MR. MILLER:  Well, it could be 50 from their side and

20  then I guess a hundred from my side.  I mean, I'm not glued on

21  the number.  I'm just saying that I've got two parties to

22  address.

23         THE COURT:  You want the same number as the two of

24  them combined.

25         MR. MILLER:  I'm not sure if I understand --

1            THE COURT:  Well, if they get 25 interrogatories

2   each, that's 50.

3            MR. MILLER:  Right.

4            THE COURT:  So you want 50.

5            MR. MILLER:  Yes.

6            THE COURT:  If they get 25 together, you want 25.

7            MR. MILLER:  Yes, yes, that's fair.

8            THE COURT:  Okay.

9            MR. MILLER:  Would it be appropriate now to address

10  the other part of my request today, which was for a protective

11  order?

12           THE COURT:  I think you're premature.  There's

13  nothing to protect at this point --

14           MR. MILLER:  My concern --

15           THE COURT:  -- until we get started on discovery.

16  You can assert the privilege.

17           MR. MILLER:  My concern, you know,  with respect to

18  the protective order is that, in a different matter in the New

19  York Appellate Division, Mr. Moldovsky filed an entire

20  unredacted witness transcript that contains my sensitive

21  personal and medical information.  He filed it on the public

22  docket.  I believe --

23           THE COURT:  Well, shouldn't you get a protective

24  order in New York?

25           MR. MILLER:  I have applied for one.  My concern, and

1    I'm not asking Your Honor to issue an order that would have

2    effect in New York, but my concern, frankly, Your Honor, is

3    that Mr. Moldovsky will find the first opportunity to file that

4    same unredacted --

5              THE COURT:  Well, it will be, you know, no discovery

6    until the Rule 16 order issues so --

7              MR. MILLER:  He may attach it as an exhibit to a

8    motion.  He's done that.  This is not hypothetical.  This is

9    exactly what he did.  He filed that in New York, not as

10   discovery but basically as a response to a lawsuit I brought

11   against him in New Jersey.  He filed the transcript on the

12   public docket in New York and then came into New Jersey and

13   said, you see, it's out on the internet, you don't have any

14   injunctive authority anymore because it's public domain.

15             And so I filed the motion in New York.  I filed a

16   different set of procedures in New Jersey.  What I'm asking

17   here is that Mr. Moldovsky can file whatever he wants to file,

18   literally whatever he wants to file.  But if it relates or

19   describes or is that transcript, it should be under seal.

20             MR. MOLDOVSKY:  If I may speak to this, Your Honor, I

21   found this transcript fully unredacted after it sat on the

22   public docket for 22 months.  He brought a whole injunction

23   proceeding in the New York State Court that has been thrown

24   out.  He's now trying desperately on the appellate level.

25   They've rejected him trying to get any type of emergency relief

1    in front of the New Jersey judge where he then went running

2    next.  The New Jersey judge just the other day let us know that

3    when he sees us again on July 23rd he expects it will be his

4    last time of seeing us because he plans to dismiss that matter

5    for lacking a cause of action.  He's only sealed things

6    temporarily.  All that dissolves.

7         The information we're talking about, it's a

8    transcript and it goes to the hearts of my claims with him.

9    This is where I learned of his whole past that he had lied to

10   me about.  He was fired from Drinker Biddle, he was fired from

11   Fleming (phonetic).  What he's pointing to is medical

12   information.  There's no medical information.  He's never

13   showed it to any court, and I found available on the public

14   docket, which the court recognized is I'm innocent --

15        THE COURT:  Well, we'll wait for the New York court

16   to rule on it, and then we'll act accordingly.

17        MR. MOLDOVSKY:  Thank you, Your Honor.

18        THE COURT:  Okay.  Thank you.

19

20                         *  *  *  *  *

C E R T I F I C A T E

I, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____          July 16, 2021
    Neal R. Gross

**NEAL R. GROSS**

COURT REPORTERS AND TRANSCRIBERS

1323 RHODE ISLAND AVE., N.W.

(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com