**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JONATHAN R. MILLER, ESQ.,

                Plaintiff,

     v.

BREM MOLDOVSKY, ESQ.,
BREM MOLDOVSKY, LLC, and
GERALD J. POMERANTZ, ESQ.,

                Defendants.

Case No. 2:21-cv-02219-ER

BREM MOLDOVSKY, ESQ., and
BREM MOLDOVSKY, LLC,

                Counterclaimants and Third
                Party Plaintiffs,

     v.

JONATHAN R. MILLER, ESQ.,

                Counterclaim Defendant,

    and

ANDREW ELLNER,
LIGHTBOX VENTURES, LLC, and
LIGHTBOX CAPITAL MANAGEMENT, LLC,

                Third Party Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS**

---

Jonathan R. Miller, Esq.
**The Law Firm of Jonathan R. Miller**
100 Overlook Drive, 2nd Floor
Princeton, N.J. 08540
Tel. 609-955-1226
Fax 609-964-1026
jonathan.miller@lawyer.com

*Plaintiff pro se*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..............................................................................................iii

PRELIMINARY STATEMENT .........................................................................................1

ALLEGED FACTS ........................................................................................................1

PROCEDURAL HISTORY AND BACKGROUND...............................................................5

LEGAL ARGUMENT .....................................................................................................6

    I.      **Applicable Legal Standards**...............................................................6

          A.    General pleading requirements — Fed. R. Civ. P. 8.........................6

          B.    Failure to State a Claim – Fed. R. Civ. P. 12(b)(6) ............................8

    II.     **The counter-complaint should be dismissed for failure to comply with Rule 8 pleading requirements** .................................................................10

          A.    Instead of a "short and plain" statement comprised of "simple, concise and direct" factual allegations, Moldovsky's 610-paragraph, 144-page counterclaims are rambling, conclusory, confusing and indecipherable. ...........................................................10

    III.    **All counterclaims arising from Mr. Miller's alleged conflicts of interest and professional misconduct should be dismissed on grounds of issue preclusion** ...............................................................................................14

          A.    Issue preclusion under Federal, New York, and Pennsylvania law.............14

          B.    All of Moldovsky's counterclaims based on Mr. Miller's purported conflict of interest are barred by collateral estoppel....................................18

          C.    Even in the absence of collateral estoppel, Mr. Miller cannot be sued for doing exactly what four courts authorized him to do..................27

    IV.    **All counterclaims arising from statements made in the course of legal proceedings are barred by the litigation privilege** ......................................28

          A.    The litigation privilege is broadly construed and absolute.........................28

          B.    All of Moldovsky's counterclaims arising from Mr. Miller's and/or Lightbox's statements made in the course of litigation are barred by the litigation privilege ....................................................................30

    V.     **Count 1 ("Malicious Prosecution") should be dismissed** .........................................32

          A.    New York law governs Moldovsky's malicious prosecution claim. ...........34

          B.    Moldovsky's claim fails under both New York and Pennsylvania law. ....................................................................................................34

    VI.    **Count 2 ("Abuse of Process") should be dismissed**..................................1027

          A.    Moldovsky's abuse of process counterclaim is governed by New York law....................................................................................................39

          B.    Moldovsky fails to state a claim for abuse of process. ................................39

**VII.**      **Count 5 ("Prima Facie Tort") should be dismissed** ...................................................... 41

         A.      Pennsylvania has not recognized a cause of action for prima facie tort. .............................................................................................................. 41

         B.      Moldovsky has failed to state a claim under New York law. ...................... 42

**VIII.**     **Count 7 ("Tortious and Malicious Interference") should be dismissed** ................ 43

**IX.**      **Count 8 ("Fraud and Fraud in the Inducement") and Count 9 ("Negligent Misrepresentation") should be dismissed** ................................................................... 45

         A.      Claims sounding in fraud must be plead with particularity. ...................... 45

         B.      Pennsylvania law governs Moldovsky's common law fraud and misrepresentation claims. ...................................................................................46

         C.      Requisite legal elements for fraud, fraudulent concealment and negligent omission. ........................................................................................... 47

         D.      Moldovsky has failed to plead his fraud-related claims with particularity. .........................................................................................................50

**X.**      **Count 12 ("Violation of the NJCFA") should be dismissed** .................................... 54

**XI.**      **Count 13 ("Violation of the UTPCPL") should be dismissed** ................................. 56

**XII.**     **Count 15 ("Aiding and Abeting [*sic*]") should be dismissed** .................................. 57

**XIII.**    **Count 17 ("Concert of Action") should be dismissed** ............................................. 60

**XIV.**    **Count 18 ("Permanent Injunction") should be dismissed** ....................................... 61

**XV.**     **Count 19 ("Set Off") should be dismissed** .................................................................. 63

**XVI.**    **Count 20 ("Equity") should be dismissed** .................................................................64

**CONCLUSION** ....................................................................................................................................64

## <u>TABLE OF AUTHORITIES</u>

### CASES

*A-G Administrators v. Durham Life Ins. Co.*, 1996 U.S. Dist. LEXIS 12378 (E.D. Pa. Aug. 22, 1996)........................................................................................................34

*Agostino v. Quest Diagnostics*, 2005 U.S. Dist. LEXIS 64071 (D.N.J. Oct. 6, 2005) ............................ 55

*Agresta v. Goode*, 797 F. Supp. 399 (E.D. Pa. 1992) ................................................................30

*Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427 (E.D.N.Y. 2013) ................................................29

*Alevras v. Tacopina*, 226 F. App'x 222 (3d Cir. 2007) ..........................................................15, 16

*Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429 (3d Cir. 2000)................................................49

*Anand v. Indep. Blue Cross*, 2021 U.S. Dist. LEXIS 138414 (E.D. Pa. July 23, 2021)............................ 41

*Angino v. Branch Banking & Tr. Co.*, 2021 U.S. App. LEXIS 14019 (3d Cir. May 12, 2021).......................................................................................................39

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................................6, 8

*Baldini v. Shah*, 2018 U.S. Dist. LEXIS 241270 (S.D.N.Y. Aug. 9, 2018) ................................................36

*Bandler v. DeYonker*, 101 N.Y.S.3d 847 (N.Y. App. Div. 2019) ................................................43

*Baraka v. McGreevey*, 481 F.3d 187 (3d Cir. 2007)....................................................................9

*Bd. of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc.-Pension Fund v. Centra*, 983 F.2d 495 (3d Cir. 1992) ................................................. 15, 24

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................................8, 12

*Beyers v. Richmond*, 937 A.2d 1082 (Pa. 2007)............................................................33, 56, 57

*Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765 (3d Cir. 2009) ................................................49

*Bronx Legal Servs. v. Legal Servs.*, 2003 U.S. Dist. LEXIS 695 (S.D.N.Y. Jan. 17, 2003) .....................58

*Buechel v. Bain*, 766 N.E.2d 914 (N.Y. 2001) ..................................................................16, 25

*Burns v. Patino*, 1999 U.S. Dist. LEXIS 10860 (E.D. Pa. July 8, 1999) ................................................54

*Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411 (3d Cir. 1990)..........................................19, 64

*Charles Shaid of PA v. George Hyman Constr. Co.*, 947 F. Supp. 844 (E.D. Pa. 1996)....................41, 42

*Chruby v. Kowaleski*, 534 F. App'x 156 (3d Cir. 2013) ............................................................62

*Coba v. Ford Motor Co.*, 932 F.3d 114 (3d Cir. 2019) ............................................................55

*Conboy v. United States SBA*, 992 F.3d 153 (3d Cir. 2021) ....................................................56

*Cook v. Gen. Nutrition Corp.*, 2017 U.S. Dist. LEXIS 162125 (W.D. Pa. Sept. 29, 2017) ....................62

*Cook v. Sheldon*, 41 F.3d 73 (2d Cir. 1994) ............................................................40

*Coyne v. Holy Family Apartments*, 2021 U.S. Dist. LEXIS 129891 (E.D. Pa. July 13, 2021) ............................................................7, 14

*Crozier v. Johnson & Johnson Consumer Cos.*, 901 F. Supp. 2d 494 (D.N.J. 2012) ..............................55

*Curiano v. Suozzi*, 469 N.E.2d 1324 (N.Y. 1984) ............................................................39, 40, 42

*D'Errico v. DeFazio*, 763 A.2d 424 (Pa. Super. Ct. 2000), *appeal denied*, 782 A.2d 546 (Pa. 2001) ............................................................41

*Danielson v. Chester Twp.*, 2013 U.S. Dist. LEXIS 164271 (D. N.J. Nov. 19, 2013) ............................7

*Davis v. Bank of Am., N.A.*, 2014 U.S. Dist. LEXIS 124731 (E.D. Pa. Aug. 11, 2014)............................57

*DiCarlo v. St. Mary Hosp.*, 530 F.3d 255 (3d Cir. 2008) ............................................................8

*DiGenova v. Unite Here Local 274*, 849 F. App'x 331 (3d Cir. 2021) ............................................................7

*Engel v. CBS, Inc.*, 711 N.E.2d 626 (N.Y. 1999) ............................................................37, 42

*Enright v. Lubow*, 493 A.2d 1288 (N.J. App. Div. 1985) ............................................................49

*Fagan v. Fischer*, 2019 U.S. Dist. LEXIS 188078 (D.N.J. Oct. 30, 2019)............................................................49

*Feingold v. Unitrin Direct*, 2012 U.S. Dist. LEXIS 82593 (E.D. Pa. June 14, 2012) ............................12

*Firebird Structures, LCC v. United Brotherhood of Carpenters & Joiners of Am., Local Union No. 1505*, 252 F. Supp. 3d 1132 (D.N.M. 2017) ............................................................45

*Flemm v. Victory Commer. Mgmt.*, 2021 U.S. Dist. LEXIS 76870 (S.D.N.Y. Apr. 21, 2021) ............................................................49

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ............................................................8, 9

*Fratz v. Goldman & Warshaw, P.C.*, 2012 U.S. Dist. LEXIS 148744 (E.D. Pa. Oct. 16, 2012) ............................................................57

*Freihofer v. Hearst Corp.*, 480 N.E.2d 349 (N.Y. 1985)............................................................42

*G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762 (2d Cir. 1995)............................................................44

*Gaines v. Krawczyk*, 354 F. Supp.2d 573 (W.D. Pa. 2004) ........................................................48

*Gibbs v. Ernst*, 647 A.2d 882 (Pa. 1994) ........................................................ 47, 48

*Giordano v. Claudio*, 714 F. Supp. 2d 508 (E.D. Pa. 2010) ........................................ 39

*Glover v. FDIC*, 698 F.3d 139 (3d Cir. 2012) ........................................................ 6

*Gordian Med., Inc. v. Gentell, Inc.*, 2013 U.S. Dist. LEXIS 118486 (E.D. Pa. Aug. 21, 2013) ........................................................ 36

*Greenberg v. Aetna Ins. Co.*, 235 A.2d 576 (Pa. 1967), *cert. denied sub nom., Scarselletti v. Aetna Casualty & Surety Co.*, 392 U.S. 907 (1968) ........................................ 30

*Greenleaf v. Garlock, Inc.*, 174 F.3d 352 (3d Cir. 1999) ................................ 17, 18, 26

*Greenway Ctr., Inc. v. Essex Ins. Co.*, 475 F.3d 139 (3d Cir. 2007) ............................ 17

*Griffith v. United Air Lines, Inc.*, 203 A.2d 796 (Pa. 1964) .................................. 28, 34

*Gross v. Coloplast Corp.*, 434 F. Supp. 3d 245 (E.D. Pa. 2020) ................................ 53

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269 (S.D.N.Y. 2003) ............... 42

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221 (S.D.N.Y. 2018) ........................................................ 43, 44

*Harris v. Steinem*, 571 F.2d 119 (2d Cir. 1978) ............................................... 36

*Heffernan v. Hunter*, 189 F.3d 405 (3d Cir. 1999) ...................................... 58, 60, 61

*Herrmann v. Moore*, 576 F.2d 453 (2d Cir.), *cert. denied*, 439 U.S. 1003 (1978) ................ 59

*Holber Assocs., L.P. v. Reckson Operating P'ship, L.P.*, 2017 NY Slip Op 32089(U) (N.Y. Sup. Ct., Oct. 3, 2017) ........................................................ 37, 38

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ........................ 9

*In re Energy Future Holdings Corp.*, 990 F.3d 728 (3d Cir. 2021) .............................. 9

*In re Solv-Ex Corp. Sec. Litig.*, 198 F. Supp. 2d 587 (S.D.N.Y. 2002) .......................... 36

*In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2006) ..................... 45, 46

*Jarzyna v. Home Props., L.P.*, 114 F. Supp. 3d 243 (E.D. Pa. 2015) ............................ 59

*Jennings v. Emry*, 910 F.2d 1434 (7th Cir. 1990) ............................................... 6

*Jones v. Nat'l Commun. & Surveillance Networks*, 409 F. Supp. 2d 456 (S.D.N.Y. 2006) ........................................................ 12

*Kamdem-Ouaffo v. Huczko*, 810 F. App'x 82, (3d Cir. 2020) ................................................ 6, 7

*Kaymark v. Bank of Am., N.A.*, 783 F.3d 168 (3d Cir. 2015) ...................................................... 57

*Kilbride Invs. Ltd. v. Cushman &Wakefield of Pa., Inc.*, 294 F. Supp. 3d 369 (E.D. Pa. 2018) .................................................................................................................................. 59

*Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir. 2006) ....................................................... 44

*Kirk v. Heppt*, 532 F. Supp. 2d 586 (S.D.N.Y. 2008) ............................................................... 33

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) ........................................................ 28

*Koch v. Pechota*, 744 F. App'x 105 (3d Cir. 2018) ................................................................... 14

*Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir. 1993) .......................................................................... 8

*Lawrence v. Houston*, 567 N.Y.S.2d 962 (N.Y. App. Div. 1991) ............................................... 58

*Lee v. First Union Nat'l Bank*, 199 N.J. 251, 263-64, 971 A.2d 1054 (2009) ........................... 56

*Leyse v. Bank of Am., N.A.*, 804 F.3d 316 (3d Cir. 2015) ......................................................... 14

*Lohman v. Oxford*, 816 F. Supp. 1025 (E.D. Pa. 1993) ........................................................... 34

*Ludmer v. Nernberg*, 553 A.2d 924 (Pa. 1989) ........................................................................ 35

*M3 USA Corp. v. Hart*, 2021 U.S. Dist. LEXIS 18177 (E.D. Pa. Jan. 29, 2021) ...................... 61

*Macedo v. Dello Russo*, 840 A.2d 238 (N.J. 2004) .............................................................. 33, 56

*Manhattan Enter. Grp. LLC v. Higgins*, 816 F. App'x 512 (2d Cir. 2020) ............................... 40

*Marcum v. Columbia Gas Transmission, LLC*, 423 F. Supp. 3d 115 (E.D. Pa. 2019) ............... 48

*Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277 (Pa. 1992) ........................ 61

*Matter of Larsen*, 616 A.2d 529 (Pa. 1992) ............................................................................ 35

*Meksin v. Glassman*, 217 A.3d 416 (Pa. Super. Ct. 2019) ........................................................ 57

*Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201 (S.D.N.Y. 2009) .............................. 21

*MHA, LLC v. Amerigroup Corp.*, 2021 U.S. Dist. LEXIS 94147 (D.N.J. May 17, 2021) ........... 46

*Murphy v. Lynn*, 118 F.3d 938 (2d Cir. 1997) ......................................................................... 35

*Mut. Life Ins. Co. v. Bondurant*, 27 F.2d 464 (6th Cir. 1928) ................................................. 38

*MZL Capital Holdings, Inc. v. TD Bank, N.A.*, 734 F. App'x 101 (3d Cir. 2018) .................... 46

*Noga v. City of Schenectady*, 169 F. Supp. 2d 83 (N.D.N.Y. 2001) ......................................... 38

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741 (N.Y. 1995) ..................................................................... 33

*Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410 (3d Cir. 1999).................. 5, 9

*Panitz v. Behrend*, 632 A.2d 562 (Pa. Super. 1993) ............................................... 29

*Paramount Aviation Corp. v. Agusta*, 178 F.3d 132 (3d Cir. 1999) ......................................... 15

*Pelagatti v. Cohen*, 536 A.2d 1337 (1987), *appeal denied*, 548 A.2d 256 (Pa. 1988) .............................30

*Peloro v. United States*, 488 F.3d 163 (3d Cir. 2007) ................................................ 16

*Pennsylvania Employee Benefit Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458 (D. Del. 2010).................................................................................46

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192 (3d Cir. 1993) ...........................9

*Rahemtulla v. Hassam*, 539 F. Supp. 2d 755 (M.D. Pa. 2008) ....................................... 49

*Richardson v. Folino*, 2012 U.S. Dist. LEXIS 177241, 2012 WL 6552916 (W.D. Pa. 2012) (citations omitted) ......................................... 17

*Robinson v. Robinson*, 2015 U.S. Dist. LEXIS 4731 (D.N.J. Jan. 15, 2015)...............................10

*Salahuddin v. Cuomo*, 861 F.2d 40 (2d Cir. 1988) .......................................... 6, 7

*Saterstad v. Lock*, 161 A.3d 376 (Pa. Super. Ct. 2017) ................................................ 57

*Sathianathan v. Smith Barney, Inc.*, 2006 U.S. Dist. LEXIS 9828 (S.D.N.Y. Feb. 24, 2006) ................................................................ 60

*Savino v. City of New York*, 331 F.3d 63 (2d Cir. 2003) .................................... 39, 40

*Schatzberg v. State Farm Mut. Auto. Ins. Co.*, 877 F. Supp. 2d 232 (E.D. Pa. 2012) ........................... 53

*Selas Corp. of Am. v. Wilshire Oil Co.*, 344 F. Supp. 357 (E.D. Pa. 1972)................................. 30

*Seldon v. Home Loan Servs.*, 647 F. Supp. 2d 451 (E.D. Pa. 2009) ............................46, 47, 51

*Shaffer v. Smith*, 673 A.2d 872 (Pa. 1996) ................................................. 17

*Singleton v. JAS Auto. LLC*, 378 F. Supp. 3d 334 (E.D. Pa. 2019)............................................46

*Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410 (3d Cir. 1999) ......................................... 1, 5, 9

*Stepien v. Schaubert*, 2010 U.S. Dist. LEXIS 45893 (W.D.N.Y. Feb. 23, 2010), *report and recommendation adopted*, 2010 U.S. Dist. LEXIS 46079 (W.D.N.Y. May 11, 2010), *aff'd*, 424 F. App'x 46 (2d Cir. 2011) .......................................................... 60

*Stoner v. N.Y.C. Ballet Co.*, 2002 U.S. Dist. LEXIS 5921 (S.D.N.Y. Apr. 8, 2002) ......................... 59, 60

*Sunil Walia v. Holder*, 59 F. Supp. 3d 492 (E.D.N.Y. 2014).......................................................... 40

*Tax Matrix Techs., LLC v. Wegmans Food Mkts., Inc.*, 154 F. Supp. 3d 157 (E.D. Pa. 2016)................................................................................................................36

*Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36 (3d Cir. 2008) ......................................... 1

*Tran v. Hae Yeon Baik*, 406 F. App'x 661 (3d Cir. 2011).....................................................33, 55

*Vitolo v. Mentor H/S. Inc.*, 213 Fed. Appx. 16 (2d Cir. 2007) .................................................... 33

*Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*, 857 F.2d 55 (2d Cir. 1988) ...........................44

*Vort v. Hollander*, 607 A.2d 1339 (N.J. App. Div. 1992), *cert. denied*, 617 A.2d 1221 (N.J.) .................................................................................................................. 55

*Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77 (3d Cir. 2011) ..................................................... 8

*Wilderhomes, LLC v. Zautner*, 885 N.Y.S.2d 714 (N.Y. Sup. Ct. 2009).................................................. 37

*Williams v. Williams*, 246 N.E.2d 333 (N.Y. 1969) ........................................................ 39, 40

*Yamaha Corp. of Am. v. United States*, 961 F.2d 245 (D.C. Cir. 1992).................................... 16

*Young v. Centerville Clinic, Inc.*, 2009 U.S. Dist. LEXIS 70363 (W.D. Pa. Aug. 10, 2009) ..................................................................................................................6

*Ziglar v. Abbasi*, 137 S.Ct. 1843, 198 L. Ed. 2d 290 (2017)................................................58, 59

**STATUTES**

42 Pa.C.S. § 8351......................................................................................................5, 33, 35

73 P.S. § 201-1....................................................................................................... 33, 56

73 P.S. § 201-3................................................................................................................ 56

73 P.S. § 201-9.2............................................................................................................. 56

N.J.S.A. 56:8-1................................................................................................................ 33

N.Y. GBL § 349 ................................................................................................................. 33

## RULES

22 NYCRR § 1250.16 ......................................................................................................... 24

22 NYCRR § 1250.9 ........................................................................................................... 22

Fed. R. Civ. P. 10(c) .......................................................................................................... 9

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 8

Fed. R. Civ. P. 12(d) ......................................................................................................... 9

Fed. R. Civ. P. 8 ........................................................................................................1, 6, 7, 13

Fed. R. Civ. P. 9(b) ........................................................................................................... 45

Fed. R. Civ. P. 9(g) ........................................................................................................... 42

N.Y. CPLR § 214(4) ........................................................................................................... 43

N.Y. CPLR § 215(3) ........................................................................................................... 38

## TREATISES

Restatement (Second) of Conflict of Laws, § 155 ......................................................... 34

Restatement (Second) of Judgments § 13 ...................................................................17, 18

Restatement (Second) of Judgments § 27 ..................................................................... 16

Restatement (Second) of Torts, § 548A ......................................................................... 54

## PRELIMINARY STATEMENT

Plaintiff Jonathan R. Miller, Esq., respectfully submits this Memorandum of Law in support of his motion to dismiss the counterclaims asserted by Defendants Brem Moldovsky, Esq. and Brem Moldovsky, LLC (together, "Moldovsky").

## ALLEGED FACTS

Instead of filing a pleading with short and plain statements of each claim, *cf*. Fed. R. Civ. P. 8(a)(2), Moldovsky's 610-paragraph, 144-page counterclaims are rambling, convoluted and nearly impossible to parse and comprehend. Painting in broad strokes, Moldovsky conflates and jumbles together things that allegedly occurred in several legal proceedings and in several courts and court systems. *See generally* Miller Cert., dated August 4, 2021, and all exhibits thereto.[1]

As best as can be deciphered, Moldovsky alleges that Mr. Miller and his New York clients, Third Party Defendants Andrew Ellner, Lightbox Ventures, LLC ("LBV") and Lightbox Capital Management, LLC ("LBC") (collectively, "Lightbox") have engaged in wrongdoing for the last three years or so, in the context of a number of legal proceedings in various courts, several of which are actively being litigated.

Moldovsky asserts causes of action against Mr. Miller and Lightbox for: malicious prosecution (Count 1); abuse of process (Count 2); deceit and collusion in violation of N.Y. Jud. Law § 487 (Count 3); misrepresentation(s) to various courts (Count 4); prima facie tort (Count 5); defamation and libel (Count 6); concert of action (Count 17); and permanent injunction

---

[1] The Court may consider the public records attached as exhibits to Mr. Miller's certification without converting this motion into one for summary judgment: "To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint." *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). "Specifically, a court may take judicial notice of the record from a previous court proceeding between the parties." *Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 37-38 (3d Cir. 2008).

(Count 18) in connection with: (a) an interpleader proceeding in the Southern District of New York, filed to resolve competing charging lien claims asserted by Moldovsky and another law firm, Scarola Malone & Zubatov LLP; (b) cross-claims for attorney misconduct asserted against Moldovsky in a related matter pending in New York Supreme Court and certain interlocutory appeals pending in New York's Appellate Division; (c) Mr. Ellner's Dragonetti Act and abuse of process claims pending in this Court, which have now been consolidated for pretrial purposes with Mr. Miller's own Dragonetti Act and abuse of process claims in this matter; (d) various motions and purported "misrepresentations" in these foregoing proceedings and courts; and (e) a laundry list of other alleged occurrences that Moldovsky finds objectionable.

For his tortious interference claim (Count 7), Moldovsky alleges "on information and belief" that Mr. Miller "interfered" in some unspecified way with negotiations between Moldovsky and Lightbox over an amended fee agreement. Countercl. at ¶ 439. Moldovsky further alleges that Mr. Miller "reach[ed] out" to Moldovsky's unidentified "colleagues" in order to "malign" him in some way, "trying to destroy [his] reputation, time and ability to serve clients." Countercl. at ¶ 445.

For his misrepresentation and fraud claims (Counts 8-9), Moldovsky alleges that Mr. Miller concealed unspecified aspects of "his employment history, conflicts, and ongoing issues of central concern" in order to "foster a colleague relationship" and "ingratiate himself" with Mr. Moldovsky. Countercl. at ¶¶ 451-452.

Moldovsky further alleges that Mr. Miller violated various Rules of Professional Conduct by continuing to represent Lightbox in various legal proceedings despite being subject to a disqualifying conflict of interest, and is therefore liable for breach of fiduciary duty (Count 10); legal malpractice (Count 11); violation of the New Jersey Consumer Fraud Act (Count 12);

violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count 13); and breach of contract (Count 14).

Moldovsky alleges generally that Mr. Miller and Lightbox conspired with each others' alleged misconduct and are therefore liable for aiding and abetting (Count 15) and concert of action (Count 17).

Moldovsky asserts a cause of action for "permanent injunction" (Count 18), demanding more than $1 million in monetary damages and also demanding that Mr. Miller and Lightbox be permanently enjoined from filing any papers or commencing any legal proceeding against Moldovsky in any court, and that Mr. Miller be additionally enjoined from "using, possessing, communicating, distributing and publicizing [Moldovsky's] information." Countercl. at ¶ 569.

Moldovsky asserts a cause of action for "set off" (Count 19), asserting that "Lightbox and Mr. Miller are also the Counterclaim Defendants in two litigations brought by the Moldovsky Firm and Brem Moldovsky based on Lightbox and Mr. Miller's own tortious conduct." Countercl. at ¶ 573.

Moldovsky asserts a largely unintelligible cause of action for "equity"  and "equitable estoppel" (Count 20), alleging that "Mr. Miller spoke misleading words and acted in a misleading way," that Moldovsky "had the right to reasonably rely upon Mr. Miller's duty to comply with his ethic [*sic*] obligations," and that consequently "Counterclaim Defendants [i.e. Lightbox and Mr. Miller] should be estopped from continuing to represent" against Moldovsky. Countercl. at ¶¶ 582-584. As a remedy for equitable estoppel Moldovsky demands more than $1 million in compensatory, incidental, consequential and punitive damages, plus interest, attorney's fees and costs. *See* Countercl. at p. 188 (*ad damnum* clause).

Moldovsky initially asserted, but recently dismissed, four counterclaims relating to recordings made by Mr. Ellner of certain telephone calls between him and Mr. Moldovsky:

declaratory judgment (as to the applicability of the Pennsylvania Wiretap Act (Count 21);

violation of the Pennsylvania Wiretap Act (Count 22); permanent injunction (concerning the

use of telephone recordings and transcripts) (Count 23); and violation of the wiretapping

statutes of Florida, California and Nevada (Count 24). Moldovsky dismissed these counterclaims

after substantially identical causes of action were dismissed in *Moldovsky v. Ellner et al.*,

No. 21-cv-01365 (E.D. Pa.). *See* Miller Cert., Exh. 55; *cf*. ECF #25.

Moldovsky asserts a cause of action for unauthorized practice of law in violation of N.Y.

Judiciary Law § 478 and § 484 "against all couterclaim counterclaim defendants except Mr.

Ellner." Countercl. at p. 140 (*sic*; capitalization altered). This cause of action is included within

Count 3, and is also asserted against a non-party, Jill Ellner.

In addition, Moldovsky's "malicious prosecution" claim (Count 1) appears to conflate

alleged violations of a grab-bag assortment of statutes, including the Pennsylvania Unfair Trade

Practices and Consumer Protection Law, the New Jersey Consumer Fraud Act, New York General

Business Law § 349, Pennsylvania's Dragonetti Act, and Sections 478, 484, 485 and 485-a of New

York's Judiciary Law. *See* Countercl. at ¶ 384.

Lastly, Moldovsky asserts a counterclaim for corporate veil-piercing (Count 16),

apparently on the theory that Mr. Ellner, LBV, LBC and non-party Jill Ellner are alter egos of each

other. For this counterclaim, Moldovsky purports to rely on redacted factual allegations asserted

by an unrelated party, "SMZ," in a different lawsuit pending in a different court system in a

different state. *See* Countercl. at ¶ 558. This is the only counterclaim that is not asserted against

Mr. Miller.

## PROCEDURAL HISTORY AND BACKGROUND

This matter was commenced on May 16, 2021 by way of complaint asserting causes of action for wrongful use of civil proceedings in violation of the Dragonetti Act, 42 Pa.C.S. § 8351 *et seq.*, and for common law abuse of process. ECF #1. Both claims arise out of *Moldovsky v. Miller et al.*, No. 2019-00793 (Ct. of C.P., Bucks County) (the "Bucks County Matter").

The defendants moved to dismiss on June 14, 2021, which motion was denied on July 1, 2021. ECF #6, #14. Defendants filed their answer on July 14, 2021, together with fifty-one affirmative defenses and Moldovsky's twenty-four counterclaims and two-count third-party complaint. (Moldovsky purports to join Mr. Ellner and LBV as counterclaim defendants and also as third party defendants, LBC as a counterclaim defendant but not as a third party defendant, and asserts at least one cause of action against Jill Ellner without joining her as a party.)

This matter has been consolidated for pretrial purposes with *Ellner v. Moldovsky et al.*, No. 20-cv-06190 (E.D. Pa.), in which Mr. Ellner also asserts Dragonetti Act and abuse of process claims against the defendants arising from the Bucks County Matter.

The underlying procedural history of this dispute, including multiple actions in multiple state and federal courts, is quite complicated. In order to assist the Court in disentangling these other proceedings, Mr. Miller has submitted a certification, dated August 4, 2021 ("Miller Cert.") and voluminous exhibits, the contents of which are incorporated herein by reference. "To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint." *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). Thus, submission of these voluminous prior court filings is not improper and does not require converting this motion into one for summary judgment.

## LEGAL ARGUMENT

### I.   APPLICABLE LEGAL STANDARDS

#### A.   General pleading requirements — Fed. R. Civ. P. 8

Rule 8 pleading requirements are well-established:

> Rule 8 requires a "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). And "[t]he statement should be short because '[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'" *Id.* (second alteration in original) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1281, at 365 (1969)).

*Kamdem-Ouaffo v. Huczko*, 810 F. App'x 82, 84 (3d Cir. 2020) (emphasis added).

Under Rule 8, a complaint need not set out detailed factual allegations, but "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" are woefully insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Rule 8(a) requires that a complaint 'be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search' of the nature of the plaintiff's claim." *Glover v. FDIC*, 698 F.3d 139, 147 (3d Cir. 2012) (quoting *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990)). "[T]he district courts in this and other circuits have consistently held that disorganized, needlessly long, and highly repetitious complaints that are not organized into plain statements of the claim fail to satisfy Rule 8." *Young v. Centerville Clinic, Inc.*, 2009 U.S. Dist. LEXIS 70363, at *4-5 (W.D. Pa. Aug. 10, 2009) (collecting cases).

"Neither the Court nor the Defendants should be forced to speculate which events and theories of liability give rise to [a given count] . . . Certainly, neither the Court nor the Defendant

should be required to sift through all of Plaintiff's previously stated allegations in order to piece together a claim." *Danielson v. Chester Twp.*, 2013 U.S. Dist. LEXIS 164271, at *24 (D. N.J. Nov. 19, 2013). Instead, "each count of a properly pled complaint must contain its own cause of action and those particular factual allegations that would allow the Court to draw the reasonable inference that the defendant is liable for that cause of action." *Id.*; *see also Coyne v. Holy Family Apartments*, 2021 U.S. Dist. LEXIS 129891, at *13-15 (E.D. Pa. July 13, 2021) (same).

In short, "Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." *United States, ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003).

Likewise, Rule 8(d) requires each allegation to be "simple, concise and direct." Fed. R. Civ. P. 8(d)(1).

Failure to comply with Rule 8 pleading requirements is grounds for dismissal. *Kamdem-Ouaffo*, 810 F. App'x at 84 (citing *Salahuddin*, 861 F.2d at 42); *see also Coyne*, 2021 U.S. Dist. LEXIS 129891 at *15. Indeed, the Third Circuit has instructed that a district court has the discretion to dismiss a pleading *sua sponte* for failure to comply with Rule 8 pleading requirements:

> Rule 8 requires that a pleading contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief," and averments that are "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). "Taken together," Rules 8(a) and 8(d)(1) "underscore the emphasis placed on clarity and brevity by the federal pleading rules." *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702 (3d Cir. 1996) (citation omitted). A district court may *sua sponte* dismiss a complaint for failure to comply with Rule 8 when the complaint is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised," *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)

*DiGenova v. Unite Here Local 274*, 849 F. App'x 331, 333 n.1 (3d Cir. 2021)

**B.      Failure to State a Claim – Fed. R. Civ. P. 12(b)(6)**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pled factual allegations as true and view them in the light most favorable to the plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *see also DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262-63 (3d Cir. 2008).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement, but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendants are liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pled facts give rise to a plausible inference, that inference alone will not entitle the plaintiff to relief *Id*. at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id*.

"[A] motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011). Although courts must accept well-pleaded factual allegations in the complaint as true, courts are "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d

Cir. 2007) (citations omitted). To survive a Rule 12(b)(6) motion to dismiss, a party is not required to establish the elements of a prima facie case but must nevertheless plead sufficient factual allegations to "raise a reasonable expectation that discovery will reveal evidence of [each] necessary element." *Fowler*, 578 F.3d at 213 (internal quotation marks and citation omitted).

Generally, a court may not consider extraneous documents when considering a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). If matters outside the pleadings are presented to and not excluded by a court at a motion to dismiss, the motion must be treated as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). However, when reviewing the sufficiency of a complaint, a court may consider exhibits attached to it, which are incorporated within the complaint or which are otherwise integral to the complaint, without converting the motion into one for summary judgment. *See In re Burlington*, 114 F.3d at 1426 (A court may consider a "document integral to or explicitly relied upon in the complaint." (citations omitted)); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

In addition, courts may consider public records, including judicial proceedings, without converting a motion to dismiss into one for summary judgment: "To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint." *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999); *In re Energy Future Holdings Corp.*, 990 F.3d 728, 737 (3d Cir. 2021) (same).

The court's ability to take judicial notice of prior judicial proceedings is especially

helpful in the context of *res judicata* and collateral estoppel:

> the Court did not convert Defendant's motion to dismiss into a
> motion for summary judgment when it determined that collateral
> estoppel barred Plaintiff's claims. Resolving Plaintiff's claims only
> necessitated a review of Plaintiff's complaint and court records
> from his prior action in this Court. The court records are
> indisputably authentic matters of public record, and are thus
> readily cognizable at this stage. *See, e.g., Johnson v. N.Y.C.*, 347 F.
> App'x 850, 851 (3d Cir. 2009) (affirming dismissal on *res judicata*
> grounds and noting "a *res judicata* defense may be raised in a
> motion to dismiss when the defense is apparent on a review of court
> records of which a court can take notice") (citing *Day v. Moscow*,
> 955 F.2d 807, 811 (2d Cir. 1992)). In addition, Plaintiff, in his
> complaint, explicitly references (and relies upon as the basis of his
> claims) the prior litigation. Accordingly, the Court appropriately
> took notice of and relied upon the documents necessary to resolve
> the effect of collateral estoppel on the current action without
> converting the motion to a summary judgment motion.

*Robinson v. Robinson*, 2015 U.S. Dist. LEXIS 4731, at *4-6 (D.N.J. Jan. 15, 2015)


## II.    THE COUNTER-COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO COMPLY WITH RULE 8 PLEADING REQUIREMENTS

### A.    Instead of a "short and plain" statement comprised of "simple, concise and direct" factual allegations, Moldovsky's 610-paragraph, 144-page counterclaims are rambling, conclusory, confusing and indecipherable.

Moldovsky's counterclaims are prolix, argumentative, disjointed, rambling, and

essentially unintelligible. The undersigned has attempted to make sense of Moldovsky's

pleading but is unable to do so, and perhaps the best way to demonstrate this, is to respectfully

invite the Court to read the 610-paragraph, 144-page counterclaims in their entirety.

In very broad terms, Moldovsky embarks on a disorganized, apparently stream-of-

consciousness litany of complaints, seemingly raising every conceivable slight by Mr. Miller

(and others, including nonparties) from 2014 through the present, including as his former

friend, as former co-counsel in two matters which Moldovsky settled back in 2016, and as counsel for Lightbox in a number of concluded and/or pending matters in state and federal courts in New York.

Along the way, Moldovsky raises numerous allegations against at least three nonparties (Alexander Fink, Susan Stein, and Jill Ellner), *see* Countercl. at ¶¶ 15, 18, 63-68, 91, 128-129, 307, 323, 363, 400-407, 541-547, 552-560; names Mr. Ellner and LBV as both "counterclaim defendants" and "third party defendants," *see* ECF #16 at 1; confusingly uses "Lightbox" to refer sometimes to Mr. Ellner, LBV and LBC and at other times only to LBV and LBC, *compare* Countercl. at ¶ 3 *with* ¶ 6;[2] conflates five or six alleged statutory violations of three different states into a single cause of action, *see* Countercl. at ¶ 384; seeks $1 million in legal damages as a form of injunctive relief and as a form of equitable estoppel, *see id.* at ¶ 569 and at pp. 187-188 (¶¶ 19-20); incorporates by reference an unrelated party's redacted, non-public factual allegations from a different lawsuit pending in a different court and in a different state, *see id.* at ¶ 558; accuses Mr. Miller, admittedly a licensed lawyer, of unauthorized practice of law, *compare id.* at ¶ 10 with ¶¶ 390-404; and accuses Mr. Miller of engaging in "wrongful and perverse misuse of process" and "malicious abuse" by making electronic court filings at night and on weekends and holidays, *see id.* at ¶ 388(d), (q), (u), ¶ 397(o); sending lengthy faxes to another nonparty (Samuel Stretton), *see id.* at ¶ 382(e), serving amended documents without an accompanying "blackline" version, *see id.* at ¶ 198(g),(h), ¶ 388(l), (m), ¶ 397(m), making "countless misrepresentations" and "endless lies" to the New York courts, *id.* at ¶ 388(r), aiding and abetting his own alleged misconduct, *id.* at ¶ 546, filing "impossible" cross-claims on behalf

---

[2] Paragraph 6 is just one example of Moldovsky's characteristically sloppy pleading; it states, "Lightbox and the other Counterclaim Defendants in part have aided and abetted Mr. Miller and Mr. Ellner . . . ." Since Mr. Miller, Mr. Ellner, and LBV are the *only* counterclaim defendants, Moldovsky's reference to "the other Counterclaim Defendants" seems to make no sense whatsoever.

of his clients, *id.* at ¶¶ 6, 254, 307(c), 382(b), 388(t), 394, 396, seeking extensions of time in New York's Appellate Division on "false pretenses," *id.* at ¶ 382(s), and sundry other allegations of dubious relevance and materiality.

Unlike *pro se* litigants whose pleadings are afforded a measure of indulgence due to their lack of legal training and experience, Moldovsky is an experienced attorney and should be held responsible for complying with basic federal pleading requirements. "[P]ro se attorneys . . . typically cannot claim the special consideration which the courts customarily grant to pro se parties." *Feingold v. Unitrin Direct,* 2012 U.S. Dist. LEXIS 82593, at *7 (E.D. Pa. June 14, 2012) (quotations omitted); *see also Jones v. Nat'l Commun. & Surveillance Networks*, 409 F. Supp. 2d 456, 465 (S.D.N.Y. 2006) (*pro se* attorney's complaint failed to comply with Rule 8 pleading requirements because "[i]ts often repetitive and unstructured narrative strings together multiple menacing events which Plaintiff alleges constitute a wide-flung conspiracy whose object is to harass and intimidate him," which allegations were "largely conclusory," "ambiguous and unintelligible," and "render[] impossible any meaningful response by Defendants, or analysis by the Court").

Instead of seeking redress in the various courts in which Mr. Miller and Lightbox's purported misconduct occurred, before the judges presiding over those proceedings, who are presumably familiar with the underlying issues and overarching dispute, Moldovsky demands that this Court intervene and award him damages in excess of $1 million.

The Supreme Court has expressed concern about permitting plaintiffs to weaponize the court system and consume judicial and adverse party resources with largely groundless claims asserted for *in terrorem* purposes. *See Twombly*, 550 U.S. at 557-58. In this case, and as described below in further detail, Moldovsky pleads causes of action that do not exist, raises legal issues that have been decided against him on at least four previous occasions, seeks remedies that

border on nonsensical,[3] and demands that this Court interfere with legal proceedings pending in other courts.

Although this is technically Moldovsky's initial pleading in this matter, he has had ample opportunity to craft intelligible, coherent, focused, succinct, and well-pleaded counterclaims. In 2019, Moldovsky amended his complaint in the Bucks County Matter — arising from the same basic facts as those alleged here — no fewer than five times, but ultimately abandoned that action within three days of receiving Mr. Miller's initial discovery demands in that case. *See* Miller Cert., Exhs. 37, 39, 41, 43, 45, 47-49. Moreover, nineteen of Moldovsky's twenty remaining counterclaims are substantially identical to those plead in Moldovsky's 542-paragraph complaint in the "Moldovsky S.D.N.Y. Matter" — which was indefinitely stayed by that court's *sua sponte* order and then voluntarily dismissed.[4] *Cf.* Miller Cert., Exh. 85. Now, instead of taking care to prepare an intelligible, straightforward, rule-compliant and legally sufficient counter-complaint, Moldovsky simply copy-pasted his S.D.N.Y. causes of action as counterclaims in this matter.

For the foregoing reasons, Moldovsky's counterclaims should all be dismissed under Rule 8. With respect, the counterclaims are an exhaustively muddled, unintelligible hodge-podge of hyperbolic and conclusory accusations — far from the "short and plain" statement and "simple, concise and direct" factual allegations required under Rule 8. Neither this Court nor

---

[3] E.g., seeking $1 million in damages as a "permanent injunction" and as a form of "equitable estoppel," and additionally demanding that "Counterclaim Defendants should be estopped from continuing to represent against the Counterclaim Plaintiffs," Countercl. at ¶ 584

[4] *Moldovsky v. Miller et al.*, No. 21-cv-02452 (S.D.N.Y.). The district court judge in that case, the Hon. Naomi Reice Buchwald, questioned why Moldovsky had filed that action to begin with. Judge Buchwald stayed that matter indefinitely, noting, "It is obviously of no benefit to the parties or the judicial system to have potentially overlapping cases pending in multiple jurisdictions concerning the same basic set of facts between the same parties." *See* Miller Cert., Exhs. 86, 88. Apparently unable to adequately allay Judge Buchwald's concerns, Moldovsky elected to dismiss that action in its entirety and to refile essentially identical causes of action as counterclaims  and third-party claims in this Court. *See* Miller Cert., Exh. 89.

any of the other parties should be burdened with trying to decipher and sift through this "bucket of mud." *See Coyne*, 2021 U.S. Dist. LEXIS 129891 at *15.

## III.   ALL COUNTERCLAIMS ARISING FROM MR. MILLER'S ALLEGED CONFLICTS OF INTEREST AND PROFESSIONAL MISCONDUCT SHOULD BE DISMISSED ON GROUNDS OF ISSUE PRECLUSION

Issue preclusion, also known as collateral estoppel, prevents the re-litigation of an issue that was litigated and decided in an earlier proceeding. In this case, Moldovsky's contention that Mr. Miller's representation of Lightbox creates a conflict of interest in derogation of Mr. Miller's duties owed to Mr. Moldovsky, his former client, was rejected by four courts: the Southern District of New York, the New York Supreme Court, the Pennsylvania Court of Common Pleas, and New York's Appellate Division. Thus, all of Moldovsky's counterclaims based on Mr. Miller's purported conflicts of interest and professional misconduct are conclusively barred by collateral estoppel, including prima facie tort (Count 5), breach of fiduciary duty (Count 10), legal malpractice (Count 11), violation of the NJCFA (Count 12), violation of the UTPCPL (Count 13), breach of contract (Count 14), and aiding and abetting (Count 15).

### A.   Issue preclusion under Federal, New York, and Pennsylvania law

"[C]ollateral estoppel is a permissible basis for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Leyse v. Bank of Am., N.A.*, 804 F.3d 316, 320 (3d Cir. 2015); *see also Koch v. Pechota*, 744 F. App'x 105, 113 (3d Cir. 2018) (affirming 12(b)(6) dismissal on grounds of issue preclusion).

"[F]ederal courts should apply the general rule that the preclusive effect of a judgment is determined by the preclusion law of the issuing court." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 135 (3d Cir. 1999).

### 1.    Federal law

When examining the preclusive effect of a prior federal court determination (in this case, the S.D.N.Y. Interpleader[5]), federal law principles of collateral estoppel apply. *Id.* at 145. Under federal law, collateral estoppel is appropriate where: "(1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question." *Bd. of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc.-Pension Fund v. Centra*, 983 F.2d 495, 505 (3d Cir. 1992).

Issue preclusion does not require a prior decision on the ultimate legal issue, but merely a final determination on the underlying factual issue to which the bar is asserted. *Centra*, 983 F.2d at 505-6.

"To apply issue preclusion, a court need not find that the claims in two separate actions were identical; rather, identical factual or legal issues may be material to both actions, even if the claims they support are somewhat different." *Alevras v. Tacopina*, 226 F. App'x 222, 228 (3d Cir. 2007). "[I]n considering the 'dimensions of an issue' for purposes of issue preclusion, a court should ask, inter alia, 'Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?' and 'How closely related

---

[5] *Lightbox Ventures, LLC v. 3rd Home Limited et al.*, No. 16-cv-2379 (S.D.N.Y.). *See* Miller Cert. at ¶ 12, 28 & Exhs. 11-15, 56-62; *cf.* Countercl., Exh. A (ECF #16-1).

are the claims involved in the two proceedings?'" *Peloro v. United States*, 488 F.3d 163, 175 n.12 (3d Cir. 2007) (quoting Restatement (Second) of Judgments § 27, cmt. c). "[O]nce an issue is raised and determined, it is the entire issue that is precluded, not just the particular arguments raised in support of it in the first case." *Alevras*, 226 F. App'x at 231 (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)).

### 2.    New York law

To the extent that New York law controls the scope of collateral estoppel arising from New York proceedings (in this case, the Scarola Matter[6] and the N.Y. Appeals[7]), New York's Court of Appeals has aptly summarized:

> Two requirements must be met before collateral estoppel can be invoked. There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and there must have been a full and fair opportunity to contest the decision now said to be controlling. The litigant seeking the benefit of collateral estoppel must demonstrate that the decisive issue was necessarily decided in the prior action against a party, or one in privity with a party. The party to be precluded from relitigating the issue bears the burden of demonstrating the absence of a full and fair opportunity to contest the prior determination.
>
> The doctrine, however, is a flexible one, and the enumeration of these elements is intended merely as a framework, not a substitute, for case-by-case analysis of the facts and realities. In the end, the fundamental inquiry is whether relitigation should be permitted in a particular case in light of fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results. No rigid rules are possible . . .

*Buechel v. Bain*, 766 N.E.2d 914, 919 (N.Y. 2001) (quotations omitted).

---

[6] *Scarola Malone & Zubbov LLP v. Ellner et al.*, No. 651324/2017 (N.Y. Sup. Ct., N.Y. County). *See* Miller Cert. at ¶¶ 14-15, 29 & Exhs. 18-25, 63-67; *cf.* Countercl., Exhs. D, I, J, N (ECF #16-4, -9, -10, -14).

[7] *See* Miller Cert. at ¶¶ 16-18 & Exhs. 26-35; *cf.* Countercl., Exhs. C, K, M (ECF #16-3, -11, -13).

3.    **Pennsylvania law**

And, to the extent that Pennsylvania law controls the scope of collateral estoppel arising from Pennsylvania proceedings (in this case, the Bucks County Matter[8]), the Third Circuit has instructed:

> Under Pennsylvania law, issue preclusion applies where: (1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

*Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357-358 (3d Cir. 1999); *see also Greenway Ctr., Inc. v. Essex Ins. Co.*, 475 F.3d 139, 147 (3d Cir. 2007) (citing *Shaffer v. Smith*, 673 A.2d 872, 874 (Pa. 1996)).

With respect to the second element, the Third Circuit explains that "for purposes of issue preclusion (as distinguished from merger and bar), 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded preclusive effect." *Greenleaf*, 174 F.3d at 358 (quoting Restatement (Second) of Judgments § 13 (1982) and citing *Shaffer*, 673 A.2d at 875).

"Pennsylvania law takes a broad view on what constitutes a 'final judgment' for purposes of res judicata." *Richardson v. Folino*, 2012 U.S. Dist. LEXIS 177241, 2012 WL 6552916, at *6 (W.D. Pa. 2012) (citations omitted). Issue preclusion "is applicable when it is determined that the issue to be carried over was adequately deliberated and firm, even if not final in the sense of forming the basis for a judgment already entered." *Greenleaf*, 174 F.3d at 358 (citing Restatement (Second) of Judgments § 13, cmt. g (quotations omitted)). Four factors may be considered in determining whether a prior decision is "sufficiently firm" to trigger collateral

---

[8] *See* Miller Cert. at ¶¶ 19-22, 30 & Exhs. 36-49, 68-78; *cf.* Countercl., Exhs. G, H, L (ECF #16-7, -8, -12).

estoppel: "(1) whether the prior decision was adequately deliberated and firm and not avowedly tentative; (2) whether the parties were fully heard; (3) whether the court supported its decision with a reasoned opinion; (4) whether the court's prior decision was subject to appeal or was in fact reviewed on appeal." *Id.* "The test of finality, however, is whether the conclusion in question is procedurally definite and not whether the court might have had doubts in reaching the decision." RESTATEMENT (SECOND) OF JUDGMENTS § 13, cmt. g; *see also Greenleaf*, 174 F.3d at 358.

> **B.    All of Moldovsky's counterclaims based on Mr. Miller's purported conflict of interest are barred by collateral estoppel.**

> **1.    At least seven of Moldovsky's counterclaims center on the premise that Mr. Miller is conflicted from representing Lightbox against Moldovsky, failed to protect Moldovsky's confidential information, and/or engaged in other types of attorney misconduct.**

Moldovsky contends that in addition to Mr. Miller representing Mr. Moldovsky and his wife in a personal dispute with their children's private school in 2015-2016 ("Abrams I" and "Abrams II") (together, the "Abrams Matters"),[9] Mr. Miller also represented both Mr. Moldovsky and his law firm in various unidentified matters as late as 2018. Moldovsky further contends that the Abrams Matters in Pennsylvania are substantially related to Moldovsky's dispute with Lightbox in New York, and that Mr. Miller disregarded the purported conflict of interest by representing Lightbox against Moldovsky.

This is the fundamental premise of at least seven of Moldovsky's counterclaims: prima facie tort (Count 5), breach of fiduciary duty (Count 10), legal malpractice (Count 11), violation

---

[9] *Abrams Hebrew Academy v. Moldovsky et al. ("Abrams I")*, No. 2015-02876 (Ct. of C.P., Bucks County), and *Moldovsky v. Abrams Hebrew Academy et al. ("Abrams II")*, No. 2015-03839 (Ct. of C.P., Bucks County). *See* Miller Cert. at ¶¶ 8-10 & Exhs. 1-6; *cf.* Countercl., Exh. E (ECF #16-5).

of the NJCFA (Count 12), violation of the UTPCPL (Count 13), breach of contract (Count 14), and aiding and abetting (Count 15).[10]

For his prima facie tort claim, Moldovsky contends that Mr. Miller committed "malfeasance" by "recklessly and negligently" representing Lightbox in its dispute with Moldovsky, "his clients," and by failing to protect their confidential information. *See* Countercl. at ¶¶ 419-420.

Moldovsky further contends that Mr. Miller breached his "fiduciary duty of loyalty that he owed [Moldovsky] as a result of their attorney-client relationship by . . . failing to ensure that he and his law firm remained free of conflicts of interest" in violation of Pa. RPC 1.7(b) (concurrent conflict of interest), and that Moldovsky was forced to move for Mr. Miller's disqualification. *See* Countercl. at ¶¶ 477-483.

For his legal malpractice counterclaim, Moldovsky contends that "Mr. Miller has breached his duty of trust and loyalty to his clients [i.e., Moldovsky]" and committed malpractice by representing Lightbox against Moldovsky in violation of Rules 1.6, 1.7, 1.8(b), 1.9, 3.3 of the Rules of Professional Conduct of Pennsylvania, New York and New Jersey, and that Moldovsky was forced to move for Mr. Miller's disqualification. *See* Countercl. at ¶¶ 488-497.

Moldovsky contends that Mr. Miller violated the NJCFA and also the UTPCPL "by violating 3 states' Rules of Professional Conduct by purposely, willfully, and knowingly positioning himself in a conflict with current and former clients." *See* Countercl. at ¶¶ 506-513; ¶¶ 518-524.

---

[10] Mr. Miller's purported conflict of interest also seems to be the basis for Count 20 (equitable estoppel), but this counterclaim is too unintelligible to say for certain. In any event, Pennsylvania does not recognize a cause of action for equitable estoppel. *Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990).

Moldovsky contends that Mr. Miller breached his contractual duties owed to Moldovsky by representing Lightbox against Moldovsky in violation of Pa. RPC 1.7. *See* Countercl. at ¶¶ 531-533.

For his aiding and abetting counterclaim, Moldovsky contends that "Mr. Miller encouraged, directed, and persisted in utilizing Mr. Miller's representation against the Counterclaim Plaintiffs despite being aware of his conflicts of interests . . . ." *See* Countercl. at ¶ 546.

> **2.     Four courts have already determined that Mr. Miller was not subject to a conflict of interest and did not engage in any misconduct relating to Moldovsky's attorney-client confidences or otherwise warranting disqualification.**

Moldovsky previously raised Mr. Miller's purported conflicts of interest, misconduct and ethical violations in four different courts. All four courts rejected Moldovsky's contentions. This appears to be Moldovsky's fifth bite at the apple.[11]

Moldovsky's *first* motion, filed in the S.D.N.Y. Interpleader in June 2018, purported that Mr. Miller should be disqualified due to alleged violations of Rules 1.6, 1.7, 1.8 and 1.9 of New York's Rules of Professional Conduct. *See* Miller Cert. at ¶ 28 & Exhs. 56-62.

Among many other things, Moldovsky argued that Mr. Miller's representation of Lightbox amounted to "a direct conflict of interest," requiring Mr. Miller's disqualification, *see* Miller Cert., Exh. 56 at 1; that "the matters in which he acted as co-counsel with and counsel to the Moldovsky Firm in 2015 [i.e., the Abrams Matters] are substantially related to [Moldovsky's] fee dispute with Lightbox and Mr. Ellner," *id.*, Exh. 58 at 3;[12] that, "In the course of his

---

[11] Including the six original and amended pleadings in the discontinued Bucks County Matter and the 542-paragraph complaint in the dismissed Moldovsky S.D.N.Y. Matter, this could be considered Moldovsky's *twelfth* bite at the apple.

[12] *Cf.* Countercl. at ¶ 136 (virtually identical allegation).

representation Mr. Miller was provided with, digested and absorbed many pages and oral

communications of and about personal and law firm financial information, family information,

bills, salaries and hourly rates as well as profits and expenses, payment of outside legal fees, and

was acquainted with the manner in which the undersigned engages, negotiates, deals and

prefers to handle matters with personal situations, disputes, claims other counsel and parties,

much of it confidential," *id.*, Exh. 58 at 5;[13] and that "at least some of the confidential

information has been used by Mr. Miller to benefit Mr. Ellner and Lightbox," *id.*, Exh. 58 at 6.

That motion was fully briefed by both sides and denied by the district court in June 2018.

Miller Cert., Exh. 62. Moldovsky did not appeal this decision, nor move for reconsideration, and

the time for doing so has long expired. Fed. R. Civ. P. 60(c)(1).

Moldovsky's *second* motion, filed in the Scarola Matter in March 2019, similarly sought

Mr. Miller's disqualification due to alleged forms of professional misconduct, including

violations of *both* New York's *and* Pennsylvania's Rules of Professional Conduct, including Rules

1.6, 1.7, 1.8, 1.9, 3.2, 3.7, and the so-called "hot potato" doctrine.[14] *See* Miller Cert. at ¶ 29 & Exhs.

63-67.

Once again, Moldovsky argued that Mr. Miller was subject to a direct conflict of interest

arising from his representation of Lightbox against Moldovsky; that Mr. Miller embarked on a

continuing "vendetta-driven rampage under the guise of litigation" against Moldovsky, that Mr.

Miller "unethically sabotage[d] communications between Lightbox and Brem Moldovsky, LLC"

and "attack[ed]" Mr. Moldovsky "with rage, vengeance and scapegoating;" that Mr. Miller was

responsible for an "aggressive and frivolous" appeal, "frivolous" motions, and "ongoing

---

[13] *Cf.* Countercl. at ¶ 48 (virtually identical allegation).

[14] Under the "hot potato" doctrine, an attorney may not avoid a disqualifying conflict by dropping the less desirable client like a "hot potato." *See Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 209 (S.D.N.Y. 2009).

excessively aggressive, venomous, frivolous litigation and animosity;" and that Mr. Miller "reveal[ed] and use[d]" Moldovsky's "confidential information" against him, in breach of Mr. Miller's "duties of loyalty, trust and confidentiality." *See* Miller Cert., Exh. 63 at pp. i-iii (table of contents).

That motion, too, was fully briefed by both sides and denied by the N.Y. Supreme Court in July 2019. Miller Cert., Exh. 22 at 6. Moldovsky filed a notice of appeal but abandoned that appeal without perfecting it. S*ee id.* at ¶ 18 & Exh. 27; *cf.* 22 NYCRR § 1250.9 (six months to perfect appeals in New York).

Moldovsky's *third* motion, filed in the Bucks County Matter in March 2019, once again sought Mr. Miller's disqualification due to alleged violations of Rules 1.6, 1.7, 1.8, 1.9, 3.2, 3.3, 3.7 "and others" of Pennsylvania's Rules of Professional Conduct, and once again invoked the "hot potato" doctrine. *See* Miller Cert. at ¶ 30 & Exhs. 68-78. Among other things, Moldovsky argued that the Pennsylvania Court of Common Pleas should disqualify Mr. Miller from representing Lightbox in New York, including in the Scarola Matter and the Second Circuit Appeal.[15] *See* Miller Cert., Exh. 77 at T27:5-31:22.

Yet again, Moldovsky argued that Mr. Miller was subject to a conflict of interest because his prior representation of Mr. Moldovsky in the Abrams Matters was "substantially related" to Moldovsky's dispute with Lightbox, including "causes of action for breach of contract, fraudulent inducement, fraud and fraudulent misrepresentation, an [*sic*] negligent misrepresentation," *see* Miller Cert., Exh. 68 at ¶ 19; that Mr. Miller embarked on a continuing "vendetta-driven rampage," attacking Moldovsky "with rage, vengeance and scapegoating under the guise of litigation," *id.* at p. 17; engaging in "a non-stop, over-inflated, self-righteous,

---

[15] *Lightbox Ventures, LLC v. Brem Moldovsky, L.L.C.*, No. 18-3721-cv (N.Y. App. Div., 1st Dep't). *See* Miller Cert. at ¶ 13 & Exhs. 16-17; *cf.* Countercl., Exh. B (ECF #16-2).

baseless, bitter assault," including "litigation, threats, violation of the Moldovskys' rights, psychological attacks, and more," *id.* at ¶ 64, "retaliatory threats to reveal confidential information," *id.* at p. 20; "scorch and burn type litigation with sharp practices aplenty," *id.* at ¶ 89. Moldovsky further argued that Mr. Miller should be disqualified for breaching his duty of candor to the tribunal, i.e. purportedly lying to the court. *See* Miller Cert., Exh. 72 at 11-13.

Once again, Moldovsky had a full and fair opportunity to argue these issues, including full briefing, *see* Miller Cert., Exhs. 68, 71, 72, 74, 76, and oral argument, *see id.*, Exh. 77 at T7:3-31:22. The Pennsylvania court denied the motion in August 2019 — noting, in particular, that Moldovsky's attempt to disqualify Mr. Miller from representing Lightbox in New York was "inappropriate and without a legal basis," *see* Miller Cert., Exh. 78, and "borders on absurd," *see id.*, Exh. 77 at T19:3-6. Moldovsky did not appeal this decision, nor move for reconsideration, and the time for doing so has long expired. 210 PA. CODE § 903 (thirty days to take an appeal in Pennsylvania).

Moldovsky's *fourth* motion, filed in New York's Appellate Division in May 2020 in connection with one of the N.Y. Appeals, once again sought Mr. Miller's disqualification due to alleged violations of Rules 1.6, 1.7, 1.9, 3.2 and 3.7 of the Rules of Professional Conduct of both New York and Pennsylvania. *See* Miller Cert. at ¶¶ 31-32 & Exhs. 79-84.

Once again, Moldovsky argued that Mr. Miller was subject to a conflict of interest because his prior representation of Mr. Moldovsky in the Abrams Matters was "substantially related" to Moldovsky's dispute with Lightbox and that Mr. Miller improperly used Moldovsky's confidential information, *see* Miller Cert., Exh. 80 at ¶¶ 29, 48-49, engaged in "virtually non-stop, scorch and burn type litigation with sharp practices," *id.* at ¶ 59, "embarked on a campaign of unprofessional and defamatory allegations," *id.* at ¶ 65, improperly used Moldovsky's confidential information against him, *id.* at ¶ 70, engaged in frivolous litigation, *id.*

at ¶ 72, engaged in other, supposedly "egregious" misconduct such as failing to provide blackline copies of amended papers, filing "unauthorized," "improper" and "untimely" papers, improperly filing papers "late at night" and/or "over a holiday weekend," *id.* at ¶ 76, concealed from Moldovsky his purported "history" of "undermining counsel he is working with, turning people against each other, making ad hominem defamatory allegations and statements, and undermining clients," *id.* at ¶¶ 83-85, and made various "misrepresentations" to various courts, *see* Miller Cert., Exh. 83 at ¶¶ 24-26.

Moldovsky's fourth motion, too, was fully briefed by both sides and denied by the N.Y. Appellate Division in August 2020. *See* Miller Cert., Exh. 84. Moldovsky has not moved for reconsideration nor for leave to appeal to New York's Court of Appeals, and the thirty-day period for doing so has long expired. 22 NYCRR § 1250.16(d)(1).

### 3.    Issue Preclusion Analysis

The preclusive effect of the denial of Moldovsky's motion in the S.D.N.Y. Interpleader is determined by federal principles, set forth above. There is no question that Moldovsky was a party in the prior adjudication; even if Mr. Moldovsky was not technically a formal party he was in privity with his law firm, which was. Likewise, the S.D.N.Y. Interpleader resulted in a judgment on the merits, both in the usual sense of a final judgment, *see* Miller Cert., Exh. 14, and also in the sense of a final determination on the underlying factual issues raised by Moldovsky's motion. *Centra*, 983 F.2d at 505-6; *cf*. Miller Cert., Exh. 62. And Moldovsky had a full and fair opportunity to litigate those issues, including a letter motion, a ten-page, single-spaced reply brief with over 100 pages of exhibits, and  a sur-sur reply. *See* Miller Cert., Exhs. 56-61.

Moreover, as detailed in the previous subjection, the issues raised and decided against Moldovsky in that motion included whether Mr. Miller was subject to a conflict of interest and

thus prohibited from representing Lightbox in its dispute with Moldovsky, and whether Mr. Miller had improperly revealed Moldovsky's confidential and/or privileged information, or improperly used such information against Moldovsky, in violation of the Rules of Professional Conduct and Mr. Miller's continuing duties owed to former clients thereunder.

The preclusive effect of the denials of Moldovsky's motions in the New York Supreme Court and its Appellate Division is determined by New York law. Once again, there is no question that Moldovsky was a party in those actions (i.e., Brem Moldovsky, LLC as a formal party and Brem Moldovsky, Esq. being  in privity with his law firm). *Buechel*, 766 N.E.2d at 920 ("In the context of collateral estoppel, privity . . . includes those who are successors to a property interest, those who control an action although not formal parties to it, [and] those whose interests are represented by a party to the action." (quotation omitted)). And, Moldovsky plainly had a full and fair opportunity to litigate each motion, including a 34-page memorandum of law, a 27-page reply memorandum, a 3-page, single-spaced sur-reply, and voluminous exhibits submitted to the New York Supreme Court, *see* Miller Cert., Exhs. 63-67, and a 42-page, 102-paragraph affirmation, a 44-page, 116-paragraph reply affirmation, and even more voluminous exhibits submitted to the Appellate Division, *see id.*, Exhs. 79-83.

The issues raised and decided against Moldovsky in the two New York motions included, once again, whether Mr. Miller was subject to a conflict of interest and thus prohibited from representing Lightbox in its dispute with Moldovsky, had improperly revealed Moldovsky's confidential and/or privileged information and/or improperly used such information against Moldovsky, or had violated his duty of candor to the tribunal and/or engaged in sundry other forms of misconduct warranting disqualification.

The preclusive effect of the denial of Moldovsky's motions in the Bucks County Matter is determined by Pennsylvania law. Again, there is no question that Moldovsky was the movant.

*See* Miller Cert., Exh. 68 at ¶ 1. Also, the Pennsylvania court's decision was plainly a "final judgment" in the sense of procedural finality. *See Greenleaf*, *supra*, 174 F.3d at 358. And, Moldovsky unquestionably had a full and fair opportunity to litigate the issues raised in his Pennsylvania motion, including a 43-page, 169-paragraph motion, a 22-page memorandum of law, a 17-page reply memorandum, a 5-page sur-sur-reply, voluminous exhibits and oral argument. *See* Miller Cert., Exhs. 68-77.

The issues raised and decided against Moldovsky in the Bucks County Matter included, yet again, whether Mr. Miller was subject to a conflict of interest and thus prohibited from representing Lightbox in its dispute with Moldovsky, had improperly revealed Moldovsky's confidential and/or privileged information and/or improperly used such information against Moldovsky, or had violated his duty of candor to the tribunal and/or engaged in sundry other forms of misconduct warranting disqualification.

In light of these four adjudications, Moldovsky is collaterally estopped from contending that Mr. Miller's representation of Lightbox amounts to a conflict of interest in derogation of his ethical, fiduciary and/or contractual obligations purported owed to Moldovsky, and is likewise estopped from contending that Mr. Miller improperly revealed Moldovsky's confidential and/or privileged information and/or improperly used such information against Moldovsky. In a similar vein, Moldovsky is collaterally estopped from contending that Mr. Miller violated his duty of candor to the tribunal in any of the prior matters and/or engaged in sundry other forms of misconduct, i.e. of a type that might warrant disqualification.

In denying Moldovsky's four motions to disqualify Mr. Miller, each court considered and rejected Moldovsky's arguments. In doing so, each court necessarily found that Mr. Miller was not conflicted from representing Lightbox against Moldovsky; that Mr. Miller had not lied to the

court; and that Mr. Miller had not committed the kind of professional misconduct that might warrant disqualification. These issues fall squarely within the ambit of preclusion.

Moreover, the fact that Moldovsky's contentions have been rejected by federal and state courts in two states, including an appellate court, strengthens the preclusive effect of each single decision and further reinforces that Moldovsky should not be permitted to relitigate these same issues a fifth time in this Court. Counts 5, 10, 11, 12, 13, 14 and 15 should all be dismissed with prejudice.

### C.   Even in the absence of collateral estoppel, Mr. Miller cannot be sued for doing exactly what four courts authorized him to do.

Setting aside the preceding discussion regarding collateral estoppel, the indisputable fact remains that since June 2018 no fewer than four courts in two states permitted Mr. Miller to represent Lightbox in the various legal proceedings in New York. Four courts in two states found nothing improper about Mr. Miller representing Lightbox in matters adverse to Moldovsky, and likewise found nothing improper about Mr. Miller's advocacy in those matters — notwithstanding Moldovsky's insistence that Mr. Miller has engaged in a "vendetta-driven rampage," has attacked Moldovsky "with rage, vengeance and scapegoating under the guise of litigation," and  has engaged in "a non-stop, over-inflated, self-righteous, baseless, bitter assault," including "psychological attacks" against him.

Mr. Miller cannot be held liable for representing Lightbox in its dispute with Moldovsky, when four courts, each one presiding over that dispute and fully aware of Mr. Miller's conduct before it, repeatedly authorized Mr. Miller to do so. Respecting and following judicial guidance is not unethical, negligent, tortious or otherwise wrongful conduct. All counterclaims centered on Mr. Miller's representation of Lightbox in the Southern District of New York and/or in the

state trial and appellate courts on New York, fail to state a claim. These counterclaims — Counts 5, 10, 11, 12, 13, 14 and 15 — should be dismissed with prejudice.

## IV.   ALL COUNTERCLAIMS ARISING FROM STATEMENTS MADE IN THE COURSE OF LEGAL PROCEEDINGS ARE BARRED BY THE LITIGATION PRIVILEGE

The litigation privilege affords litigants and their attorneys absolute immunity for statements made during the course of legal proceedings. In this case, no fewer than ten of Moldovsky's counterclaims arise from alleged misrepresentations and defamatory statements made (or allegedly made) by Mr. Miller and Lightbox during the course of legal proceedings in state and federal courts in New York, including malicious prosecution (Count 1), abuse of process (Count 2), deceit and collusion (Count 3), failure to rectify misrepresentations to the court (Count 4), prima facie tort (Count 5), defamation and libel (Count 6), legal malpractice (Count 11), violation of the NJCFA (Count 12), violation of the UTPCPL (Count 13), and permanent injunction (Count 18). These counterclaims should all be dismissed as barred by the litigation privilege.

### A.   The litigation privilege is broadly construed and absolute.

In an action based on diversity of citizenship jurisdiction, district courts apply the substantive law of the forum state, including its choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Pennsylvania's choice of law rules, New York has the most interest in issues of litigation privilege arising in connection with New York legal proceedings. *See Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 806 (Pa. 1964).

In New York, oral and written statements made in the course of judicial proceedings are absolutely privileged if, by any view or under any circumstances, they may be considered pertinent to the litigation:

"New York has traditionally accorded an absolute privilege to oral or written communications made in the course of judicial proceedings and which relate to the litigation." *D'Annunzio v. Ayken, Inc.*, 876 F. Supp. 2d 211, 216 (E.D.N.Y. 2012); *see also Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 146 (E.D.N.Y. 2010). A statement made in the course of a judicial proceeding "is absolutely privileged if, by any view or under any circumstances, it may be considered pertinent to the litigation." *Sklover v. Sack*, 102 A.D.3d 855, 958 N.Y.S.2d 474, 476 (App. Div. 2013) (quoting *Martirano v. Frost*, 25 N.Y.2d 505, 507, 255 N.E.2d 693, 307 N.Y.S.2d 425 (1969)); *see also Kelly v. Albarino*, 485 F.3d 664, 664 (2d Cir. 2007) (affirming district court's discussion of the absolute privilege that applies to statements made by participants in judicial proceedings). The common law litigant's privilege "offers a shield to one who publishes libelous statements in a pleading or in open court for the purpose of protecting litigants' zeal in furthering their causes." *D'Annunzio*, 876 F. Supp. 2d at 217 (quoting *Bridge C.A.T. Scan Assocs. v. Ohio—Nuclear, Inc.*, 608 F. Supp. 1187, 1195 (S.D.N.Y. 1985)).

*Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 455-56 (E.D.N.Y. 2013).

If and to the extent Moldovsky's largely indecipherable counter-complaint asserts claims arising from statements made in Pennsylvania legal proceedings, such as the Bucks County Matter or this present matter, Pennsylvania law is substantially the same:

As a general rule there is no civil liability for statements made in the pleadings or during trial or argument of a case so long as the statements are pertinent. The privilege, which includes judges, lawyers, litigants and witnesses, had its origin in defamation actions premised upon statements made during legal actions, but it has now been extended to include all tort actions based on statements made during judicial proceedings . . . . "The form of the cause of action is not relevant to application of the privilege. Regardless of the tort contained in the complaint, if the communication was made in connection with a judicial proceeding and was material and relevant to it, the privilege applies." *Clodgo by Clodgo v. Bowman*, [601 A.2d 342, 345 (Pa. Super. 1992)]. The privilege is equally applicable where the cause of action is stated in terms of misrepresentation or a contractual requirement to exercise due care.

*Panitz v. Behrend*, 632 A.2d 562, 564 (Pa. Super. 1993).

The litigation privilege is absolute and cannot be destroyed by abuse. *Greenberg v. Aetna Ins. Co.*, 235 A.2d 576 (Pa. 1967), *cert. denied sub nom.*, *Scarselletti v. Aetna Casualty & Surety Co.*, 392 U.S. 907 (1968). Moreover, the privilege extends not only to statements made in court, but also less formal communications, such as preliminary conferences and correspondence between counsel in furtherance of the client's interest. *Pelagatti v. Cohen*, 536 A.2d 1337, 1344 (1987), *appeal denied*, 548 A.2d 256 (Pa. 1988); *see also Agresta v. Goode*, 797 F. Supp. 399, 405 (E.D. Pa. 1992). Lastly, all doubt as to whether the alleged defamatory communication was indeed pertinent and material to the relief or redress sought is to be resolved in favor of pertinency and materiality. *Greenberg*, 235 A. 2d at 578.

In short, so long as the statements "are pertinent, relevant and material to any issue in a civil suit, there is no civil liability for making any of them." *Greenberg*, 235 A.2d at 578; *Selas Corp. of Am. v. Wilshire Oil Co.*, 344 F. Supp. 357, 359 (E.D. Pa. 1972)

### B.     All of Moldovsky's counterclaims arising from Mr. Miller's and/or Lightbox's statements made in the course of litigation are barred by the litigation privilege

As noted, ten of Moldovsky's counterclaims arise from statements allegedly made in the course of litigation in New York; all such claims are barred by the litigation privilege and should be dismissed.

For his malicious prosecution claim (Count 1), Moldovsky alleges that Mr. Miller and Lightbox filed "an overly broad, utterly false and malicious Interpleader Complaint," in the Southern District of New York, *see* Countercl. at § 373, "maliciously filed, pursued and refused to withdraw . . . allegations of attorney misconduct, deceit, malpractice, etc." in New York Supreme Court, *id*. at 376, "maliciously" sought sanctions against Moldovsky based on "false and dismissed allegations," *id*. at ¶¶ 377-379, and "maliciously abused" Moldovsky through "various

lies and misrepresentations to the Court," *id.* at § 382(c), and any number of statements made in the context of litigation, *id.* at ¶ 382(g), (h), (j), (k), (n), (o), (p), (r), (s), (u), (v), (w), (y), (z).

For his abuse of process claim (Count 2), Moldovsky alleges that Mr. Miller and Lightbox made "defamatory slurs," *see* Countercl. at ¶ 388(a), "blatant misrepresentations to the Second Circuit," *id.* at ¶ 388(b), "almost countless misrepresentations" and "endless lies and misrepresentations" to "the Court," *id.* at ¶ 388(r), "malicious and false allegations," *id.* at ¶ 388(t), (z), "twisted falsehoods," *id.* at ¶ 388(x), and that Mr. Miller and Lightbox submitted "unwelcomed letters to the [New York] Court[s]," *id.* at ¶ 388(d), filed letters complaining about Moldovsky's litigation conduct, *id.* at ¶ 388(h), (j), (n), (p), engaged in "caricature" and "false [and] *ad hominem* attacks," *id.* at ¶ 388(o).

Moldovsky's counterclaims for "deceit and collusion" (Count 3) and "failure to rectify misrepresentations to the court" (Count 4) are similarly based on a similar litany of purported misrepresentations to the courts, including concerning Lightbox's fee agreement with Moldovsky and other "false allegations," "misrepresentations," defamatory statements and "fabricate[d] allegations," *see* Countercl. at ¶¶ 391-398; *see also id.* at § 406.

Moldovsky's counterclaim for "prima facie tort" (Count 5) should be dismissed because no such cause of action exists in Pennsylvania. *See infra* at 039. In addition to not being a viable cause of action, this claim should also be dismissed because it relies on Mr. Miller and Lightbox's "purposefully false misrepresentations to the Court." *See* Countercl. at ¶ 410.

For his defamation and libel claim (Count 6), Moldovsky contends that Mr. Miller and Lightbox have "purposely and regularly defamed [Moldovsky] across the public dockets of multiple courts for at least three years," and have "libeled and slandered" him by publishing defamatory allegations about him on the public docket of multiple courts. *See* Countercl. at ¶¶ 423, 430.

Moldovsky's legal malpractice claim (Count 11) is based, in part, on the allegation that Mr. Miller made "false statements" and breach[ed] his duty of candor to the tribunal," by "filing false statements" and "other misconduct, misrepresentations, fraud, chicanery and such." *See* Countercl. at ¶ 497(e), (g), (k).

Moldovsky's counterclaims under the NJCFA (Count 12) and the UTPCPL (Count 13) are based, in part, on the allegation that Mr. Miller "committed fraud . . . by lying to the Court [and] attacking [Moldovsky's] character," *see* Countercl. at ¶¶ 509, 520, and by "misstatements to the Court [and] perjury," *id.* at ¶¶ 511, 522.

Lastly, Moldovsky's demand for a permanent injunction (Count 18) is based on Moldovsky's allegation of a "vast and incessant pattern of . . . lying, misrepresentations, re-litigation of dismissed claims and allegations, ongoing malicious abuse, and regular unending defamation and abuse." *See* Countercl. at ¶ 568.

All of the foregoing claims rest, entirely or in large part, on statements allegedly made by Mr. Miller and Lightbox in the course of concluded and ongoing legal proceedings and about matters pertinent to those proceedings. All such statements are absolutely privileged and cannot give rise to civil liability. All such claims — Counts 1-6, 11-13, and 18 — should be dismissed.

(In addition to the broad-based grounds for dismissal set forth in this section and those preceding it, the sections below focus on more specific grounds for dismissing Moldovsky's counterclaims. Counts which are not specifically addressed below are nevertheless subject to dismissal for one or more of the broad-based grounds, Sections II through IV.)

## V.   COUNT 1 ("MALICIOUS PROSECUTION") SHOULD BE DISMISSED

Moldovsky's first counterclaim, purportedly for "malicious prosecution," jumbles together alleged occurrences in a number of concluded and still-pending legal proceedings in

New York state and federal courts, including the S.D.N.Y. Interpleader,[16] the Second Circuit

Appeal,[17] the Scarola Matter,[18] and various of the interlocutory N.Y. Appeals arising from the

Scarola Matter,[19] as well as the recently filed Ellner E.D. Pa. Matter.[20] *See* Countercl. at ¶¶ 372-382.

For this counterclaim, Moldovsky likewise jumbles together an unwieldy hodge-podge of

Pennsylvania, New York and New Jersey statutes, including the Pennsylvania Unfair Trade

Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 *et seq.*,[21] the New Jersey

Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1 et seq.,[22] New York General Business Law § 349

("N.Y. GBL § 349"),[23] Pennsylvania's Dragonetti Act, 42 Pa.C.S. § 8351 *et seq.*, and Sections 478,

484, 485 and 485-a of New York's Judiciary Law.[24] *See* Countercl. at ¶ 384.

---

[16] *Lightbox Ventures, LLC v. 3rd Home Limited et al.*, No. 16-cv-2379 (S.D.N.Y.). *See* Miller Cert. at ¶ 12 & Exhs. 11-15; *cf.* Countercl., Exh. A (ECF #16-1).

[17] *Lightbox Ventures, LLC v. Brem Moldovsky, L.L.C.*, No. 18-3721-cv (N.Y. App. Div., 1st Dep't). *See* Miller Cert. at ¶ 13 & Exhs. 16-17; *cf.* Countercl., Exh. B (ECF #16-2).

[18] *Scarola Malone & Zubabov LLP v. Ellner et al.*, No. 651324/2017 (N.Y. Sup. Ct., N.Y. County). *See* Miller Cert. at ¶¶ 14-15 & Exhs. 18-25; *cf.* Countercl., Exhs. D, I, J, N (ECF #16-4, -9, -10, -14).

[19] *See* Miller Cert. at ¶¶ 16-18 & Exhs. 26-35; *cf.* Countercl., Exhs. C, K, M (ECF #16-3, -11, -13).

[20] *Ellner v. Moldovsky et al.*, No. 20-cv-06190 (E.D. Pa.). *See* Miller Cert. at ¶¶ 23-26 & Exhs.50-53; *cf.* Countercl. at ¶ 380.

[21] The UTPCPL "does not apply to attorney misconduct." *Beyers v. Richmond*, 937 A.2d 1082, 1084 (Pa. 2007) ("We hold the UTPCPL does not apply to attorney misconduct."); *see also id.* at 1093 (the UTPCPL "does not apply to attorneys practicing law.") (Cappy, C.J., concurring).

[22] "[A]n attorney acting in her professional capacity cannot be held liable under the New Jersey Consumer Fraud Act." *Tran v. Hae Yeon Baik*, 406 F. App'x 661, 662 n.1 (3d Cir. 2011) (citing *Macedo v. Dello Russo*, 840 A.2d 238, 242 (N.J. 2004)).

[23] N.Y. GBL § 349, New York's consumer protection statute, "applies solely to matters affecting the consumer public at large." *Kirk v. Heppt*, 532 F. Supp. 2d 586, 591 (S.D.N.Y. 2008) (citing *Vitolo v. Mentor H/S. Inc.*, 213 Fed. Appx. 16, 17 (2d Cir. 2007). "Private contract disputes, unique to the parties, are not covered by the statute." *Id.* (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741 (N.Y. 1995). "A dispute . . . arising out of [an] attorney-client relationship . . . is "essentially contractual in nature" and not actionable as consumer fraud under N.Y. GBL § 349. *Id.*

[24] These New York statutes all relate to the unauthorized practice of law and cannot plausibly apply to Mr. Miller, an attorney licensed to practice law in New York, New Jersey and Pennsylvania — as Moldovsky himself admits. *See* Countercl. at ¶ 10.

In addition to dismissal under Rule 8, this counterclaim should be dismissed for failure to state a claim.

### A.     New York law governs Moldovsky's malicious prosecution claim.

While it is unclear whether Moldovsky's malicious prosecution claim is *plead* under New York or Pennsylvania law, his claim is, in fact, governed by the substantive law of New York. Under Pennsylvania's choice of law rules, New York has the most interest in claims for malicious prosecution arising in connection with New York legal proceedings. *See Griffith, supra,* 203 A.2d at 806. "The rights and liabilities of the parties for malicious prosecution or abuse of process are determined by the local law of the state where the proceeding complained of occurred, unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties." RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 155 (2nd 1988); *Lohman v. Oxford*, 816 F. Supp. 1025, 1031 (E.D. Pa. 1993) (same); *A-G Administrators v. Durham Life Ins. Co.*, 1996 U.S. Dist. LEXIS 12378, at *14 (E.D. Pa. Aug. 22, 1996) ("[T]he law of the state where the courts and its processes were allegedly maliciously used, is the law that the forum state should turn to to identify the standard to be applied. This is especially so when the law of the state where the alleged malicious behavior took place is less restrictive concerning such behavior and it is a state that disfavors malicious prosecution generally.")

In any event, Moldovsky has failed to state a claim under either state's substantive law.

### B.     Moldovsky's claim fails under both New York and Pennsylvania law.

In order to state a claim for the tort of malicious prosecution under New York law, a party must show (1) the initiation of a proceeding against that party; (2) the termination of the

proceeding in that party's favor; (3) lack of probable cause for commencing the proceeding; and (4) malice as a motivating factor. *See Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997).

In Pennsylvania, allegations of malicious prosecution invoke the Dragonetti Act, 42 Pa.C.S. § 8351 *et seq.*, which replaced Pennsylvania's former common law cause of action for malicious prosecution. *Ludmer v. Nernberg*, 553 A.2d 924, 925-26 (Pa. 1989); *Matter of Larsen*, 616 A.2d 529, 587 (Pa. 1992). Under the Dragonetti Act,

> A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings [if]:
>
> (1) he acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
>
> (2) the proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S. § 8351(a).

### 1.    The Scarola Matter (and the N.Y. Appeals)

Moldovsky fails to state a claim for malicious prosecution in connection with the Scarola Matter (and the various interlocutory appeals arising from the Scarola Matter) because that matter is "ongoing." *See* Countercl. at ¶ 75; *see also id.* at ¶ 572.

Apparently aware of this fatal flaw, Moldovsky purports that each individual motion is a separate "proceeding" for purposes of malicious prosecution. Under that view, a party who prevails on a pretrial motion in a pending matter may file a Dragonetti Act / malicious prosecution action based on the argument that the motion was a discrete "proceeding" that terminated in his or her favor.

There is no legal authority for Moldovsky's rather fanciful notion. It is settled law that a party cannot bring a claim for malicious prosecution until the underlying action, in its entirety,

has been terminated in their favor. "[A] claim in the nature of malicious prosecution . . . is premature prior to the determination of the main action." *Harris v. Steinem*, 571 F.2d 119, 124 (2d Cir. 1978); *see also In re Solv-Ex Corp. Sec. Litig.*, 198 F. Supp. 2d 587, 597 (S.D.N.Y. 2002).

The same holds true under Pennsylvania law: "It is well settled law that for claims under the Dragonetti Act the underlying litigation must be final before a counterclaim can be brought. Here, the underlying litigation is still pending." *Gordian Med., Inc. v. Gentell, Inc.*, 2013 U.S. Dist. LEXIS 118486, at *6 (E.D. Pa. Aug. 21, 2013) (dismissing Dragonetti Act claim); *see also Tax Matrix Techs., LLC v. Wegmans Food Mkts., Inc.*, 154 F. Supp. 3d 157, 186 n.8 (E.D. Pa. 2016) (Robreno, J.) ("[A] party bringing a Dragonetti action must show that it prevailed in the underlying action. Because the instant litigation has not yet been terminated, much less terminated in Wegmans' favor, any Dragonetti claim by Wegmans is premature.") (dismissing Dragonetti Act counterclaim).

In addition to there being no final determination in the Scarola Matter, Moldovsky's malicious prosecution claim fails because neither Mr. Miller nor Lightbox initiated that matter. Instead, it was the plaintiff, Scarola Malone & Zubatov, LLP that filed the Scarola Matter against Lightbox (in March 2017), and that likewise amended its complaint to name the Moldovsky Firm as an additional defendant (in September 2018). *See* Countercl. at ¶¶ 75, 159; *cf*. Miller Cert., Exhs. 18, 20. Moreover, it was the Moldovsky Firm that filed cross-claims against Lightbox (in February 2019), eleven months before Mr. Ellner and LBV responded with cross-claims of their own (in January 2020). *See* Countercl. at ¶¶ 187, 192; *cf*. Miller Cert., Exh. 21. On such facts — alleged squarely within the four corners of Moldovsky's counter-complaint here — Moldovsky does not, and cannot, plead that it was Mr. Miller or Lightbox who initiated the Scarola Matter. *See Baldini v. Shah*, 2018 U.S. Dist. LEXIS 241270, at *14 (S.D.N.Y. Aug. 9, 2018) (malicious

prosecution claim fails as a matter of law, where the plaintiff does not allege that the defendant was the one who brought the underlying proceeding).

## 2. The S.D.N.Y. Interpleader (and the Second Circuit Appeal)

Moldovsky fails to state a claim for malicious prosecution in connection with the S.D.N.Y. Interpleader (and the related Second Circuit Appeal) for the simple reason that he fails to allege that Lightbox filed the interpleader without probable cause and cannot plausibly allege that he was the prevailing party in the interpleader.

Mr. Ellner and LBV filed the S.D.N.Y. Interpleader to resolve competing charging liens asserted by the Scarola and Moldovsky law firms against LBV's recovery from the Third Home Matter. *See* Miller Cert., Exh. 12 at ¶¶ 1-8 (interpleader complaint). Scarola and Moldovsky each filed motions to dismiss the interpleader in its entirety, but the district court denied their motions in part, dismissing counts 2-5 of the complaint and allowing count 1, seeking interpleader relief only, to proceed. *See id.*, Exh. 13 (order). In doing so, and in ultimately awarding interpleader relief by determining each firm's lien claims, the district court necessarily found that there was probable cause to file the interpleader proceeding. Denial of a motion to dismiss axiomatically "constitutes a judicial recognition of the existence of probable cause for the action," thus precluding as a matter of law a subsequent claim for malicious prosecution. *Wilderhomes, LLC v. Zautner*, 885 N.Y.S.2d 714 (N.Y. Sup. Ct. 2009); *see also Holber Assocs., L.P. v. Reckson Operating P'ship, L.P.*, 2017 NY Slip Op 32089(U) (N.Y. Sup. Ct., Oct. 3, 2017).

In *Holber*, the court explained:

> This Court agrees with defendants that Justice Bucaria's decisions —denial of a motion to dismiss and denial of a summary judgment motion — were judicial recognitions of probable cause in the underlying joint venture action. As noted above, a party that brings a malicious prosecution claim must show "an entire lack of probable cause" in the underlying proceeding. *Engel v. CBS, Inc.*, 93

> N.Y. 2d 195, 204, 711 N.E.2d 626, 689 N.Y.S.2d 411 (1999). Holber has
> failed to do so here. Therefore, defendants' motion to dismiss the
> malicious prosecution claim is granted.

*Id.* at ¶ 16.

Moreover, Mr. Ellner and LBV were prevailing parties in the S.D.N.Y. Interpleader. Scarola and Moldovsky each asserted that they were entitled to all of LBV's monetary recovery — well in excess of $200,000 — but the district court ruled that Scarola was not entitled to a charging lien in any amount, and that Moldovsky was entitled to only $45,926 — a small fraction of what Moldovsky demanded. *See* Mold. Exh. A (ECF #16-1) (interpleader decision). In the unique context of an interpleader proceeding, the interpleader plaintiff prevails by obtaining a binding resolution of the interpleader defendants' competing claims to the same money — especially where less than one-fifth of that money is actually awarded to one of the defendants. *See Mut. Life Ins. Co. v. Bondurant*, 27 F.2d 464, 466 (6th Cir. 1928).

Lastly, any malicious prosecution claim asserted in connection with the S.D.N.Y. Interpleader and/or the Second Circuit Appeal is time-barred. There is a one year statute of limitation for a malicious prosecution claim under New York law. *Noga v. City of Schenectady*, 169 F. Supp. 2d 83, 91 (N.D.N.Y. 2001); *see also* N.Y. CPLR § 215(3). In this case, the Second Circuit Appeal was decided over one year ago, in April 2020. *See* Mold. Exh. B (ECF #16-2).

In light of the foregoing, Count 1 ("malicious prosecution") should be dismissed.

## VI.    COUNT 2 ("ABUSE OF PROCESS") SHOULD BE DISMISSED

### A.    Moldovsky's abuse of process counterclaim is governed by New York law.

As explained above and for substantially the same reasons, *supra* at 34, Moldovsky's

counterclaim for abuse of process is governed by New York law, where all of Mr. Miller's

complained-of "abuse" occurred. *Cf.* Countercl. at ¶ 388(a)-(y).[25]

### B.    Moldovsky fails to state a claim for abuse of process.

The Second Circuit recently summarized New York law applicable to abuse of process

thus:

> Under New York law, "a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (internal quotation marks omitted). . . .
>
> [M]ere "institution of a civil action by summons and complaint is not legally considered process capable of being abused." *Curiano v. Suozzi*, 63 N.Y.2d 113, 116, 469 N.E.2d 1324, 480 N.Y.S.2d 466 (1984). The New York Court of Appeals has explained that, to qualify as legal process for purposes of an abuse-of-process claim, the court-issued writ must not only "direct[] or demand that the person to whom it is directed shall perform or refrain from the doing of some prescribed act," but also "interfere[] with one's person or property." *Williams* [*v. Williams*, 23 N.Y.2d 592, 596, 246 N.E.2d 333, 298 N.Y.S.2d 473 (1969)] (internal quotation marks omitted). Because no

---

[25] To the limited extent that Moldovsky alleges that the Ellner E.D. Pa. Matter is an abuse of process, *cf.* Countercl. at § 388(z), Moldovsky does not allege that Mr. Miller represents Mr. Ellner in that matter. Moreover, Moldovsky does not allege that the Ellner E.D. Pa. Matter was filed "primarily to accomplish a purpose for which the process was not designed," *see Angino v. Branch Banking & Tr. Co.*, 2021 U.S. App. LEXIS 14019, at \*5 (3d Cir. May 12, 2021), but only that it is meritless. Even if filing a meritless action amounted to abuse of process, which it does not, the Court has already ruled that Mr. Ellner's claims have sufficient merit to survive a motion to dismiss and to proceed through discovery. *See* Miller Cert., Exh. 52. Moreover, Moldovsky's contention that the Ellner E.D. Pa. Matter is an abuse of process in its entirety, such a claim should be dismissed as unripe. "By definition, a lawsuit in its entirety cannot constitute an abuse of process when it has not yet been concluded." *Giordano v. Claudio*, 714 F. Supp. 2d 508, 533 (E.D. Pa. 2010) (quotation omitted).

such interference flows from the issuance of a civil summons, the commencement of a civil action cannot, by itself, support a plaintiff's claim for abuse of process, even when the civil action was "intended to cause the plaintiff[] expense and to burden [him] with the defense of a protracted legal proceeding." *Curiano*, 63 N.Y.2d at 116 (internal quotation marks omitted); *see also Williams*, 23 N.Y.2d at 596 . . . .

For similar reasons, Plaintiffs cannot successfully rest their abuse-of-process claim on Defendants' use of appeals, objections, and motions to prosecute their civil lawsuits against Plaintiffs. . . . Those various court filings do not qualify as legal process because these mechanisms do not require Plaintiffs to "perform or refrain from the doing of some prescribed act" and are no more encumbering of Plaintiffs' persons or property than a civil summons and complaint. *Julian J. Studley, Inc. v. Lefrak*, 41 N.Y.2d 881, 884, 362 N.E.2d 611, 393 N.Y.S.2d 980 (1977) (holding that a defendant's filing of an affidavit requesting that an agency investigate a plaintiff's alleged misdeeds does not constitute legal process).

*Manhattan Enter. Grp. LLC v. Higgins*, 816 F. App'x 512, 514-15 (2d Cir. 2020).

"Generally in the context of an abuse of process claim, legal process means that *a court* issued the process, and the plaintiff will be penalized if he violates it." *Sunil Walia v. Holder*, 59 F. Supp. 3d 492, 511-12 (E.D.N.Y. 2014) (quotation omitted; emphasis in original); *see also Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) (same).

In this case, Moldovsky's abuse of process claim rests on a myriad of events in prior and ongoing legal proceedings in New York, which Moldovsky deems to be a "wrongful and perverse misuse of process." *See generally* Countercl. at § 388. Moldovsky fails to allege that Mr. Miller (or Lightbox) misused court-issued "legal process," meaning a writ, summons, or other process interfering with Moldovsky's person or property, *see Williams*, 23 N.Y.2d at 596, for a "collateral objective that is outside the legitimate ends of the process," *Savino*, 331 F.3d at 76. Letters, motions, and other court filings are not "legal process" for purposes of an abuse of process claim, nor is a plaintiff's commencement of an action via summons. *Higgins*, 816 F. App'x at 515; *Curiano*, 63 N.Y.2d at 116.

Moldovsky has failed to allege the elements of abuse of process in New York. Count 2 ("abuse of process") should be dismissed.

## VII.   COUNT 5 ("PRIMA FACIE TORT") SHOULD BE DISMISSED

### A.   Pennsylvania has not recognized a cause of action for prima facie tort.

Moldovsky's counterclaim for "prima facie tort" (Count 5) appears to subsume within it claims for negligence, abuse of process and malfeasance. However, Pennsylvania has not recognized prima facie tort as a cause of action. *See D'Errico v. DeFazio*, 763 A.2d 424, 433 (Pa. Super. Ct. 2000), *appeal denied*, 782 A.2d 546 (Pa. 2001).

In fact, in this District, Judge Kenney very recently addressed this issue and concluded that "the great majority of courts" agree that prima facie tort is not a cause of action in Pennsylvania. *See Anand v. Indep. Blue Cross*, 2021 U.S. Dist. LEXIS 138414, at *53 (E.D. Pa. July 23, 2021) ("The Supreme Court of Pennsylvania has not yet ruled on whether prima facie tort is recognized in Pennsylvania, nor has the Third Circuit predicted whether the Supreme Court of Pennsylvania would recognize such a claim. . . . This Court agrees with the great majority of courts that have addressed this issue, finding that the Pennsylvania Supreme Court would not likely recognize prima facie tort as a cause of action."); *see also, e.g., Charles Shaid of PA v. George Hyman Constr. Co.*, 947 F. Supp. 844 (E.D. Pa. 1996) (Robreno, J.).

In *Charles Shaid*, this Court reviewed in depth the history of prima facie tort and concluded:

> No plaintiff bringing suit under Pennsylvania law has ever recovered under a theory of prima facie tort. No Pennsylvania court interpreting Pennsylvania law has ever stated that, in Pennsylvania, prima facie tort is a valid cause of action. After canvassing the authorities and forecasting how the Pennsylvania Supreme Court would apply Pennsylvania public policy and balance the social utility of adopting section 870 of the Restatement (Second) against the social costs, the Court concludes that if presented with a claim

for prima facie tort, the Pennsylvania Supreme Court would not recognize such a cause of action under Pennsylvania law.

*Id*. at 855-856.

**B.      Moldovsky has failed to state a claim under New York law.**

Under New York law, the elements of prima facie tort are: "(1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful." *Freihofer v. Hearst Corp.*, 480 N.E.2d 349 (N.Y. 1985) (internal quotes and citations omitted).

"A critical element of the cause of action is that plaintiff suffered specific and measurable loss." *Id*. "Special damages are limited to losses having pecuniary or economic value and must be fully and accurately stated, with sufficient particularity to identify actual losses." *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 277 (S.D.N.Y. 2003); *see also* Fed. R. Civ. P. 9(g).

Moreover, "a claim of prima facie tort [can] not be used to avoid the requirements . . . set for traditional torts, such as malicious prosecution." *Engel v. CBS, Inc.*, 711 N.E.2d 626, 630 (N.Y. 1999). "New York courts have consistently refused to allow retaliatory lawsuits based on prima facie tort[,] predicated on the malicious institution of a prior civil action." *Curiano v. Suozzi*, 469 N.E.2d 1324, 1327 (N.Y. 1984). Prima facie tort is not "a 'catch-all' alternative for every cause of action which cannot stand on its legs." *Id*. at 1328 (quotation omitted).

In this case, Moldovsky has failed to allege special damages with any specificity whatsoever, and his prima facie tort claim is simply a catchall alternative for his failed malicious prosecution, abuse of process, and breach of fiduciary duty claims. *See* Countercl. at ¶¶ 410-420. Count 5 ("prima facie tort") should be dismissed.

**VIII.   COUNT 7 ("TORTIOUS AND MALICIOUS INTERFERENCE") SHOULD BE DISMISSED**

For this counterclaim, Moldovsky alleges that "from Fall 2017 through the Spring of 2018," while Moldovsky was still representing Lightbox, Mr. Miller "interfered" with their "working relationship," thereby leading to Moldovsky's withdrawal from representation. *See* Countercl. at ¶¶ 435-436.

For reasons already discussed, New York law applies to this claim. Moldovsky represented Lightbox in New York, not in Pennsylvania nor anywhere else, and New York has the greatest interest in protecting New York business relationships (or in this case, attorney-client relationships) from tortious interference by another.

Moldovsky withdrew from representing Lightbox in April 2018. *See* Mold. Exh. A (ECF #16-1) at 2; *see also* Miller Cert., Exh. 8. Any claim for tortious interference in connection to Moldovsky's relationship with Lightbox is barred by the three-year statute of limitations. *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 239 (S.D.N.Y. 2018); *see also Bandler v. DeYonker*, 101 N.Y.S.3d 847, 848 (N.Y. App. Div. 2019) ("The statute of limitations for tortious interference with contract and with prospective business relations is three years from the date of injury, which is triggered when a plaintiff first sustains damages.") (citing N.Y. CPLR § 214(4)).

Moldovsky also alleges that Mr. Miller and Lightbox "attempted to interfere" with Moldovsky's other business relationships "by reaching out to [his] colleagues to attempt to malign [him] and by trying to destroy [his] reputation, time and ability to serve clients." *Id.* at ¶ 445. This, too, fails to state a claim.

"Under New York law, to state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that (1) it had a business relationship with a third

party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006) (quotation omitted). "In addition, the defendant's interference must be direct. The defendant must target some activities directed toward the third party and convince the third party not to enter into a business relationship with the plaintiff." *Gym Door Repairs*, 331 F. Supp. 3d at 239. "It is axiomatic that, in order to prevail on this claim, [a plaintiff] would have to show that the [defendant] intentionally caused the [third party] not to enter into a contractual relation with them." *G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 768 (2d Cir. 1995).

In this case, Moldovsky does not allege that Mr. Miller or Lightbox directly targeted Moldovsky's clients or potential clients, much less cause them not to enter into a contractual relationship with him (nor, for that matter, to end a pre-existing relationship). Moldovsky also does not allege that his unnamed "colleagues" were potential sources of business for him and that Mr. Miller or Lightbox caused any of these colleagues to withhold business referrals that would otherwise have gone to Moldovsky. Instead, Moldovsky merely alleges that Mr. Miller and Lightbox "attempted to" interfere, "attempt[ed] to" malign him, and "tried to destroy" his reputation. Countercl. at ¶ 445.

Because Moldovsky does not allege that Mr. Miller and Lightbox's purported contacts with his "colleagues" actually caused them not to refer business to him, he fails to state a claim for tortious interference. *Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*, 857 F.2d 55, 75 (2d Cir. 1988) (affirming dismissal of tortious interference claim, because the appellants "have not alleged any particular business relations with which appellees interfered"); *see also Firebird Structures, LCC v. United Brotherhood of Carpenters & Joiners of Am., Local Union No. 1505*, 252 F.

Supp. 3d 1132, 1165 (D.N.M. 2017) ("Neither New Mexico nor, to the Court's knowledge, any

other jurisdiction recognizes a claim for *attempted* tortious interference." (emphasis added)).

In light of the foregoing, Count 7 ("tortious and malicious interference") should be

dismissed.

## IX.   COUNT 8 ("FRAUD AND FRAUD IN THE INDUCEMENT") AND COUNT 9 ("NEGLIGENT MISREPRESENTATION") SHOULD BE DISMISSED

Moldovsky has asserted several claims sounding in fraud and misrepresentation,

including "fraud and fraud in the inducement" (Count 8) and "negligent misrepresentation,"

(Count 9), as well as two consumer fraud claims: violation of the NJCFA (Count 12), and

violation of the UTPCPL (Count 13). This section focuses on Moldovsky's failure to state a claim

for common law fraud and negligent misrepresentation; the following section will address his

failure to state a claim for consumer fraud.

### A.   Claims sounding in fraud must be plead with particularity.

"In alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake." Fed. R. Civ. P. 9(b). Pursuant to Rule 9(b), a complaint alleging

fraud must include: "(1) a specific false representation of material fact; (2) knowledge by the

person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made;

(4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his [or

her] damage." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3d Cir. 2006). "Rule 9(b)

serves to give defendants notice of the claims against them, provide[ ] an increased measure of

protection for their reputations, and reduce[ ] the number of frivolous suits brought solely to

extract settlements." *Id.* (quotation omitted).

"Courts apply Rule 9(b) to every element of a fraud claim, including reliance, causation and injury." *Pennsylvania Employee Benefit Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 478-79 (D. Del. 2010). "A plaintiff can satisfy the Rule's particularity requirement with allegations of the date, time, or place of the fraud at issue[, or by] alternative means of injecting precision and some measure of substantiation into their allegations." *Seldon v. Home Loan Servs.*, 647 F. Supp. 2d 451, 472 (E.D. Pa. 2009) (quotation omitted).

This heightened pleading standard applies not only to causes of action explicitly labeled as fraud claims but also to any cause of action sounding in fraud, including negligent misrepresentation and consumer fraud. *See MHA, LLC v. Amerigroup Corp.*, 2021 U.S. Dist. LEXIS 94147, at *18-19 (D.N.J. May 17, 2021) ("Rule 9(b) also applies to claims under any legal theory whose supporting factual allegations 'sound in fraud.' As a result, if negligent misrepresentation, equitable estoppel, or promissory estoppel claims are based on intentional misrepresentations or knowingly false promises, Rule 9(b) applies.") (citing *In re Suprema Specialties*, *supra*, 438 F.3d at 272); *see also MZL Capital Holdings, Inc. v. TD Bank, N.A.*, 734 F. App'x 101, 104 (3d Cir. 2018) (NJCFA); *Singleton v. JAS Auto. LLC*, 378 F. Supp. 3d 334, 351 (E.D. Pa. 2019) ("judges in this District, including this Court, have noted that to state a claim under the catch-all provision [of the UTPCPL], a plaintiff may either (1) plead the elements of common law fraud or (2) otherwise allege deceptive conduct, subject to the particularity requirement of Rule 9(b)").

**B.    Pennsylvania law governs Moldovsky's common law fraud and misrepresentation claims.**

Moldovsky has asserted two common law and two statutory causes of action sounding in fraud, all of which are based on the same general theory, which is that, at various times between 2014 and 2017, Mr. Miller deceived Moldovsky by misrepresenting and/or concealing aspects of

his former employment with two law firms. Moldovsky contends that he relied on those alleged misrepresentations and omissions in deciding to retain Mr. Miller as co-counsel in the Abrams Matters, and again in referring Lightbox to him, and incurred damages as a result.

Moldovsky's allegations are utterly vague, as discussed below, but one thing is clear: the Abrams Matters were filed, litigated and settled in Pennsylvania, and Mr. Miller's legal services in those matters were provided to a Pennsylvania resident. *See* Mold. Exh. E (ECF #16-5); Miller Cert., Exh. 1 (retainer agreement). Accordingly, Pennsylvania has the greatest interest in issues of alleged common law fraud by a Pennsylvania attorney, Mr. Miller, in connection with his retention by a Pennsylvania resident, Moldovsky,[26] in relation to two Pennsylvania lawsuits.

### C.    Requisite legal elements for fraud, fraudulent concealment and negligent omission.

#### 1.    Fraud / Fraudulent Misrepresentation / Legal Fraud

Under Pennsylvania law, to maintain a claim for fraud a plaintiff must plead: '(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.'" *Seldon*, *supra*, 647 F. Supp. 2d at 472 (quoting *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994)).

---

[26] Moldovsky alleges that Mr. Miller was retained by the Moldovsky law firm and not just by Mr. Moldovsky. This does not alter the choice of law analysis. Brem Moldovsky, LLC is a Pennsylvania limited liability company whose managing member, Mr. Moldovsky, resides in Pennsylvania. *See* ECF #6 at ¶ 5 ("the Moldovsky Firm's main and primary office is in Pennsylvania"); ECF #6-2 at ¶ 5 ("Brem Moldovsky, Esq. is managing member [of Brem Moldovsky, LLC]").

2.      **Fraudulent Concealment / Fraudulent Omission**

Fraudulent concealment in Pennsylvania is grounded in Section 551 of the Restatement

(Second) of Torts. *Gaines v. Krawczyk*, 354 F. Supp.2d 573, 587 (W.D. Pa. 2004). To maintain a

claim for fraudulent concealment, a plaintiff must show that: "'(1) [Defendant caused] an

omission; (2) the omission was material to the transaction at hand; (3) the omission was made

falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) the

omission was made with the intent of misleading another into relying on it; (5) the plaintiff

justifiably relied on the omission; and (6) the resulting injury was proximately caused by the

reliance.'" *Marcum v. Columbia Gas Transmission, LLC*, 423 F. Supp. 3d 115, 121 (E.D. Pa. 2019)

(quoting *Gaines*, 354 F. Supp. 2d at 587).

3.      **Negligent Misrepresentation**

As for negligent misrepresentation, there are four elements: "(1) a misrepresentation of a

material fact; (2) the representor must either know of the misrepresentation, must make the

misrepresentation without knowledge as to its truth or falsity or must make the representation

under circumstances in which he ought to have known of its falsity; (3) the representor must

intend the representation to induce another to act on it; and (4) injury must result to the party

acting in justifiable reliance on the misrepresentation." *Gibbs*, *supra*, 647 A.2d at 890. In

addition, as in any theory of negligence, there must be a legal duty owed by the defendant to the

plaintiff. *Id.* ("Any action in negligence is premised on the existence of a duty owed by one party

to another.").

4.      **Equitable Fraud**

Moldovsky asserts a claim for "equitable fraud," *see* Countercl. at ¶¶ 468-470, but this is

no longer a cognizable claim in Pennsylvania. *See Rahemtulla v. Hassam*, 539 F. Supp. 2d 755, 771 (M.D. Pa. 2008).[27] Moreover, in jurisdictions where equitable fraud is recognized, the available remedies are rescission or reformation of a contract, not monetary damages.[28]

### 5.    Proximate Causation

Proximate causation is proximate cause is "an essential element" of any claim sounding in fraud. *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 445 (3d Cir. 2000).

The Third Circuit has instructed:

> Proximate cause is a question of law to be decided by the trial court. The court must ascertain whether a defendant's acts or omissions were a 'substantial factor' in bringing about the plaintiff's harm. In making this determination, Pennsylvania courts apply the factors listed in Restatement (Second) of Torts § 433: (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it; (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; [and] (c) lapse of time."

*Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 771-72 (3d Cir. 2009) (citations omitted).

---

[27] In *Rahemtulla*, the court explained that, under Pennsylvania common law, equitable fraud was a "creditor's bill" seeking to void a debtor's fraudulent conveyance, but was "largely" displaced by the 2007 enactment of the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"), 12 Pa.C.S. § 5101-5110. *Id.* at 771.

[28] In New Jersey, "the only relief that may be obtained [for equitable fraud] is equitable relief, such as rescission or reformation of an agreement and not monetary damages." *Fagan v. Fischer*, 2019 U.S. Dist. LEXIS 188078, at *59-60 (D.N.J. Oct. 30, 2019) (quoting *Enright v. Lubow*, 493 A.2d 1288, 1296 (N.J. App. Div. 1985)).

Similarly, the Southern District of New York has expressed "serious doubts about whether 'equitable fraud' is a cognizable cause of action under New York law and, if it is, whether it could afford a plaintiff damages, a remedy at law, or only equitable remedies, such as contract reformation." *Flemm v. Victory Commer. Mgmt.*, 2021 U.S. Dist. LEXIS 76870, at *21 (S.D.N.Y. Apr. 21, 2021) (*dicta*).

**D.    Moldovsky has failed to plead his fraud-related claims with particularity.**

In this case, Moldovsky alleges that he befriended Mr. Miller in 2014 and that, sometime around 2014-2016, Mr. Miller informed Mr. Moldovsky that "he had experienced difficulty with various colleagues and his former employers," suggested that he had been "victimized by each firm and some colleagues," and "conveyed [only] his side of the dispute." Countercl. at ¶¶ 29-32. Moldovsky further alleges that Mr. Miller "was purposefully inaccurate and dishonest," because he told a "sanitized" version of those alleged difficulties and "hid . . . that he actually was the main source of the problems he had" and that other lawyers had accused him of being "disloyal," "dishonest," "disgruntled," "harmful," "aggressive," "destructive," and that "he had been fired [for] attorney ethical misconduct." *Id*. at ¶¶ 34-36. Moldovsky further alleges that Mr. Miller told his "sanitized" version of his employment history "in order to foster a colleague relationship" with Moldovsky, to "ingratiate himself, secure referrals and seek benefit," *id*. at ¶ 452, that Moldovsky "reasonably and justifiably relied on Mr. Miller's misrepresentations" by hiring him to assist Moldovsky in the Abrams Matters, *id*. at ¶ 464, and that Moldovsky "was damaged" by these alleged misrepresentations, because if Moldovsky had known Mr. Miller's "real history" he would not have hired him for the Abrams Matters nor referred Lightbox to him, *id*. at ¶ 465.

Assuming the foregoing is true for Rule 12(b)(6) purposes, it is clear that Moldovsky has not plead the elements of fraud with particularity. As an initial matter, relating a "sanitized" version of one's employment history is generally not tortious,[29] and especially not in the context

---

[29] If, as Moldovsky suggests, lawyers were obliged to provide colleagues and potential clients an "unsanitized" version of their professional background, Moldovsky would be required to disclose to others the fact that he has been suing his former clients for the past three years and that his former clients have accused him of "fraud," "abuse," "vexatiousness," "ethical misconduct," "malpractice," "usury," "criminal violations," "blackmail," and "extortion." *Cf*. Countercl. at ¶ 423. Instead, Moldovsky's website states that he provides "excellent, caring and highly professional legal services"

*continued* . . .

of casual acquaintance and friendship. Moldovsky does not allege with particularity any facts to support the notion that Mr. Miller had a legal duty to disclose the "unsanitized" version of his employment history. Absent a legal duty to disclose such information, a claim for negligent misrepresentation or omission necessarily fails as a matter of law.

Moreover, Moldovsky fails to allege specifically when or where the alleged misrepresentations or omissions were made, or to otherwise inject precision into his allegations. *Cf. Seldon*, 647 F. Supp. 2d at 472. Moldovsky fails to raise specific allegations as to how the alleged misrepresentations or omissions were material to "the transaction at hand," whether that "transaction" was the November 2015 retainer agreement concerning the Abrams Matters, *see* Mold. Exh. E (ECF #16-5), or the "Fall of 2017" referral of Lightbox to Mr. Miller, *see* Countercl. at ¶ 75. Instead, Moldovsky states that the alleged misrepresentations and omissions occurred in casual conversation "during meals together in Bucks County and Mercer and Hunterdon Counties New Jersey and in phone calls in 2015-2016," as part of their "colleague and friendly relationship" rather than in a more formal business context. *Id.* at ¶¶ 28-29.

Also, Moldovsky does not allege with particularity the element of justifiable reliance. Moldovsky alleges that he met and befriended Mr. Miller in 2014 and that Mr. Miller disclosed "difficulties" with prior employers before Moldovsky hired him as co-counsel in the Abrams Matters in November 2015. Mr. Moldovsky does not explain why he did not inquire more specifically into Mr. Miller's "difficulties," ask Mr. Miller for a professional reference, or contact Mr. Miller's prior employers directly to inquire about Mr. Miller. There are generally two sides to any dispute. In this case, Moldovsky alleges that he was aware of Mr. Miller's purported

---

based on principles of "[j]ustice, loyalty [and] honesty." *See* https://www.bremmoldovskyllc.com/ (last accessed Aug. 3, 2021).

In any event, we are unaware of any competent legal authority requiring attorneys to inform colleagues and potential colleagues of their "unsanitized" professional background.

professional "difficulties" — because Mr. Miller himself told Moldovsky about them — but fails to explain how or why Moldovsky's decision to hire Mr. Miller as co-counsel, without performing basic due diligence, was justifiable.

Moreover, Moldovsky has failed to allege with particularity the elements of proximate causation and damages, i.e. *how* Mr. Miller's alleged misrepresentations and omissions proximately caused him to suffer damages at all, much less damages "in excess of $1,000,000." *Id.* at ¶¶ 470, 475.

Moldovsky does not allege, and cannot plausibly allege, that he incurred damages as a proximate result of retaining Mr. Miller as his co-counsel in the Abrams Matters. Moldovsky does not allege that Mr. Miller's misrepresentations and omissions hurt the litigation of those matters. Moldovsky was lead counsel in those matters, and both matters amicably settled on terms that were acceptable to Moldovsky. *See* Miller Cert., Exhs. 3-6.[30]

Instead, Moldovsky's legal theory appears to be that Mr. Miller's alleged misrepresentations and omissions caused him to refer Lightbox to Mr. Miller, which caused the disruption of Moldovsky's own relationship with Lightbox, which led to the past three years of litigation between Moldovsky and Lightbox, which caused Moldovsky to suffer unspecified "compensatory, incidental [and] consequential" damages. *See* Countercl. at ¶¶ 470, 475.

If that is indeed Moldovsky's theory of proximate causation, he has failed to allege any part of this daisy-chain of occurrences with the requisite particularity — and Moldovsky's theory is further undermined by the fact that it was he, not Mr. Ellner, who terminated their relationship. *See* Miller Cert., Exh. 8 (letter motion to withdraw).

---

[30] There is no dispute that Moldovsky was lead attorney in the Abrams Matters. As confirmed by these exhibits, Moldovsky, not Mr. Miller, signed the original complaint in Abrams II as well as the praecipes to discontinue both matters.

In moving to withdraw as Mr. Ellner and LBV's counsel in the Third Home Matter, Moldovsky represented to the court that this was due to "difficulty communicating," "strategic differences," and "substantial" unpaid fees. *See id.* Although Moldovsky alleges "upon information and belief" that "Mr. Miller's interference was the fulcrum of the issues leading to the Moldovsky Firm's withdrawal," *see* Countercl. at ¶¶ 435-436, conclusory "information and belief" allegations do not satisfy Rule 9(b)'s particularity requirement. *Gross v. Coloplast Corp.*, 434 F. Supp. 3d 245, 249 (E.D. Pa. 2020).

In *Gross*, the court explained that, where certain information germane to a fraud claim is within the exclusive possession of the defendant, a plaintiff may plead "information and belief" allegations but only if those allegations are accompanied by a particularized statement of the facts upon which the "information and belief" allegations are based:

> the normally rigorous particularity rule has been relaxed somewhat where the factual information is peculiarly within the defendant's knowledge or control. Thus, plaintiffs may plead certain factual allegations based "upon information and belief" but must allege that the necessary information lies within the defendant's control, and their allegations must be accompanied by a statement of the facts upon which the allegations are based. Boilerplate and conclusory allegations will not suffice.

*Id.*; *see also Schatzberg v. State Farm Mut. Auto. Ins. Co.*, 877 F. Supp. 2d 232 (E.D. Pa. 2012):

> [W]here factual information remains within the defendant's control, the particularity rule is somewhat relaxed. 'Relaxation,' however, does not translate into boilerplate and conclusory allegations, and plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible. Allegations based upon information and belief are permissible, but only if the pleading sets forth specific facts upon which the belief is reasonably based.

*Id.* at 248 n.7.

It is hornbook law that there is no proximate causation where the connection between the defendant's alleged wrongdoing and the plaintiff's damages is attenuated, remote, or not

reasonably foreseeable. "A fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance." RESTATEMENT (SECOND) OF TORTS, § 548A. The doctrine of proximate cause requires courts to determine, as a matter of law, whether the defendant's conduct was so remote that he cannot be held liable in tort for the harm to Plaintiff which subsequently occurred. *See Burns v. Patino*, 1999 U.S. Dist. LEXIS 10860, at *18-19 (E.D. Pa. July 8, 1999).

In this case, the issue of proximate cause turns on whether Moldovsky's alleged pecuniary losses from withdrawing from the Third Home Matter and then litigating against Lightbox for the past three years are a reasonably foreseeable result of Mr. Miller allegedly concealing the "unsanitized" version of his past employment history. Clearly, it was not. Mr. Miller could not reasonably foresee that "sanitizing" his own history when telling Moldovsky, in casual conversation between friends, about "difficulties" with prior employers, would result in Moldovsky being embroiled in litigation with Lightbox and suffering compensatory, incidental and consequential damages.

For all the foregoing reasons, Count 8 ("fraud and fraud in the inducement") and Count 9 ("negligent misrepresentation") should be dismissed.

## X.      COUNT 12 ("VIOLATION OF THE NJCFA") SHOULD BE DISMISSED

The Third Circuit has explained:

> To prove a violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 to -210, a plaintiff must establish "that the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff," *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007) (citing *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 647 A.2d 454, 462-65 (N.J. 1994)). There are three general types of "unlawful practices": "affirmative acts, knowing omissions, and regulation violations." *Id.* (quoting *Cox*, 647 A.2d at 462). A plaintiff

> asserting a claim based on an omission must demonstrate that the
> defendant "(1) knowingly concealed (2) a material fact (3) with the
> intention that plaintiff rely upon the concealment." *Judge v. Blackfin
> Yacht Corp.*, 357 N.J. Super. 418, 815 A.2d 537, 541 (N.J. Super. Ct. App.
> Div. 2003); *see also* N.J. Stat. Ann. § 56:8-2.

*Coba v. Ford Motor Co.*, 932 F.3d 114, 124 (3d Cir. 2019).

Here, Moldovsky alleges that Mr. Miller mislead him to believe that he would comply with his ethical obligations, but violated the Rules of Professional Conduct by engaging in a prohibited conflict of interest, by lying to the court and attacking Moldovsky, and by generally "neglect[ing] his fiduciary, loyalty and other obligations to Counterclaim Plaintiffs as their lawyer." *See* Countercl. at ¶¶ 507-512.

For reasons discussed at length above, the NJCFA claim should be dismissed because Moldovsky fails to plead with the requisite particularity. "A claim under the NJCFA must be plead with particularity pursuant to Rule 9(b)." *Agostino v. Quest Diagnostics*, 2005 U.S. Dist. LEXIS 64071, at *24 (D.N.J. Oct. 6, 2005); *see also Crozier v. Johnson & Johnson Consumer Cos.*, 901 F. Supp. 2d 494, 506 (D.N.J. 2012) ("Plaintiffs' failure to plead that they were misled is fatal, particularly given the specificity that Rule 9(b) requires for NJCFA claims.").

The NJCFA claim should also be dismissed because it does not apply to lawyers and other "learned professionals" acting in their professional capacity. "[A]n attorney acting in her professional capacity cannot be held liable under the New Jersey Consumer Fraud Act." *Tran v. Hae Yeon Baik*, 406 F. App'x 661, 662 n.1 (3d Cir. 2011). "The purpose of the [Consumer Fraud] Act was to prevent deception, fraud or falsity, whether by acts of commission or omission, in connection with the sale and advertisement of merchandise and real estate. Although the sale of certain services also falls within the purview of the Act, it is clear that attorney's services do not fall within the intendment of the Consumer Fraud Act." *Vort v. Hollander*, 607 A.2d 1339, 1342 (N.J. App. Div. 1992), *cert. denied*, 617 A.2d 1221 (N.J.). "[O]ur jurisprudence continues to identify

learned professionals as beyond the reach of the [NJCFA] so long as they are operating in their professional capacities." *Macedo v. Dello Russo*, 840 A.2d 238, 242 (N.J. 2004). "The rationale underlying the learned professionals exception is that uniform regulation of an occupation, where such regulation exists, could conflict with regulation under the [NJCFA]." *Lee v. First Union Nat'l Bank*, 199 N.J. 251, 263-64, 971 A.2d 1054, 1062 (2009).

In light of the foregoing, Moldovsky's NJCFA claim (Count 12) should be dismissed.

## XI.    COUNT 13 ("VIOLATION OF THE UTPCPL") SHOULD BE DISMISSED

The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 *et seq.*, makes it unlawful for any person to use "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." 73 P.S. § 201-3(a).

The UTPCPL provides a private right of action:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by [§ 201-3] of this act, may bring a private action to recover actual damages . . . .

73 P.S. § 201-9.2(a).

This private right of action is available only to "those persons who purchase or lease goods or services primarily for consumer use rather than for commercial use." *Conboy v. United States SBA*, 992 F.3d 153, 157 (3d Cir. 2021).

Moldovsky's UTPCPL claim is based on the same factual allegations as his NJCFA claim. As a preliminary matter, the Moldovsky law firm is not a "consumer" within the meaning of the UTPCPL and does not have standing to sue under it.

Moreover, the UTPCPL does not apply to attorneys engaged in the practice of law: "We hold the UTPCPL does not apply to attorney misconduct." *Beyers v. Richmond*, 937 A.2d 1082,

1084 (Pa. 2007); *see also id.* at 1093 (the UTPCPL "does not apply to attorneys practicing law.")
(Cappy, C.J., concurring). "[T]he Pennsylvania Supreme Court [has] found the UTPCPL
inapplicable to the legal profession." *Meksin v. Glassman*, 217 A.3d 416 (Pa. Super. Ct. 2019). "In
*Beyers*[, *supra*], our Supreme Court held that the UTPCPL does not apply to an attorney's
misconduct as the rules of professional conduct and the Rules of Professional Conduct and
Rules of Disciplinary Enforcement are the exclusive means to address such claims." *Saterstad v.
Lock*, 161 A.3d 376 (Pa. Super. Ct. 2017) (affirming dismissal of UTPCPL claim, where the plaintiff
was "attempting to couch a professional liability claim as a claim that [the defendant law firm]
violated the UTPCPL.").

The Third Circuit has instructed, "[A]ttorneys are exempt from liability under the
UTPCPL if the alleged misconduct concerns the adequacy of their legal representation [but]
attorneys engaged in debt collection—considered an 'act of trade or commerce' within the
definition of the UTPCPL—are not." *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 179 n.4 (3d Cir.
2015); *see also Davis v. Bank of Am., N.A.*, 2014 U.S. Dist. LEXIS 124731, at *2 n.1 (E.D. Pa. Aug. 11,
2014) ("actions alleging attorney misconduct will not be viable under the UTPCPL") (quoting
*Fratz v. Goldman & Warshaw, P.C.*, 2012 U.S. Dist. LEXIS 148744 (E.D. Pa. Oct. 16, 2012)).

In light of the foregoing, Moldovsky's UTPCPL claim (Count 13) should be dismissed.

## XII.    COUNT 15 ("AIDING AND ABETING [*sic*]") SHOULD BE DISMISSED

Moldovsky's "aiding and abetting" counterclaim is garbled and unintelligible.
Moldovsky seems to be alleging that Mr. Miller (and Lightbox) aided and abetted non-party Jill
Ellner's purportedly unauthorized practice of law. *See* Countercl. at ¶¶ 541-543. Such a claim
would be governed by New York law, since Jill Ellner is a resident of New York whose
unauthorized practice of law, if any, was performed in New York in connection with litigation in

New York. However, there is no private right of action sounding in unauthorized practice of law. *See Lawrence v. Houston*, 567 N.Y.S.2d 962, 964 (N.Y. App. Div. 1991) ("Judiciary Law § 476-a provides that only the Attorney-General or a bar association formed in accordance with the laws of this State are authorized to enforce the statute [regarding unauthorized process of law] in civil actions."); *Bronx Legal Servs. v. Legal Servs.*, 2003 U.S. Dist. LEXIS 695, at *21 (S.D.N.Y. Jan. 17, 2003) (same).

To the extent that Moldovsky seems to be alleging that Mr. Miller aided and abetted his own tortious conduct, *see* Countercl. at ¶ 546, this is obviously nonsensical.

And, to the extent that Moldovsky seems to be alleging that Mr. Miller aided and abetted Lightbox's tortious conduct, i.e. to "maliciously prosecute and abuse" him, *see* Countercl. at ¶ 545, it is well settled that, pursuant to the intracorporate conspiracy doctrine, there can be no civil conspiracy between an attorney and his or her clients, so long as the attorney is acting within the scope of representation. *See, e.g., Heffernan v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999).

Once again, for reasons already discussed, any aspect of Moldovsky's aiding and abetting claim arising from theories of malicious prosecution and abuse of process in the S.D.N.Y. Interpleader, the Second Circuit Appeal, the Scarola Matter and/or the N.Y. Appeals, is governed by New York law. Because Moldovsky has failed to state claims for malicious prosecution and abuse of process, *see supra*, Sections V and VI, any causes of action sounding in conspiracy, aiding and abetting, or concert of action to commit these torts necessarily fail as well. If a defendant's alleged conduct is not unlawful, a "conspiracy" to engage in that conduct is not unlawful, too.

Under the intracorporate conspiracy doctrine, "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1867, 198 L. Ed. 2d 290 (2017). The rationale behind

this rule is that "when two agents of the same legal entity make an agreement in the course of their official duties," their acts are attributed to the principal and accordingly, an agreement has not been formed between two or more separate persons as required for conspiracy liability. *Id.*; *see also Kilbride Invs. Ltd. v. Cushman &Wakefield of Pa., Inc.*, 294 F. Supp. 3d 369, 382-83 (E.D. Pa. 2018).

In *Jarzyna v. Home Props., L.P.*, 114 F. Supp. 3d 243 (E.D. Pa. 2015) (Robreno, J.), this Court explained:

> Under Pennsylvania law, the intracorporate conspiracy doctrine holds that, "[a] single entity cannot conspire with itself and, similarly, agents of a single entity cannot conspire among themselves." *Rutherford v. Presbyterian-Univ. Hosp.*, 417 Pa. Super. 316, 612 A.2d 500, 508 (Pa. Super. Ct. 1992). Under that doctrine, "an entity cannot conspire with one who acts as its agent." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003).

*Id.* at 279 n.44.

Thus, "[c]oncerted action among the directors, officers, and managers of a corporation cannot constitute a conspiracy." *Stoner v. N.Y.C. Ballet Co.*, 2002 U.S. Dist. LEXIS 5921, at *26-27 (S.D.N.Y. Apr. 8, 2002) (citing *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir.), *cert. denied*, 439 U.S. 1003 (1978)).

The intracorporate conspiracy doctrine would appear to extend, in this case, to LBV, its "alter-ego" LBC,[31] their other "alter-ego" (and managing member) Mr. Ellner,[32] and LBV's "in-house counsel" Jill Ellner and Susan Stein.[33] It also extends to Mr. Ellner and LBV's outside counsel, Mr. Miller:

---

[31] *See* Countercl. at ¶ 557.

[32] *See id.* at ¶¶ 12-13.

[33] *See id.* at ¶¶ 63-65.

> Of course, there can be no conspiracy between a corporation and its counsel where the advice or concerted activity was within the scope of the representation. *See Heffernan v. Hunter*, 189 F.3d 405, 413-14 (3d Cir. 1999) (dismissing claims under §§ 1985(1) and (2) [conspiracy to interfere with civil rights] because there could be no conspiracy between attorney and client where attorneys acted within the scope of their representation, even if attorney may have had mixed motives such as enhancing his reputation); *Doherty v. American Motors*, 728 F.2d 334, 340 (6th Cir. 1984) (citing the general rule that a corporation cannot conspire with its agents, finding no conspiracy where it was clear the attorneys were motivated "not by personal concerns" but by concern for their clients). Indeed, "treating the involvement of a lawyer as the key unlocking § 1985 would discourage corporations from obtaining legal advice before acting, hardly a sound step to take." *Travis v. Gary Comm. Mental Health Ctr.*, 921 F.2d 108, 111 (7th Cir. 1990).

*Stoner*, 2002 U.S. Dist. LEXIS 5921, at *27-28; *see also Sathianathan v. Smith Barney, Inc.*, 2006 U.S. Dist. LEXIS 9828, at *71 (S.D.N.Y. Feb. 24, 2006) (dismissing RICO conspiracy claims "because a corporation cannot conspire with its employees or attorneys"). "The fact that the plaintiff has named the [defendant's] attorneys as defendants in this matter does not negate the application of the intracorporate conspiracy doctrine." *Stepien v. Schaubert*, 2010 U.S. Dist. LEXIS 45893, at *18-21 (W.D.N.Y. Feb. 23, 2010), *report and recommendation adopted*, 2010 U.S. Dist. LEXIS 46079 (W.D.N.Y. May 11, 2010), *aff'd*, 424 F. App'x 46 (2d Cir. 2011).

For all the foregoing reasons, Moldovsky's aiding and abetting claim (Count 15) should be dismissed.

## XIII.   COUNT 17 ("CONCERT OF ACTION") SHOULD BE DISMISSED

Moldovsky's cause of action for "concert of action" is another conspiracy claim. Moldovsky alleges that Mr. Miller and Lightbox acted together "in furtherance of the common plan to maliciously prosecute, injure and damage" him and to "perpetuat[e] abusive litigation." Countercl. at ¶¶ 563-564. The "concert of action" claim fails for the same reasons that Moldovsky's "aiding and abetting" claim fails: (1) without viable claims for malicious

prosecution and/or abuse of process there can be no liability for conspiring, aiding and abetting, or acting in concert to commit these torts; and (2) Moldovsky's various flavors of conspiracy allegations are barred by the intracorporate conspiracy doctrine, pursuant to which a lawyer acting within the scope of his or her authority is immune from conspiracy liability. "[T]he mere fact that attorneys have 'mixed motives,' such as 'enhancing' their reputation by aggressive representation, does not remove their conduct from the scope of the agency." *Heffernan*, 189 F.3d at 413.

Moreover, the fact that Moldovsky contends that Mr. Miller acted in violation of the rules of professional conduct of three states, *see* Countercl. at ¶¶ 508, 519, is immaterial: "The challenged activity may violate the canons of ethics, but so long as it is within the scope of representation, it does not eliminate the exemption from a conspiracy charge . . . . 'Simply because a lawyer's conduct may violate the rules of ethics does not mean that the conduct is actionable, in damages or for injunctive relief.' The offended third party has a remedy under state law through court imposed sanctions or reference to state disciplinary bodies." *Heffernan*, 189 F.3d at 413 (quoting *Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1284 (Pa. 1992)).

Moldovsky's "concert of action" claim (Count 17) should be dismissed.

## XIV.    COUNT 18 ("PERMANENT INJUNCTION") SHOULD BE DISMISSED

Moldovsky's cause of action for a "permanent injunction" fails to state a claim and should be dismissed. "It is well settled that 'injunctive relief is not a separate type of claim, but rather a form of relief, and as such, should not be designated as a separate count in the Complaint.'" *M3 USA Corp. v. Hart*, 2021 U.S. Dist. LEXIS 18177, at *51 (E.D. Pa. Jan. 29, 2021) (quoting *Cook v. Gen. Nutrition Corp.*, 2017 U.S. Dist. LEXIS 162125, at *8 (W.D. Pa. Sept. 29,

2017)); *see also Chruby v. Kowaleski*, 534 F. App'x 156, 160 n.2 (3d Cir. 2013) ("[A]n injunction is a remedy rather than a cause of action.").

Moldovsky purports that his demand for a permanent injunction is based on Mr. Miller and Lightbox's "vast and incessant pattern of . . . lying, misrepresentation, re-litigation of dismissed claims and allegations, ongoing malicious abuse, and regular unending defamation and abuse," *see* Countercl. at ¶ 568, and demands that this Court award him monetary damages "in excess of $1,000,000, including compensatory, incidental, consequential and punitive damages, attorneys fees and costs, plus associated interest" and also enjoin Mr. Miller and Lightbox from "initiating any additional proceedings or making any additional filings against the Counterclaim Plaintiffs in or related to any forum within this Court's authority to do so," and also enjoin Mr. Miller from "using, possessing, communicating, distributing and publicizing [Moldovsky's] information and the fees and costs incurred in connection with this action," *id*. at ¶ 569. In short, Moldovsky demands that this Court declare Mr. Miller and Lightbox to be vexatious litigants and also award him over $1 million in monetary damages.

In addition to not being cognizable as a distinct cause of action, and setting to one side the breathtaking *ad terrorem* aspect of his demands, Moldovsky's claim for a permanent injunction suffers from a number of other fatal flaws: (1) compensatory damages are not a form of injunctive relief; (2) Moldovsky's demand for compensatory damages undermines the fundamental premise of an injunction, which is that Moldovsky's injuries are not compensable by monetary damages;[34] (3) Mr. Miller and Lightbox's alleged "defamation and abuse" in the underlying legal proceedings is privileged;[35] (4) Moldovsky has failed to state a claim for

---

[34] *See In re Arthur Treacher's Franchisee Litig*., 689 F.2d 1137, 1145 (3d Cir. 1982) ("We have never upheld an injunction where the claimed injury constituted a loss of money, a loss capable of recoupment in a proper action at law.").

[35] *See* Section IV, *supra*.

malicious prosecution and/or abuse of process;[36] (5) Moldovsky's allegations of "lying" and other forms of attorney misconduct were previously raised and rejected by four other courts;[37] and (6) the injunctive relief requested would interfere (and apparently was designed to interfere) with Lightbox's ability to litigate the Scarola Matter and the pending N.Y. Appeals and with Mr. Miller's ability to continue to represent Lightbox in those matters. In short, Moldovsky's demand for a permanent injunction appears to be a disguised fifth attempt to force Mr. Miller to stop representing Lightbox in its dispute with Moldovsky.

## XV.  COUNT 19 ("SET OFF") SHOULD BE DISMISSED

Moldovsky's claim for a set-off appears to be based on the notion that Moldovsky should be permitted a set-off against his prospective liability to Mr. Miller in this action, in the amount of Lightbox's prospective liability to Moldovsky in the Scarola Matter and/or in the Ellner E.D. Pa. Matter. This does not appear to make any sense. Moldovsky does not allege that Mr. Miller and Lightbox are alter egos of each other or may otherwise be considered to be in financial privity with one another. Moldovsky does not allege that he is entitled to a set-off based on the amount of a prior, unsatisfied judgment entered against Mr. Miller in favor of Moldovsky. Besides the counter-claims pending in this present matter, which are currently subject to Mr. Miller's present motion to dismiss, Moldovsky has not identified any claims pending against Mr. Miller in any court or jurisdiction, which might potentially give rise to a monetary judgment and set-off. Count 19 should be dismissed.

---

[36] *See* Sections V and VI, *supra*.

[37] *See* Section III, *supra*.

### XVI.   COUNT 20 ("EQUITY") SHOULD BE DISMISSED

Moldovsky's twentieth counter-claim, styled as a claim for "equitable estoppel," alleges that Mr. Miller "spoke misleading words and acted in a misleading way;" that Moldovsky suffered damages as a direct result of Mr. Miller's "breach of their attorney-client relationship;" and that Mr. Miller "should be estopped from continuing to represent against the Counterclaim Plaintiffs." *See* Countercl. at ¶¶ 582-584. Moldovsky also demands legal damages "in excess of $1,000,000." *See* Countercl. at p. 188, ¶ 20.

In addition to being vague and unintelligible, Moldovsky's "equitable estoppel" claim should be dismissed because there is no such cause of action: "Equitable estoppel is not a separate cause of action. It may be raised either as an affirmative defense or as grounds to prevent the defendant from raising a particular defense." *Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990). Count 20 should be dismissed.

### <u>CONCLUSION</u>

For all the foregoing reasons, Moldovsky's counter-complaint should be dismissed in its entirety.

All claims barred by issue preclusion, the litigation privilege, the intracorporate conspiracy doctrine and/or other incurable defects described in Sections V through XVI, *supra*, should be dismissed with prejudice: malicious prosecution (Count 1), abuse of process (Count 2), deceit and collusion (Count 3), failure to rectify misrepresentations to the court (Count 4), prima facie tort (Count 5), defamation and libel (Count 6), tortious and malicious interference (Count 7), fraud and fraud in the inducement (Count 8), negligent misrepresentation (Count 9), breach of fiduciary duty (Count 10), legal malpractice (Count 11), violation of the NJCFA (Count  12), violation of the UTPCPL (Count 13), breach of contract (Count 14), aiding and

abetting (Count 15), concert of action (Count 17), permanent injunction (Count 18), and equity/equitable estoppel (Count 20).

The other causes of action, piercing the corporate veil (Count 16)[38] and set-off (Count 19), may be dismissed without prejudice.

Respectfully submitted,

Date: August 4, 2021                          /s/ Jonathan R. Miller, Esq.
                                              *Plaintiff pro se*

---

[38] Moldovsky's claim for piercing the corporate veil does not implicate Mr. Miller and he asserts no substantive position in that regard, not on behalf of himself and not on behalf of anyone else. This cause of action is subject to dismissal due to the overall Rule 8 pleading deficiencies. Mr. Miller defers to Mr. Ellner's counsel in this matter, Mr. Haines and Ms. Weiss, to assert Mr. Ellner's substantive position concerning this cause of action. Similarly, Mr. Miller asserts no position concerning Moldovsky's two "third-party claims" for contractual indemnification and for declaratory judgment.