1           UNITED STATES DISTRICT COURT

2          EASTERN DISTRICT OF PENNSYLVANIA

3   | BREM MOLDOVSKY, et al, |
    |                         | Case No. 2:21-cv-01365-ER
4   |           Plaintiffs,   |

5   | v.                      | Philadelphia, Pennsylvania
    |                         | July 20, 2021
6   | ANDREW ELLNER, et al,   | 2:11 p.m.

7   |           Defendants.   |

8   | ANDREW ELLNER,          |
    |                         | Case No. 2:20-cv-06190-ER
    |           Plaintiff,    |
9

10  | v.                      |

    | BREM MOLDOVSKY, et al,   |
11
    |           Defendants.   |
12  | JONATHAN R. MILLER,     |
    |                         | Case No. 2:21-cv-02219-ER
13  |           Plaintiff,    |

14  | v.                      |

15  | BREM MOLDOVSKY, et al,   |

16  |           Defendants.   |

17

18            TRANSCRIPT OF MOTION HEARING
      BEFORE THE HONORABLE EDUARDO C. ROBRENO
19        UNITED STATES DISTRICT COURT JUDGE

20  APPEARANCES:
    For the Plaintiffs:          Brem Moldovsky, Esq.
21  (21-cv-01365)                 Brem Moldovsky, LLC
                                  100 N. 18th Street
22                                Suite 300
                                  Philadelphia, PA 19103
23
    For the Defendants:           Clifford Haines, Esquire
24  (21-cv-01365)                 Haines & Associates
                                  1339 Chestnut Street, Suite 530
25                                Philadelphia, PA 19107

```
 1   For the Plaintiff:          Clifford Haines, Esquire
     (20-cv-06190)               Haines & Associates
 2                               1339 Chestnut Street, Suite 530
                                 Philadelphia, PA 19107
 3
     For the Defendants:         Brem Moldovsky, Esq.
 4   (20-cv-06190)               Brem Moldovsky, LLC
                                 100 N. 18th Street
 5                               Suite 300
                                 Philadelphia, PA 19103
 6
     For the Plaintiff:          Jonathan R. Miller, Esq.
 7   (21-cv-02219)               100 Overlook Center, 2nd Floor
                                 Princeton, NJ 08540
 8
     For the Defendants:         Brem Moldovsky, Esq.
 9   (21-cv-02219)               Brem Moldovsky, LLC
                                 100 N. 18th Street
10                               Suite 300
                                 Philadelphia, PA 19103
11
     Court Recorder:             Jimmy Cruz
12
     Clerk:                      Ronald Vance
13
     Transcription Service:      Chris Hwang
14                               Abba Reporting
                                 PO Box 223282
15                               Chantilly, Virginia  20153
16

17

18

19

20

21

22

23

24   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.
25
```

1        (Call to order at 2:11 p.m.)

2            THE BAILIFF:  All rise.  United States District Court

3    for the Eastern District of Pennsylvania is now in session, the

4    Honorable Eduardo C. Robreno presiding.

5            THE COURT:  Good afternoon.

6            MR. HAINES:  Good afternoon, Your Honor.

7            THE COURT:  Please be seated.

8            MR. MOLDOVSKY:  Good afternoon.

9            MR. HAINES:  Your Honor, I apologize.  Nobody told me

10   that there are no longer cabs on the streets.

11           THE COURT:  Is that right?  Okay.  Well.

12           MR. HAINES:  So.

13           THE COURT:  Part of the pandemic.

14           MR. HAINES:  Yeah.

15           THE COURT:  You may remove your mask if you wish to.

16   It's entirely up to you.

17           MR. HAINES:  Thank you.

18           THE COURT:  But well, let's proceed here and try to

19   get organized.  This is Moldovsky v. Ellner and we have a

20   Motion to Dismiss today and some other matters.

21           And then, there are the two Ellner Miller v.

22   Moldovsky case.

23           Mr. Haines, last time when there were some matters

24   that did not involve your client, there was a discussion here

25   on the record in Court in which it was suggested that, I think

1    it was suggested by me actually, that Ellner and Miller should

2    be consolidated for pre-trial proceedings only.

3            And it seemed to -- the complaints were either

4    identical or very close.  Probably the same witnesses may need

5    to be deposed, et cetera.

6            So there was a suggestion, as I said, that they be

7    consolidated for pre-trial purposes.  And if that were

8    acceptable -- I think it was acceptable to all those who were

9    present, but we did not have your input or your consent.

10           So what says you?

11           MR. HAINES:  I agree.

12           THE COURT:  Okay.  So we will consolidate the two

13    cases for pre-trial purposes only, which means that we have not

14    entered a -- an initial pre-trial order in Ellner, I believe.

15           So what we will do is enter a pre-trial order now in

16    both Ellner and Miller and probably add 30 days or so to the

17    Miller formal order.  And that will be a new order that will

18    cover both cases for whatever the deadline is now plus 30 days.

19           Yes, sir?

20           MR. MILLER:  Your Honor, if I may be heard on that?

21           THE COURT:  Yes.

22           MR. MILLER:  I still agree with that.

23           THE COURT:  Yeah.

24           MR. MILLER:  I would point out respectfully for the

25    Court that Mr. Moldovsky has asserted counterclaims.

1          THE COURT:  Yeah.

2          MR. MILLER:  Goes on for about (indiscernible) 10

3   paragraphs, but they include claims for illegal wiretapping.

4   So if any part of Ms. Moldovsky's wiretapping case

5   (indiscernible) hearing, I respectfully submit that that case

6   should also be consolidated because we don't need to hear

7   wiretapping cases claims in two cases.

8          THE COURT:  Okay.  Well, why don't we take that?  If

9   that happens, then we'll re-visit that so -- but at least the

10  Ellner and Miller seem to be without any quirks, seem to be

11  cases that should be subject to consolidation.

12         MR. HAINES:  I think what Mr. Miller was suggesting

13  correctly --

14         THE COURT:  Yeah.

15         MR. HAINES:  -- is that was just filed within the

16  last --

17         THE COURT:  Yes.

18         MR. HAINES:  -- days.  So --

19         THE COURT:  Yeah.

20         MR. HAINES:  -- rather than reconvene unless Mr.

21  Moldovsky objects --

22         THE COURT:  Right.

23         MR. HAINES:  -- you -- as far as we're concerned,

24  Your Honor can just consolidate it all.  We have no --

25         THE COURT:  Okay.

1          MR. HAINES:  -- need to come back before you on that

2     issue.

3          THE COURT:  Well, let's see what happens.  I mean, if

4     the claims are just --

5          MR. HAINES:  Okay.

6          THE COURT:  -- filed, I'm sure they'll be motions and

7     et cetera.  And that will --

8          MR. HAINES:  Okay.

9          THE COURT:  -- work its way into the mainstream here.

10    And it may be at the appropriate time.

11         Of course, all of you, you know, will be free if

12    there's a deposition of a witness from both sides that you

13    could double caption that deposition for that purpose, so.

14         Okay, now, let's get to the main event here, which is

15    the Moldovsky v. Ellner case.

16         And you, Mr. Haines, you represent Mr. Ellner, no?

17         MR. HAINES:  I represent Mr. Ellner and the Lightbox

18    entities as well.

19         THE COURT:  Okay.  Okay, so why don't we turn then to

20    that case, the Motion to Dismiss -- well, yeah, the Motion to

21    Dismiss in Moldovsky v. Ellner.

22         MR. HAINES:  Your Honor, I would like to take credit

23    for writing a brilliant brief, but I didn't.  So the credit

24    goes to the people in my office who wrote that.

25         And I say that only because, boy, did they cover the

1  landscape.  I mean, I really think they did a magnificent job.

2  So I'm going to be relatively brief subject to any questions

3  that the Court may have.

4         I think before Your Honor are three fundamental

5  issues.  And the first one is a jurisdictional question,

6  particularly with respect to the Lightbox entities.

7         The Lightbox entities have nothing to do with

8  Pennsylvania.  They exist in New York.  They do no business in

9  Pennsylvania.  There is no basis for general jurisdiction over

10  the Lightbox entities.

11         The same is true with respect to special

12  jurisdiction.  Lightbox has --

13         THE COURT:  Specific jurisdiction.

14         MR. HAINES:  Specific jurisdiction, sorry.  Yeah,

15  Lightbox has nothing, nothing to do with this case.  They

16  didn't make any telephone calls.  They couldn't make any

17  telephone calls.  There's simply no basis for jurisdiction over

18  them and they ought to be dismissed.

19         We made a -- what I'm going to claim is a very

20  sophisticated argument about Mr. Ellner's status as with

21  respect to jurisdiction.

22         I leave that to the argument that we've -- been made

23  and to the Court in part because at the end of the day, I don't

24  think it particular matters -- particularly matters.

25         So let's get to the more important issues.  The

1    second issue is on the street it is, there is no there there,

2    Judge.

3         There is no basis for this claim that Mr. Moldovsky

4    feels he must assert repeatedly, and that is, violation of

5    Pennsylvania's Wiretapping Act.

6         There is no evidence pled in any way, shape, or form

7    that Mr. Ellner made any phone calls from the Commonwealth of

8    Pennsylvania.

9         There is a suggestion in the complaint.  And I

10   recognize, Judge, that the standard here is what's in the

11   complaint.

12        So I'll try to be focused on that.  There is a

13   suggestion that maybe those calls were made some -- and from

14   other state because Mr. Ellner travels.  That is speculation,

15   Judge.  That's not pleading of fact.

16        And even if that were so, Judge, it's not enough.

17   There's a recent case that came out of the Eastern District,

18   I'm sorry, the Western District a couple weeks ago, Popa v.

19   Harriet Carter Gifts.

20             THE COURT:  Yeah, we're familiar with the case.

21             MR. HAINES:  Should I sit down?

22             THE COURT:  No.

23             MR. HAINES:  Judge, the -- Mr. Ellner didn't

24   make -- there's no violation here.  You can't allege a

25   violation with respect to someone you can't put in

1    Pennsylvania.  And the Plaintiff just can't do that.  He's at

2    best speculating.

3            Finally, and again very simply, the statute of

4    limitations has run on any claims arising under that act, which

5    have been pled by Mr. Moldovsky.

6            He's alleged two things, one of which suggests a

7    defamation-type claim.  The statute of limitations on that is

8    one year.  It's long expired.

9            And with respect to the underlying statute that is a

10   tort limited of two years, this case was not filed within the

11   statute of limitations.

12           So pick or choose, I think you've got two and

13   arguably three very strong bases on which to grant our Motion

14   to Dismiss.

15           And I don't have to say a whole lot more about it,

16   frankly, unless Your Honor wants to hear more.

17           THE COURT:  That will be fine.

18           MR. HAINES:  Thank you, Judge.

19           THE COURT:  Thank you.

20           Okay, Mr. Moldovsky, please?

21           MR. MOLDOVSKY:  Good afternoon, Your Honor.  A couple

22   points I want to make in regard to the Motion to Dismiss.

23           The first is as far as number of phone calls to my

24   knowledge, we could be -- he could have been recording me every

25   time we were on.  Most the time we were on, I was in

1   Pennsylvania.

2          All of the phone lines I have are Pennsylvania-based

3   except the cell phone, which is also Pennsylvania-based, but

4   you can --

5          THE COURT:  But isn't the law that is the place where

6   the recording takes place?

7          MR. MOLDOVSKY:  My answer to that is when you look at

8   the Larrison analysis, there would be no reason for that type

9   of analysis if it was just a strict, oh, if it takes place

10  there, that's it, that's the end of the inquiry.  So under the

11  Larrison analysis, no, that's not the end of the inquiry at

12  all.

13         THE COURT:  Well, what is the inquiry?  What else is

14  there to inquire about?

15         MR. MOLDOVSKY:  Under Larrison, the analysis would

16  be, and this came up with Judge Baldi, too.  He'd asked me

17  questions about it.

18         Under Larrison, the analysis would be which -- and

19  it's more than this, but which state has a greater interest in

20  what's going on?

21         Arguably, that could even be different on a call-by-

22  call basis.  And again, we don't know whether there's two calls

23  or 10 or 20 or 50 or 100, whether he had a recording pressed

24  the whole time.

25         So, again, that would be the analysis which

1    state -- and it's more than this, but which state has a more

2    compelling interest?

3           Here, the idea would be we're already at a place

4    where whatever he's used, he's used in New York and it had no

5    benefit for him.

6           They didn't win a single thing there.  We won

7    everything.  We're not afraid of the information.  It's just

8    having to spend so much time dealing with it when we only get

9    attacked for partial parts of it.

10           THE COURT:  Well, do you have any case that -- well,

11    I guess you're citing to your interpretation of the Larime

12    (phonetic), I believe it's called.

13           MR. MOLDOVSKY:  If I'm saying it right.

14           THE COURT:  Is -- but now you said there could have

15    been many calls, but isn't that speculation?

16           MR. MOLDOVSKY:  No, Your Honor.  It's not speculation

17    because it's not -- it's -- I took part and it has to be pled.

18    There were many, many calls.  It's not speculation.

19           The only question is how many did he record?  And

20    when we've asked him, we've asked him and we would ask and ask,

21    we wouldn't get clear answers.  We got different answers.  They

22    would just show parts of recordings.

23           So, no, we have no clear answer.  If they ever

24    responded to the discovery, we could get a clear answer.

25           And because there is an issue with Mr. Ellner

1    fabricating evidence as Judge Cote pointed out that there is

2    concern.  We do know him.  And if we got a straight answer,

3    that would help a lot.

4         If you remember, we talked about the records being

5    turned over.  We still don't have the recordings.  And --

6         THE COURT:  Now it says in the Popa case interpreting

7    the Larrison case, as in Larrison v. Larrison, the Pennsylvania

8    Superior Court refused to extend the Wiretapping Act to

9    out-of-state conduct.

10        There, it considered whether the Wiretapping Act was

11   implicated where a telephone conversation from the Commonwealth

12   was reported in New York without the knowledge or permission of

13   the Pennsylvania caller.  And the Superior Court declined to

14   extend to conduct occurring out of state.

15        So if this call or many calls were recorded outside

16   of Pennsylvania, it seems to me that the authority of -- all of

17   the authority that I'm familiar with including Larrison would

18   support the proposition that is not prohibited by a

19   Pennsylvania statute.  Pennsylvania has no authority to

20   prohibit conduct outside Pennsylvania.

21        MR. MOLDOVSKY:  It's the reaching into Pennsylvania.

22        THE COURT:  Yeah.

23        MR. MOLDOVSKY:  And when one reaches into

24   Pennsylvania to do something, one could analogously think of a

25   state where marijuana is legal and then it's not legal in

1  Pennsylvania.

2          And one doesn't step in Pennsylvania.  One just on

3  the phone orchestrates activity for -- in Pennsylvania or sends

4  into Pennsylvania, particularly when it's in a two-state

5  solution.

6          And he also may have been in Costa Rica, which also

7  -- which is a place I think, again, where it's not allowed, but

8  I'd have to check.

9          THE COURT:  Where's that I'm sorry?

10          MR. MOLDOVSKY:  He's got a place in Costa Rica as

11  well.

12          THE COURT:  Right.

13          MR. MOLDOVSKY:  And I believe there's, you know,

14  they're not allowed to do that there either.

15          But again, if he's in a two-consent state to a two-

16  consent state, or if he's reaching in and again, if this

17  reaching in is regular.

18          And look, I think the idea is a Pennsylvania resident

19  having no idea this happens.  I based in Pennsylvania.  These

20  are calls include the one we know about is on Thanksgiving.

21          You know, some degree of you're protected by the law.

22  We had no idea.  And again, our issue's never been that we're

23  afraid of the information, not at all.  Any time it's been

24  used, it's only, you know, not helped his cause.

25          It's just having to respond to it endlessly,

1    particularly if there's a lot of them.  And again --

2               THE COURT:  Now you have evidence that there was one

3    call, maybe two calls that were made from New York.  The rest

4    of them you suspect that calls were made, but you don't have

5    any evidence of that?

6               MR. MOLDOVSKY:  Well --

7               THE COURT:  The evidence is that he has a house in

8    Costa Rica.

9               MR. MOLDOVSKY:  Well, he's got -- also, he's got a

10   couple of homes.  I think -- and again, they're in at least one

11   or two and where he sees a relative in Florida, other two-

12   consent states.

13              So, and again, the evidence we have, again, I think

14   we showed from cell phones, you see where I am.  You see on one

15   of the cell phone calls, but I don't know if that's a recorded

16   one or not, I think you know, he may be in New York, but again,

17   we spoke on the phone, Your Honor, but I said we spoke, you

18   know, with 14 months intense litigation.  We didn't speak on

19   the phone four times.  We spoke on the phone if -- 30 times, it

20   could have been 90 or 100.

21              And, again, my understanding is when I would deal

22   with him, sometimes he was in New York, but he was a regular

23   travel.

24              This is someone who's been to virtually every

25   country on the planet.  That's what the whole underlying case

1   is about, international travel and third homes.

2           So he is somebody, who was regularly travelling,

3   including in two-consent states.  You know, those are the

4   facts.  So I don't know how many times he was recording.  And

5   if he was recording when he was in two-consent states.

6           THE COURT:  Well, do you have any evidence that he

7   recorded a call in California, Florida?  I think there's a

8   third state that you included?

9           MR. MOLDOVSKY:  The answer is --

10          THE COURT:  Is there any evidence at this point,

11   other than he has a residence or that he travels to?

12          MR. MOLDOVSKY:  Well, I know I spoke to him at least

13   once.  And we alleged this when he was in -- when he was out of

14   state.  And I believe it was at one of his vacation places.  So

15   --

16          THE COURT:  Right.

17          MR. MOLDOVSKY:  -- I know there was at least that.

18          THE COURT:  Okay, but --

19          MR. MOLDOVSKY:  And I know we --

20          THE COURT:  -- my question is where is the evidence

21   that he recorded those calls?

22          MR. MOLDOVSKY:  That's what the discovery's for.  And

23   that's why, by the way, when we started the Bucks thing --

24          THE COURT:  Well, then you could sue anybody at any

25   time that made a phone call to you.

1        MR. MOLDOVSKY:  Well, here we know when someone's

2   admitted they --

3        THE COURT:  That they made one phone call doesn't

4   mean that they made 100 phone calls.

5        MR. MOLDOVSKY:  Well, when we would ask them --

6        THE COURT:  Yeah.

7        MR. MOLDOVSKY:  -- how many have you made, we weren't

8   getting any answers because we asked that again and again.  How

9   many have you made?  When were they?  We just never got any

10  answers.  And there were intimations that there were multiple.

11       THE COURT:  Okay.  Well, in street language, that is

12  called a fishing expedition.

13       MR. MOLDOVSKY:  Well, we started --

14       THE COURT:  You have no proof -- you have no

15  evidence.

16       MR. MOLDOVSKY:  We started with discovery requests

17  and we have evidence that he was making calls --

18       THE COURT:  Well, there is a Supreme Court in Twombly

19  said something that perhaps changed the timely formulation, but

20  there has to be a plausible claim based upon some evidence.  We

21  can't file a lawsuit and say we're going to get the evidence

22  after we file the lawsuit.

23       MR. MOLDOVSKY:  Well, the evidence, Your Honor, is

24  that I know the calls happened.  I participated in the phone

25  calls.

1            THE COURT:  Yeah, yeah.

2            MR. MOLDOVSKY:  That's all evidence.

3            THE COURT:  But there is -- but that isn't a crime.

4    The crime were a violation of the law.  The violation of the

5    law is the recordation.

6            MR. MOLDOVSKY:  Right.

7            THE COURT:  As I understand your theory is you have

8    evidence that he recorded you at least once, maybe twice.

9            However, you talked to him dozens of times.

10   Therefore, I say the syllogism would go something like this.

11   Therefore, he must have recorded me because he recorded me once

12   or twice.  That's it.

13           MR. MOLDOVSKY:  And because we asked him.  And there

14   were times where he indicated that there were multiple

15   recordings.

16           And it sounded like there was a lot of them from his

17   own representations.  I remember that.  I remember asking.  We

18   never got clear answers.  So I know there's at least a few.

19           How many, we don't know how many.  And that's why in

20   PA when we started, we asked a discovery person if we could do

21   pre-complaint discovery.  And that way, we would know.

22           And, frankly, Your Honor, if all we got were two and

23   that was it and we were confident it was two, we've seen those

24   two and that's not my concern.  My concern is that there's much

25   more than that.

1    THE COURT:  Okay, how about the statute of

2    limitations?  What's your view of that?

3    MR. MOLDOVSKY:  My view on that is essentially we're

4    suing for activity that's occurred within the statute of

5    limitations.

6    THE COURT:  Uh-huh.

7    MR. MOLDOVSKY:  We're not suing for what's occurred

8    before.  So wherever that line is, we're suing and there's

9    recent usage of it.

10    And even with the statute, the statute's talks about

11    using it as evidence, meaning even coming to Court and using

12    it. even that is a violation of the statute.

13    So it has been done in the last I think in

14    January -- January, but probably if you look very carefully,

15    probably before as well, and again, even possessing it, passing

16    it around, disseminating it.

17    So the answer is it's still alive now.  We're not

18    suing for what was before the statute of limitations.

19    THE COURT:  Now did you have to have brought a suit

20    within two years from the time that the call was recorded?  Or

21    are you saying that you can bring a lawsuit within two years

22    from the use of that information that was recorded?

23    MR. MOLDOVSKY:  The latter, Your Honor.

24    THE COURT:  Okay.  And what is that based on?

25    MR. MOLDOVSKY:  That's --

1          THE COURT:  What was the -- as I understand the

2     Pennsylvania statute of limitations goes to not where the harm

3     occurred, but where the event occurred.

4          MR. MOLDOVSKY:  Right.  Every time one uses,

5     possesses, touches, it's an event.  So if you used it a month

6     ago, it's an event.

7          If you disseminated it a month ago, it's an event.

8     If you transcribed it a month ago, so again, the January 2021

9     appearance, that would be an event within the statute.

10         THE COURT:  Well, so if you recorded a call today in

11    violation of the statute, and 10 years from now, you then

12    disclosed that call, that would be a timely -- that would be

13    timely because the event would have restarted the clock?

14         MR. MOLDOVSKY:  Or it would be a different clock.

15    How everyone looks at it, it's that particular event.  So if

16    you did --

17         THE COURT:  Yeah, harm, but that would seem to be

18    inconsistent with Pennsylvania's statute of limitations law.

19    Maybe you're right, but it sounds like that's not -- that we

20    focus on when did the event occur, not when the harm was felt.

21         MR. MOLDOVSKY:  In the statute itself, it doesn't

22    just prohibit the recording.

23         THE COURT:  Uh-huh.

24         MR. MOLDOVSKY:  It prohibits the other specific

25    conduct.  So the other specific conduct are events in and of

1    themselves under the statute.

2         THE COURT:  Uh-huh, okay.  How about jurisdiction?

3    What do you think of the Lightbox situation?

4         MR. MOLDOVSKY:  I have a simple answer on that one,

5    Your Honor, which is when Mr. Ellner acts and interacts with

6    us, he -- he's Lightbox as much as anybody could be Lightbox.

7         There's alter ego claims in New York with him and the

8    Lightbox entity that have been upheld through motion to dismiss

9    level.  And thus, you have that level where he virtually is.

10         But even if not that, he certainly it's acting hands

11    endlessly.  So the long and short of it is whatever Ellner's

12    done is attributable to Lightbox.  I can spell that out more,

13    but that's generally it.

14         THE COURT:  Is that a specific jurisdiction then,

15    right?

16         MR. MOLDOVSKY:  Yes.

17         THE COURT:  Okay.  Good.  Okay, well, that's fine.

18    Thank you, Mr. Moldovsky.

19         Let me get Mr. Haines' brief -- an opportunity for a

20    opportunity for a brief rebuttal.

21         MR. HAINES:  I will be mercifully brief, Judge.  Mr.

22    Moldovsky apparently concedes that none of these calls were

23    made from Pennsylvania.  The statute applies to someone who

24    makes a call from Pennsylvania.

25         THE COURT:  Well, who records it in Pennsylvania.

1          MR. HAINES:  Record it, yes.  I don't think Mr.

2   Moldovsky even contended that they were made from Pennsylvania.

3   So that's the end of that subject.  There is no claim.

4          With respect to statute of limitations, let me just

5   say this.  Mr. Moldovsky in his complaint pled that all of

6   these calls were between 2017, the late part of 2017 and the

7   spring of 2018, and that he, Mr. Moldovsky, became aware of

8   them in October of 2018.

9          So even if we give him the benefit of the discovery

10  rule by his own admission, he discovered this.  And as the

11  Court well knows, the statute of limitations on any tort begins

12  to run when the tort is committed, not when the proceeds of the

13  tort was used.

14          That would almost analogize to anybody, whoever read

15  a book that was defamatory, would be subject to liability when

16  they read the book as opposed to or the --

17          THE COURT:  When the harm was felt?

18          MR. HAINES:  Right.  And that's just simply not the

19  law in Pennsylvania.

20          THE COURT:  Well, he says that the statute though

21  creates a violation when it's recorded and a violation when it

22  is used.

23          MR. HAINES:  I don't believe that it's a violation

24  when it's used.  That may or may not be the case.

25          THE COURT:  Yeah.

1        MR. HAINES:  I'm not certain, but I don't hear nor

2   have we seen any evidence of its "use" in any defamatory or

3   improper way.

4        To the extent that it was used, it may have been used

5   in conjunction with a court proceeding, but that doesn't give

6   rise to a private cause of action where the statute of

7   limitations is --

8        THE COURT:  Uh-huh.

9        MR. HAINES:  -- runs forever because it was used at

10  some point.

11       THE COURT:  Okay.  Thank you.

12       MR. HAINES:  You're welcome.

13       THE COURT:  Mr. Moldovsky, anything, any final

14  comment before?

15       MR. MOLDOVSKY:  Again, the focus on -- is you can

16  have jurisdiction when somebody reaches into the state and

17  commits activity.

18       And, you know, one can still be subject to

19  Pennsylvania law, even if they're not outside of it.

20       And, you know, I will point out, Your Honor, and I

21  think I mentioned in our papers, a case Neiman v. Hudson Real

22  Estate Advisors, Westlaw 6082234.

23       And in that case, you really -- and that was out of

24  the Middle District of PA, but you have activity where the one

25  side never went into Pennsylvania, never stepped into

1    Pennsylvania.

2           And yet, there was still found to be jurisdiction in

3    Pennsylvania, even though the case was for forum reasons

4    transferred to Florida, so I, you know, I know there's a lot of

5    that type of law.  It's just one that I happen to be familiar

6    with.

7           THE COURT:  Well, I -- yeah, I think that you may be

8    conflating in terms of obtaining jurisdiction whether or not

9    you direct your acts to Pennsylvania, that may obtain

10   jurisdiction.

11          But here, we're talking about what is it that the

12   statute prohibits?  And there may well be jurisdiction, because

13   he made a call into Pennsylvania, but then, we look at is that

14   a substantive violation.

15          And that appears to be that the state where the

16   matter is recorded is a state where the law applies.  That

17   seems to be not only Pennsylvania law, but that seems to be

18   sort of the national trend in this particular event.

19          So that while there may be jurisdictional recourse,

20   the call was directed at Pennsylvania.  That still may not be a

21   violation of the law.

22          MR. MOLDOVSKY:  Again, my perspective is under that

23   analysis in Larrison and some other cases, it's a real

24   analysis.  There'd be no reason for that analysis if the law

25   was as simple as where it was recorded, that's it.  There'd be

1    no reason for that whole analysis.

2         THE COURT:  Okay.  Okay, well, we'll take a look at

3    that.  My impression today would be that the Pennsylvania

4    violation of the Wiretap Act will be dismissed and that the

5    counts involving calls from other states will be dismissed

6    without prejudice, based upon the fact that really under

7    Twombly, the allegations would not be sufficient to sustain a

8    cause of action as alleged in the complaint

9         That is, calls that were made from other states,

10   there is no indication of which calls were made when, where,

11   how.

12        And without that level of detail, the Court is not

13   able to apply the law in this case, but I will give you an

14   opportunity to amend the complaint if you so wish as to calls

15   that were made from the other states.

16        The call that was made from New York, which is

17   alleged in the complaint, that would -- my inclination would

18   be, and I want to go back, you've cited some cases today, I

19   want to go back and re-think that, but I think that would be

20   dismissed.  If that is the case, that would be dismissed with

21   prejudice.

22        So that's where we are today, so --

23        MR. MOLDOVSKY:  Your Honor, if I may just add?

24        THE COURT:  Yes, go ahead, please.

25        MR. MOLDOVSKY:  I think it's fair to say it could be

1    something that at a summary judgment level, if we just don't

2    have something, I could see that, but for purposes of pleading

3    and in the light most favorable, I'll leave it at that.  I

4    think the Court understands my comments.

5            THE COURT:  Well, yes, I mean, it's often the case

6    that people say, well, how would I know unless I take

7    discovery, but that isn't what the law is.

8            You have to have a plausible theory.  And discovery

9    is not just a -- an opportunity to sort of test your theory,

10   see if you have any facts that support it.

11           You may well have a theory, but there doesn't seem to

12   be any facts that make it plausible under these circumstances.

13           But I will issue a, you know, a written order and

14   revisit the arguments that you have made today.

15           MR. MOLDOVSKY:  Thank you, Your Honor.

16           THE COURT:  As far as the other case, I will also

17   issue a scheduling order consolidating those cases.  Okay,

18   well, thank you for coming in.  Thank you.

19           MR. MOLDOVSKY:  Thank you, Your Honor.

20           MR. HAINES:  Thank you, Your Honor.

21           THE BAILIFF:  All rise.

22       (Proceedings concluded at 2:39 p.m.)

23

24

25

1                              **CERTIFICATE**

4         I, Chris Hwang, court approved transcriber, certify

5 that the foregoing is a correct transcript from the official

6 electronic sound recording of the proceedings in the above-

7 entitled matter.

13 _____        October 18, 2021

14 Chris Hwang              Date

15 Transcriber