1                    UNITED STATES DISTRICT COURT

2                  EASTERN DISTRICT OF PENNSYLVANIA

3    JONATHAN R. MILLER,
                                     Case No. 2:21-cv-02219-ER
4                Plaintiff,

5    v.                              Philadelphia, Pennsylvania
                                     November 10, 2021
6    BREM MOLDOVSKY, et al,          10:01 a.m.

7                Defendants.

8

9                   TRANSCRIPT OF MOTION HEARING
                BEFORE THE HONORABLE EDUARDO C. ROBRENO
10                 UNITED STATES DISTRICT COURT JUDGE

11   APPEARANCES:
     For the Plaintiff:             Jonathan R. Miller, Esq.
                                    100 Overlook Center, 2nd Floor
12                                  Princeton, NJ 08540

13   For the Defendants:            Brem Moldovsky, Esq.
                                    Brem Moldovsky, LLC
14                                  100 N. 18th Street
                                    Suite 300
15                                  Philadelphia, PA 19103

16                                  Gerald J. Pomerantz, Esq.
                                    Gerald Jay Pomerantz & Associates
17                                  1500 John F Kennedy Blvd
                                    2 Penn Center, Suite 1320
18                                  Philadelphia, PA 19102

19   Court Recorder:               Inna Goldshetyn

20   Clerk:                        Ronald Vance

21   Transcription Service:        Chris Hwang
                                   Abba Reporting
22                                 PO Box 223282
                                   Chantilly, Virginia  20153

23

24   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.

25

1                                    **INDEX**

2

3                                                          <u>Page</u>

Court's Ruling                                   27

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Call to order at 10:01 a.m.)

2              THE CLERK:  All rise.  United States District Court

3     for the Eastern District of Pennsylvania is now in session, the

4     Honorable Eduardo C. Robreno presiding.

5              THE COURT:  Good morning, please be seated.

6              ATTORNEYS (IN UNISON):  Good morning, Your Honor.

7              THE COURT:  Yeah.  Okay, and you may remove your mask

8     when speaking to the Court.  Okay, so we have scheduled here

9     three discovery motions.  Since then, a number of other motions

10    have been filed.

11             And we can also take this opportunity to visit with

12    the overall status of the case and a path forward.

13             So, Mr. Miller, what's the status of the case?

14             MR. MILLER:  The status of the case is that as set

15    out in my various motions, and I guess one or two more to be

16    filed that the Defendants, particularly Mr. Moldovsky and his

17    law firm are stonewalling discovery except for the half

18    redacted 27 pages they've produced, that I've submitted to the

19    Court in connection with a Motion For Relief To Reply that

20    relates to Mr. Stretton's -- the Motion to Compel Mr. Stretton.

21             And Mr. Moldovsky has produced no other documents and

22    has avoided all of my interrogatories that set out in the

23    various motions that I'm happy to argue as that may be.

24             On my part, I just now received this morning a few

25    minutes ago Mr. Pomerantz's responses to certain

1   interrogatories.

2            I glanced at them.  I don't want to render an

3   opinion, but I think that -- well, I don't want to render an

4   opinion.  I'd like to review it further.  I don't want to

5   express any opinion about Mr. Pomerantz or his participation

6   of, you know, in discovery.

7            With respect to myself, we've produced many

8   documents.  I think we're approaching 10,000 pages of

9   documents.

10           Most of those documents were already in the

11  possession of Mr. Moldovsky.  To my knowledge, they may not

12  have been in the possession of Mr. Pomerantz.  Nonetheless, I

13  produced them.

14           THE COURT:  Now, Mr. Conrad is whom?

15           MR. MILLER:  Mr. Pomerantz.

16           THE COURT:  Oh, Mr. Pomerantz, okay.

17           MR. MILLER:  Did I misspeak?  I apologize.

18           THE COURT:  Oh, no, I misunderstood what you say,

19  yeah.  I had not heard that name before, so.

20           MR. MILLER:  Yeah.  And my understanding from Mr.

21  Moldovsky's Motion to Compel, which he just recently filed and

22  I have to file an opposition I guess by Monday, is that it was

23  improper for me to give him documents that he already has.

24           There are certain documents that he did not

25  previously have.  It's a well-settled principle of law that I

1    can not be compelled to produce documents that don't exist.

2           I've made certain objections.  I believe those

3    objections are well founded, but the overall -- I think there's

4    an overall disparity in terms of engaging in good faith with

5    discovery obligations between the two sides.

6           We have a number of depositions scheduled or yet to

7    be scheduled.  Mr. Stretton's deposition, he's probably the

8    primary fact witness in this matter.

9           I noticed that quite some time ago for Monday, which

10   I think is the 15th.  Just a couple minutes ago, I got an email

11   from Mr. Moldovsky, you know, saying I can't hand it in.  I

12   just looked at it on my cell phone basically announcing that

13   he's blocking Mr. Stretton from appearing at the deposition on

14   Monday.  He objects for, I'm not sure what reasons, but he's,

15   you know he's blocking Mr. Stretton.

16          I view that as highly improper because Mr. Stretton

17   was subpoenaed and is a fact witness.  Whatever role he may

18   play as an expert witness, you know, that's yet to be visited,

19   but for my purposes, the deposition on Monday was said to

20   be -- is set to be a deposition of a fact witness.

21          It's also set to be in person at Mr. Stretton's

22   office, you know, with appropriate Covid precautions, I believe

23   that --

24          Well, Mr. Moldovsky hasn't indicated, but I believe

25   everyone else is fully vaccinated.  So, I don't know the reason

```
1  why the deposition cannot proceed in person.  Mr. Moldovsky has

2  objected.

3           THE COURT:  Well, okay.  Okay, so.

4           MR. MILLER:  Sir, may I?

5           THE COURT:  Massive confusion.

6           MR. MILLER:  Yeah, we've noticed --

7           THE COURT:  That's really the bottom line.

8           Mr. Moldovsky, what's your view of the status of the

9  matter?

10          MR. MOLDOVKY:  Thank you, Your Honor.  A number of

11 things.  First replying to what Mr. Miller said, we've turned

12 over everything requested and really more than what needs to

13 be, what should be.

14          Regarding Mr. Miller's turnover for a moment, it's

15 highly deficient.  He literally just gave us an endless pile of

16 papers that we already have, which is supposed to look like,

17 oh, I've turned over 10,000 pages, but we all have it already.

18          He's turned over literally nothing of what we're

19 seeking.

20          THE COURT:  Uh-huh.

21          MR. MILLER:  And Your Honor didn't ask us about each

22 motion to argue each motion.

23          THE COURT:  No, we're not talking about that.  No.

24          MR. MOLDOVKY:  Right, so just the matter I would say,

25 and to really address that, I would say this is a matter, Your
```

1   Honor, that I truly think that a mutual observer would say this

2   matter should settle.  It's not a good thing for the people

3   involved.  It doesn't forward their lives.  It doesn't help the

4   court system.

5           And we've worked very hard to try to do that and got

6   into a place where people are willing to walk away, but then,

7   Miller was seeking to silence us.  And I can't silence myself

8   about my life.

9           So, when you asked what's the status, that's the

10   status.  And as far as status, literally, we get correspondence

11   almost every day.

12           Mr. Miller is using this as an opportunity, like it's

13   been for the last three and half years, to utterly bombard us,

14   whether it's Mr. Stretton, Mr. Pomerantz, attorneys -- other

15   attorneys who've seen this.  People have not seen this before.

16   We have hundreds of years of attorneys with experience with law

17   and have not seen this.

18           This is what Mr. Miller does.  It is nonstop --

19   we -- bombarding us.  We barely can function, barely can live

20   our lives.

21           Our paralegal, Mr. Pom -- we can all explain what's

22   happening.  And it's basically inane issues like 10,000

23   documents that we already have.  I don't need what I already

24   have.

25           THE COURT:  Uh-huh.

1        MR. MOLDOVKY:  So, I can go further, but to give you

2   a big picture answer --

3        THE COURT:  Uh-huh.

4        MR. MOLDOVKY:  -- that's the big picture answer.  And

5   we're doing our best.  We're following everything.  We're

6   responding to everything.  We asked discovery questions.  We've

7   got --

8        THE COURT:  Well, let me ask you a question since

9   we're talking about the general status of the matter.

10        MR. MOLDOVKY:  Yeah.

11        THE COURT:  I appreciate your counterclaim has been

12   narrowed significantly, but it doesn't appear to have much of a

13   connection to the main claim.  It appears to be a collection of

14   other incidents and experiences that you had with Mr. Miller in

15   separate occasions.

16        The Bucks County seems to me is a fairly

17   straightforward, factual case.  The counterclaim raises a

18   number of other issues.

19        How are they connected?  I know they're not connected

20   to the extent that they are not compulsory, but how do we

21   benefit by trying these cases together?

22        MR. MILLER:  I would say and I thought about that --

23        THE COURT:  Yeah.

24        MR. MILLER:  -- and I'm happy to address that.  I

25   would say a main connection point between Mr. Miller's claims

1    and my counterclaims is very simple.

2            And basically, Mr. Miller's claims are saying that

3    during the litigation with -- between my law firm and Mr.

4    Ellner and Lightbox, where Mr. Miller was involved, that during

5    that, they say that my Bucks County action was like a

6    collateral attack, it was a side attack, it was -- and so while

7    that dispute's going on, I did this whole collateral attack to

8    try to gain leverage in that case.

9            Well, all the things they did were also a collateral

10   attack to try to gain leverage.  I'd say to -- that most

11   simply, Your Honor, is the most direct connection.

12           THE COURT:  Uh-huh.

13           MR. MOLDOVKY:  I can go on, but that simply put is

14   the most direct connection, that there were -- that both sides

15   were alleging that these activities were collateral attack and

16   an attack meant to impact the fee dispute in the dispute.

17           THE COURT:  That's the basis of your counterclaim

18   then?  The theory of your counterclaim is that?

19           MR. MOLDOVKY:  No, I would say that's the connection

20   point.

21           THE COURT:  Okay.

22           MR. MOLDOVKY:  The theories are -- the theory is very

23   simple.  Basically, they sought without basis and it's already

24   been found by the courts in New York to have no basis.

25           They did this massive attack.  And, again, I get

1     noticed in the middle of the night that goes on.  Aside from

2     the filings, there's an endless amount of letters.

3              And it was a vast attack on me that they then got a

4     TRO for a year.  And then, that was denied when a

5     permanent -- or dissolved the permanent injunction was denied.

6              So, the idea is it was a whole basis injunction that

7     has no basis, the courts found that had no basis.  But then

8     they had three sanction motions that in large part were looking

9     to punish me based on violations of that.

10             And, again, it was all unfounded.  And it was all

11    very vicious and took a tremendous amount of time.

12             Additionally, we're also alleging that this very

13    action is an abuse of process.

14             THE COURT:  Uh-huh.

15             MR. MILLER:  We're not, you know, currently alleging

16    malicious prosecution, but an abuse of process that doesn't

17    need termination to be alleged.

18             And why is this an abuse of process?  Because Mr.

19    Miller has made it very clear again and again that his purpose

20    here is really seeking to silence me and to silence me about

21    public record information.

22             And he'd walk away from all of this if I would just

23    be silent, if I just wouldn't talk about his misconduct.

24             THE COURT:  Uh-huh.

25             MR. MOLDOVKY:  And that's not -- he can't get that

1    relief here.  He hasn't alleged it.  It's already been denied

2    by the Appellate Division, the New York trial court, the New

3    Jersey trial court.  He abandoned his action there.  So, he

4    can't possibly get this relief.

5              THE COURT:  Yeah.

6              MR. MOLDOVKY:  But he's pounding on me to give him

7    this relief.

8              THE COURT:  See --

9              MR. MOLDOVKY:  And that's part of it, too.

10             THE COURT:  -- one dynamic that is missing in this

11   case, which is ordinarily present in civil litigation and which

12   has the effect of limiting the parties' desires in -- to see

13   what legal relief can be obtained is that you're both lawyers.

14   And it doesn't cost you any money to trade insults and wild

15   theories to each other.

16             You can do that in your spare time.  Instead of

17   watching Sunday night football, you can write briefs and

18   motions and tell each other what it is.

19             You're insulated from defamation by the fact that

20   they're court pleadings.  You're insulated economically,

21   because you don't have to hire a lawyer.

22             And you just simply dump everything on the Court and

23   says to the Court you figure it out while we play.

24             MR. MOLDOVKY:  Your Honor --

25             THE COURT:  You know, and you've done that now

1    through three states, several courts.  And you've ended up

2    here.  And it's just not reasonable to simply dump all of this

3    on the Court.

4            MR. MOLDOVKY:  Your Honor, I --

5            THE COURT:  I think what's appropriate here is to

6    appoint a Special Master.  And a Special Master will sit down

7    with you as long as is necessary, of course at a fee, but as

8    long as is necessary and parse all this out and see who is

9    entitled to what documents.

10           We -- the public interest can not sustained this

11   barrage.  And not only I speak for this Court, I think I speak

12   for the Court in Bucks County, in the state of New Jersey, in

13   the state of New York.  This is a travelling circus.

14           MR. MOLDOVKY:  Your Honor --

15           THE COURT:  Okay, okay, hold on a minute.

16           MR. MOLDOVKY:  -- basically everything --

17           THE COURT:  Hold on a minute.

18           MR. MOLDOVKY:  I'm sorry.

19           THE COURT:  And we -- you know, I just can't

20   administer the docket of this Court with -- and I'm not saying

21   that this doesn't have any merit.  I mean, there may be merit

22   to some of these claims.

23           But what I'm saying is the manner in which this

24   litigation is being conducted is really inconsistent with the

25   Rules.  It's inconsistent with professionalism.

1          It does not give anybody related to this litigation,

2     you know, much credit for understanding, you know, the Rules or

3     applying the Rules.

4          And it's highly personal, which is another problem

5     when you don't have a lawyer because the litigants may have

6     personal animus and other motives, but there's a lawyer there

7     whispering on the ear of the litigant, you know, this doesn't

8     make sense.  You know, we shouldn't do this and that.

9          You don't have that limit here.  This is a free for

10    all.  It's like wrestling on television.  You're just trying to

11    do each other.  And it's not going to be done.

12         There's a number of things that can be done.  One

13    could be to sever those cases and make them two different

14    cases.

15         As I said, we should send this to a Special Master,

16    who will try to figure out the litigation, and if the parties

17    are interested, settle the case.

18         If they're not interested and you both want to

19    continue to battle this, well, you have a referee.  And the

20    referee will be the Special Master.

21         So, we're not -- I mean, I reviewed the motions that

22    are up for today, most of which really with a phone call could

23    have been resolved.

24         It's just difficult to understand.  So, what's your

25    explanation as to how we resolve this matter?

1          MR. MOLDOVKY:  First, I just want to say, Your Honor,

2   maybe except for a word here or there, everything you just

3   said --

4          THE COURT:  Yeah.

5          MR. MOLDOVKY:  -- makes so much sense and it's very

6   much in line with what we're trying.

7          THE COURT:  Uh-huh.

8          MR. MOLDOVKY:  I will point out that's why I

9   originally got another lawyer involved.  The problem is anybody

10  I get involved, he targets.

11         THE COURT:  Uh-huh.

12         MR. MOLDOVKY:  So, I got a lawyer involved and he

13  sued him.  I have another lawyer involved, so the name Steffan

14  Malcoff, (phonetic), who had entered on one of the other cases,

15  who had come to some of the hearings.

16         He was intending to enter here and is intending to

17  enter here.  He actually started off his practice in PA.  He's

18  now up in (indiscernible), it's okay.  We realize he

19  wasn't -- he never entered here.

20         So, literally, about two months ago, he went to the

21  paperwork to enter here.  We're just waiting for him

22  to -- we're just waiting for him to get entered here.  He's

23  just waiting for the paperwork.

24         He already sent in, I believe, it's about two months

25  ago.  It's -- once he gets it, he was going to enter so Your

1    Honor should have some comfort that Steffan Malcolf has been

2    advising and trying to help me.

3              Again, I got Mr. Pomerantz in.  And I'm actually

4    pretty well known as a place who seeks out counsel all the

5    time.  I sought out Mr. Miller's counsel.  He used to help me

6    with things.

7              So, I would say your --

8              THE COURT:  Well, Mr. Pomerantz is a party here as

9    well so --

10             MR. MOLDOVKY:  Right, I got involved --

11             THE COURT:  -- he can't be a lawyer and a party.  I

12   mean, that's really the problem.

13             MR. MOLDOVKY:  Right.

14             THE COURT:  He's your father-in-law, so that's a

15   second consideration, a family consideration, that is involved

16   here.

17             We don't have the judgment, professional judgment, of

18   nonlitigants that can advise both of you that enough is enough.

19             MR. MOLDOVKY:  Well, Your Honor, we'll just say to be

20   very fair --

21             THE COURT:  Yeah.

22             MR. MOLDOVKY:  -- I've said I've been trying to just

23   get a walkaway.  And I've been on the Defense on this.  This is

24   Mr. Miller's case.

25             THE COURT:  Yeah.

1       MR. MOLDOVKY:  I wish I didn't have to be involved.

2   I would do anything just to move on with my life.

3       THE COURT:  Yeah.

4       MR. MOLDOVKY:  It's -- to be very honest, Your Honor

5   --

6       THE COURT:  Yeah.

7       MR. MOLDOVKY:  -- it's me who's being pursued.  You

8   saw I resolved with Mr. Ellner.  I walked away from a half a

9   million dollars in fees.  I did everything I could to be

10  resolved.

11      And, again, Mr. Malcoff has been advising me.  But

12  again, Mr. Pomerantz initially wasn't sued and he was the other

13  attorney I got involved.

14      THE COURT:  Okay.  Mr. Miller?

15      MR. MOLDOVKY:  Also, Your Honor, one more thing I

16  would just say --

17      THE COURT:  Yes.

18      MR. MOLDOVKY:  -- I think both parties have made

19  noises that welcoming a magistrate or somebody, some neutral

20  person is very much welcome.

21      THE COURT:  Okay.

22      Thank you, Your Honor.  I think the appointment of a

23  magistrate and Special Master --

24      THE COURT:  No, I said a Special Master.  It's not

25  going to be a magistrate.

1          MR. MILLER:  Okay, a Special Master's also a good

2    resolution with the one comment that I think there's a

3    disparity in each side settle -- I'm sorry, discovery

4    compliance.

5          And I don't think the Special Master's fee should be

6    split automatically down the middle.  I think there should do

7    some accounting for which side's being reasonable.

8          THE COURT:  Well, the Special Master would recommend

9    how the fee should be paid.

10         MR. MILLER:  That's fine.  Thank you, Your Honor.

11         And with respect to settlement after it -- as I think

12   is in my papers, for what it's worth, it was the -- just before

13   Yom Kippur, which for Jews is a great opportunity to ask

14   forgiveness of fellow people, you know, Jews and non-Jews.

15         Mr. Moldovsky asked me he wanted to settle for zero

16   dollars and he asked me to provide terms to settle for zero

17   dollars.

18         And I gave him those terms.  And part of those terms

19   would be basically the Court willing to have a confidentiality,

20   nondisparagement provision.  And his response was to demand --

21   to reject that and to demand $500,000.

22         Just before entering this Court, I exchanged a couple

23   of words, pleasant words, with Mr. Pomerantz.  And he expressed

24   his view that this case should have been settled long, long

25   ago.  And he would try his best and he's tried his best.  He's,

1    you know, to use his statement, to resolve this matter.

2              I reached out to Mr. Stretton in terms of

3    coordinating his --

4              THE COURT:  You --

5              MR. MILLER:  Mr. Stretton also in terms of --

6              THE COURT:  Yeah, okay, but he's also involved in the

7    case.

8              MR. MILLER:  Yes, and he also volunteered.

9              THE COURT:  Yeah.

10             MR. MILLER:  I was coordinate -- I was trying to

11   coordinate dates for a deposition I think or compliance with

12   discovery.  I don't remember.

13             He said on his own volition that this case should

14   have been settled.  And he'd be happy to broker -- I don't know

15   that he can.  I think whatever broker settlement that he'd be

16   happy to broker a settlement.

17             This thing is a train that's gone off the rails for

18   three years now.  I don't understand what --

19             THE COURT:  No, you both have -- let me just

20   interrupt you to say you both have practices.  You have

21   clients.  I'm sure that's been affected.

22             You have families and been in litigation, as you

23   know, been a party in the litigation.  It's just burdensome.

24             MR. MILLER:  It --

25             THE COURT:  It's just sucking up the energy that you

1      ought to be spending somewhere else.

2              Aside from that, you know, money is fungible, but

3      life is short.

4              MR. MILLER:  Totally agree.

5              THE COURT:  Okay.

6              MR. MILLER:  For the last three years, I've been

7      suffering from these attacks.  Mr. Moldovsky's --

8              THE COURT:  Well, okay.

9              MR. MILLER:  Mr. Moldovsky said that he's playing

10     Defense.  My words, but --

11             THE COURT:  Yeah.

12             MR. MILLER:  -- basically, that he's on the defense.

13     He just filed another lawsuit in the District of New Jersey.

14             THE COURT:  Okay.

15             MR. MILLER:  Everything that Your Honor just

16     (indiscernible) here --

17             THE COURT:  Well, I would think that a settlement

18     here needs to be global --

19             MR. MILLER:  Absolutely.

20             THE COURT:  -- and finished.  And you're done with

21     each other.

22             And I think what we will do, and I have a candidate

23     in mind, which is a former magistrate Judge Thomas Rueter, who

24     is at JAMS now, but who worked with me for 25 years.

25             And he's the finest human being as well as lawyer

1     that I can recommend because I think this is a case that not

2     only involves legal principles, but I think it involves some

3     humanity in here that needs to be done.

4           And what I would propose to do is to ask if he's

5     willing to undertake this assignment to ask Judge Rueter to

6     convene a conference first or maybe both together at his

7     judgment that will deal with both the discovery issues and with

8     settlement of the case on a global basis because I think to be

9     able to understand the discovery issues, you have to understand

10    the whole panorama here.

11          So, he'd be in a position to go both ways or either

12    way.  If there's a prospect for settlement and I'm -- some -- I

13    don't think any of you have appeared before me here, but my

14    philosophy is that the parties settle the case.

15          I don't force anybody to settle the case.  I provide

16    opportunities, but if you come back and you say, hey, I paid

17    $400 to get into court and I want a jury to tell me, Judge,

18    forget you, I want them to tell me that.  And if you have a

19    legal claim, then it's up to you.

20          I think there are cases that just cry out to be

21    settled.  This is one of them.  But if you don't want to

22    settle, forget it.  You know, you can stand on your own rights.

23          But I think that Judge Rueter can be helpful.  You'd

24    also -- you'll get an independent evaluation of what your case

25    is.

1          That's another problem not having a lawyer that is as

2   you know from your own clients, your own clients have a

3   distorted view of their own -- the merit of their own cases.

4          They think they have a much stronger case.  They

5   don't understand the -- what can happen in Court.  They don't

6   understand that there's no sure thing.

7          They have a lawyer, you know, whispering in their

8   ear.  You don't have a lawyer whispering in your ear.

9          And as capable lawyers as you are, what do they say

10  about a lawyer who represents himself has a fool for a client?

11  And I don't mean that to be insulting --

12          MR. MILLER:  No.

13          THE COURT:  -- but I mean that to kind of be

14  descriptive of the difficulty, a doctor who tries to cure

15  himself, you know, has a fool for a patient.  That's what I'm

16  trying to get at before we, you know, before we face a disaster

17  here.

18          MR. MILLER:  Thank you, Your Honor.  I appreciate

19  that.  Short of, you know, offering a zero dollar settlement

20  and --

21          THE COURT:  Yeah, well --

22          MR. MILLER:  -- in exchange for, you know, a

23  nondisparagement --

24          THE COURT:  I don't know -- well, maybe that's what

25  the case is worth.  I have no idea.

1          MR. MILLER:  I mean, I can't --

2          THE COURT:  Yeah.

3          MR. MILLER:  -- I'm not going to pay him for my own

4     claim.  That's --

5          THE COURT:  Well, I don't know.  That you'll tell

6     Judge Rueter.

7          And as I said, if you don't want to settle, you don't

8     have to settle, but the Court is not going to sort this out for

9     both of you to serve both as a judge and as a psychoanalysis of

10    your problems.  That -- this is not the place to do it.

11         So, I think what we'll do is the following.  I think

12    I'm going to stay the case.  I'm going to ask Judge Rueter to

13    convene a conference with you to look at both the discovery of

14    the matter and the settlement of the matter.

15         If he can settle the matter, that's fine.  If he can

16    not settle the matter, then to resolve the discovery issues.

17         MR. MILLER:  Your Honor, I respectfully request both

18    parties have put forth considerable efforts --

19         THE COURT:  Yeah.

20         MR. MILLER:  -- to brief.  I think three different

21    motions are fully briefed at this point.  Could those be

22    decided by the Court on submission without oral argument?

23         THE COURT:  Which motions?

24         MR. MILLER:  There's my Motion to Compel with respect

25    to Mr. Stretton.

1          THE COURT:  No, no, I will decide nothing further at

2    this point --

3          MR. MILLER:  Right.

4          THE COURT:  -- until you have the conference with

5    Judge Rueter and he sorts out -- the only thing is he will not

6    decide a Motion to Dismiss.  He will not do a merits -- a

7    dispositive motion.

8          Those I would decide if they're warranted at an

9    appropriate time, but all pre-trial discovery motions or

10   scheduling motions will go to him and he will sort this out.

11         The only thing I'd like to hear his -- once he meets

12   with you whether or not if the case is not settled whether or

13   not it should be severed.

14         And we would do and do Bucks County if that's

15   feasible and get that out of the way.  And then, we do the

16   counterclaim, whatever's left of that counterclaim separate.

17         It may be that his recommendation would be the other

18   way.  It's only a recommendation.  It's my call under Rule 42,

19   but I got a lot of trust on Judge Rueter and he'll be able to

20   drill down into these motions.

21         I mean, I have my sense of what they are and -- but I

22   think he'll be able to impart his wisdom and spend the time

23   that is necessary to sort this out.

24         And in a way, to serve almost as your independent

25   lawyer since you don't have a lawyer.  He'll be able to do

1    that.  So, that's where I'm going.

2              So, any final comments?

3              MR. MILLER:  I know that this Court has no authority

4    over the proceeding in the District Court of New Jersey --

5              THE COURT:  Yes.

6              MR. MILLER:  -- but it may be helpful to both parties

7    if Your Honor would express some opinion as to --

8              THE COURT:  Yeah.

9              MR. MILLER:  -- whether the New Jersey action --

10             THE COURT:  Who's the judge in New Jersey?

11             MR. MOLDOVKY:  Your Honor, it's -- I --

12             MR. MILLER:  Quraishi.

13             MR. MOLDOVKY:  -- I don't remember the name.  I think

14   it's a new judge, but I don't remember the name.

15             THE COURT:  Oh, is it in Camden?

16             MR. MILLER:  No.

17             MR. MOLDOVKY:  It's a federal.

18             THE COURT:  Right.

19             MR. MOLDOVKY:  It's in federal court there.  I think

20   in Trenton.

21             THE COURT:  Oh, in Trenton.

22             MR. MILLER:  It's Judge Quraishi, Q-U -- I'm probably

23   mispronouncing it.

24             THE COURT:  Oh, yes.

25             MR. MILLER:  It starts with a Z, the first name --

1          THE COURT:  Yes.

2          MR. MILLER:  -- but Quraishi.

3          THE COURT:  Well, she's not a new judge.

4          MR. MOLDOVKY:  I think it's a he.

5          MR. MILLER:  He's a new judge appointed in May.

6          THE COURT:  Oh, then, it's someone different than --

7          MR. MILLER:  Q-U-R-A-I-S-H-I.

8          THE COURT:  Okay, well --

9          MR. MILLER:  Pakistani --

10          THE COURT:  If you think that there is any relation

11  here -- the two of you are the parties?

12          MR. MILLER:  Yeah.

13          MR. MOLDOVKY:  Yes, Your Honor --

14          THE COURT:  Yeah.

15          MR. MOLDOVKY:  -- and my entity, but I would just ask

16  if Your Honor hasn't seen it that I don't know that Your Honor

17  should be --

18          THE COURT:  No, I don't want to get involved.

19          MR. MOLDOVKY:  -- making an opinion.

20          THE COURT:  All I would say is that I would ask you

21  maybe for you to consider to say to the judge simply we're

22  engaged in a global settlement.  We'd like to get, you know, 90

23  days or some such a thing.

24          And then, we'll come back here and do the -- I have

25  no idea what the case is about, but it seems a waste of

1  resources to proceed with no matter what the case is and what

2  the merits are, if you can resolve the whole thing.

3          MR. MOLDOVKY:  No, no, I --

4          THE COURT:  Was just simply that.  And if you would

5  like me to, both you agree, then I will contact the judge and

6  ask him and say, look, there is a -- the potential for a global

7  settlement.

8          Would you agree to grant the parties some period of

9  time to do that?  And if they can not, they'll come back here.

10 No prejudice.

11         MR. MOLDOVKY:  There's no objection from me to that

12 whatsoever, Your Honor.

13         THE COURT:  Okay.

14         MR. MILLER:  I very much appreciate it.

15         THE COURT:  Well, give my law clerk then the caption

16 of the case and the New Jersey number.  And we'll contact the

17 judge and ask him to do that.

18         What stage is that in?

19         MR. MOLDOVKY:  We just -- we're waiting -- we just

20 filed a suit and served.  We haven't even gotten the first

21 filing --

22         THE COURT:  Okay.

23         MR. MOLDOVKY:  -- answer or motion.  It's that early.

24         THE COURT:  Okay.

25         MR. MILLER:  I can give the docket number in a

1      second.  I have it up here.

2              MR. MOLDOVKY:  We can give it to the law clerk

3      afterwards.

4              THE COURT:  Okay.  So, to make a long story short,

5      we're going to stay the proceedings here.  Nobody needs to do

6      anything more until further order of the Court.

7              We will, pursuant to Rule 53, appoint Thomas Rueter.

8      And I cannot appoint him till I talk to him, but assuming that

9      he'd be willing to undertake this -- I have not discussed this

10     at all with him, maybe I should have, I will appoint Thomas

11     Rueter.

12             So, to serve as a Special Master with authority to

13     both assist the parties in settlement of the case and/or rule

14     on all discovery motions that are currently pending before the

15     Court and to appropriately report to the Court thereafter.

16             And I'll have an order spelling out his authority, et

17     cetera, fees to be apportioned by the Special Master at the

18     conclusion of the litigation.

19             I'm not sure, speaking of fees, I think what may

20     happen, which I think JAMS you pay ahead of time some amount,

21     but I think at the conclusion, he can then apportion what that

22     amount may be.

23             So, if one party of course is the culprit, that could

24     be part of the resolution, how the fees are going to split.

25     So, that'd be a way to do it as well.

1    So, I'm pleased that both of you seem to be of the

2    mind to at least taste the wine here.  And we would be -- at

3    the meantime, is there something else we can do, we will do

4    that, but I think this is a necessary step in either litigation

5    or resolution of all these claims.

6         Okay, anything else?

7         MR. MILLER:  No, thank you, Your Honor.

8         THE COURT:  Okay.

9         MR. MILLER:  Thank you for your wisdom here, Your

10    Honor.

11         THE COURT:  Very good.  Okay, we're adjourned.  Thank

12    you both.

13         MR. POMERANTZ:  Thank you, Your Honor.

14      (Proceedings concluded at 10:32 a.m.)

15

16

17

18

19

20

21

22

23

24

25

1        **CERTIFICATE**

2

3

4            I, Chris Hwang, court approved transcriber, certify

5    that the foregoing is a correct transcript from the official

6    electronic sound recording of the proceedings in the above-

7    entitled matter.

8

9

10

11

12

13    _____        November 26, 2021

14    Chris Hwang                Date

15    Transcriber

16

17

18

19

20

21

22

23

24

25