# Exhibit 2

*(to Miller Cert., dated 2/11/22)*

Jonathan R. Miller, Esq., *pro se*
PA #201210
100 Overlook Center, 2nd Floor
Princeton, N.J. 08540
Tel. 609-955-1226
Fax. 609-964-1026
jonathan.miller@lawyer.com

| BREM MOLDOVSKY, L.L.C. and BREM MOLDOVSKY, Plaintiffs, v. JONATHAN MILLER, ESQUIRE D/B/A/ THE LAW FIRM OF JONATHAN R. MILLER, ANDREW ELLNER, LIGHTBOX VENTURES, LLC, and LIGHTBOX CAPITAL MANAGEMENT, LLC, Defendants | COURT OF COMMON PLEAS BUCKS COUNTY, PENNSYLVANIA No. 2019-00793 |
|---|---|

## MOTION FOR PROTECTIVE ORDER

Defendant Jonathan R. Miller, Esq., *pro se*, hereby moves this Honorable Court to grant his motion for a protective order and to quash the demand for pre-complaint discovery served by Plaintiffs Brem Moldovsky, LLC and Brem Moldovsky, Esq. (together, "Moldovsky"), and in support thereof avers as follows:

1. This matter was commenced on or about February 5, 2019 by way of Praecipe to Issue Writ of Summons filed by Moldovsky, a copy of which is attached as **Exhibit 1**.

2. Moldovsky's Civil Cover Sheet states that this matter concerns alleged legal malpractice. *See id.*

3. On March 1, 2019 I was served with Moldovsky's demand for pre-complaint discovery (the "Demand"), a copy of which is attached as **Exhibit 2**.

4. The Demand comprises three interrogatories and three demands for production of documents and things, all of which are focused on recorded telephone calls between Moldovsky and

Defendants Andrew Ellner, Lightbox Ventures, LLC ("LBV"), Lightbox Capital Management, LLC ("LBC") and Mr. Ellner's wife, a non-party herein. *See id.* (Mr. Ellner, LBV and LBC are referred to herein as "Lightbox".)

5. Although Moldovsky frames this matter as sounding in legal malpractice, I never represented the corporate plaintiff, Brem Moldovsky, LLC, a law firm, in any capacity.

6. Instead, I represented Mr. Moldovsky and his wife in a civil dispute between them and Abrams Hebrew Academy, a non-party in this matter, over allegedly unpaid tuition and other issues. (On information and belief, there is no relationship whatsoever between Abrams and Lightbox. On information and belief, Abrams is a private school located in Yardley, Pennsylvania,[1] while Mr. and Mrs. Ellner reside in New York City, and Mr. Ellner's companies, LBV and LBC, are both single-members LLCs based in New York City. On information and belief, Mr. Moldovsky is a Pennsylvania attorney (PA #79485) since 1997, who also practices law in New York.)

7. In order to further establish the limited scope of my prior representation of Mr. Moldovsky, I am attaching copies of: my November 2015 retainer agreement with Mr. Moldovsky (**Exhibit 3**); the discontinuances filed in this Court in the matters of *Abrams Hebrew Academy v. Moldovsky* ("*Abrams I*"), No. 2015-02876 (**Exhibit 4**) and *Moldovsky v. Abrams Hebrew Academy et al.* ("*Abrams II*"), No. 2015-03839 (**Exhibit 5**); and a complete transaction history for my representation of Mr. Moldovsky and his wife in both matters (**Exhibit 6**).[2]

---

[1] *See* http://abramsonline.org/.

[2] To the extent that Mr. Moldovsky may argue that any of this information is confidential, I respectfully point out that the discontinuances were filed on the public docket of this Court and that, in any event, Pa. RPC 1.6(c)(4) permits disclosure of confidential information "to the extent the lawyer reasonably believes necessary . . . to respond to allegations in any proceeding concerning the lawyer's representation of the client." *See* Pa. RPC 1.6, 204 Pa. Code § 81.4.

8. As Exhibits 3-6 confirm, my representation was strictly limited to *Abrams I & II*; I served in a co-counsel capacity, assisting Mr. Moldovsky who was lead counsel; both matters were *de facto* settled by July 2016 and formally discontinued in October 2016; I gave the Moldovskys a steep discount on my hourly rate as a courtesy, because at that time Mr. Moldovsky and I were friends; and I last invoiced him for the dispute with Abrams Hebrew Academy in May 2016.

9. Pa.R.C.P. 4003.8, governing pre-complaint discovery, states:

> (a) A plaintiff may obtain pre-complaint discovery where the information sought is material and necessary to the filing of the complaint and the discovery will not cause unreasonable annoyance, embarrassment, oppression, burden or expense to any person or party.
>
> (b) Upon a motion for protective order or other objection to a plaintiff's pre-complaint discovery, *the court may require the plaintiff to state with particularity how the discovery will materially advance the preparation of the complaint.* In deciding the motion or other objection, the court shall weigh the importance of the discovery request against the burdens imposed on any person or party from whom the discovery is sought.

*Id.* (emphasis added).

10. Pre-complaint discovery is not permitted unless a two-prong test is satisfied: "(1) the information sought must be material and necessary to the filing of the complaint; and (2) the discovery will not cause unreasonable annoyance, embarrassment, oppression, burden, or expense to any person or party." *Tullytown Borough v. Armstrong*, 129 A.3d 619, 625 (Pa. Commw. 2015), *rearg. den.*, 2016 Pa. Commw. LEXIS 53 (Pa. Commw., Jan. 24, 2016), *lv. den.*, 2016 Pa. LEXIS 1972 (Pa., Sept. 8, 2016).

11. Indeed no discovery of any kind is permitted which is sought in bad faith, would cause unreasonable annoyance, embarrassment, oppression, burden or expense to the deponent or any person

or party, or would require the deponent or any party of witness to make an unreasonable investigation in order to respond. *See* Pa.R.C.P. 4011(a), (b), (e).

12. The Pennsylvania Supreme Court has emphasized that pre-complaint discovery must be quashed unless the court finds that the plaintiff is acting in good faith and can demonstrate probable cause that the information sought is both material and necessary to preparing the complaint:

> [T]o obtain pre-complaint discovery a litigant should be required to demonstrate his good faith as well as probable cause that the information sought is both material and necessary to the filing of a complaint in a pending action. A plaintiff should describe with reasonable detail the materials sought, and state with particularity probable cause for believing the information will materially advance his pleading, as well as averring that, but for the discovery request, he will be unable to formulate a legally sufficient pleading. Under no circumstance should a plaintiff be allowed to embark upon a "fishing expedition," or otherwise rely on an amorphous discovery process to detect a cause of action he lacks probable cause to anticipate prior to the pre-complaint discovery process under this standard. The reasonableness of a given request, as well as the existence of probable cause and the good faith of the party seeking discovery, are matters for the trial court to determine in the exercise of its sound discretion.

*McNeil v. Jordan*, 586 Pa. 413, 443-44 (2006).

13. Unless the plaintiff affirmatively avers "facts supporting a reasonable belief that the evidence sought will support a cognizable cause of action," *cf. id.* at 444, pre-complaint discovery must be quashed:

> [M]erely stating that the information sought in discovery is material and necessary to draft a legally sufficient complaint, and then simply listing the materials requested, does not satisfy the *McNeil* probable cause standard of presenting facts supporting a reasonable belief that the evidence sought will support a cognizable cause of action.

*Cooper v. Frankford Health Care Sys.*, 960 A.2d 134, 142 (Pa. Super. Ct. 2008).

14. In this case, Plaintiffs are unable to aver specific facts demonstrating their good faith and probable cause that the discovery sought is both material and necessary to prepare a complaint for legal malpractice for several reasons.

15. *First*, any such cause of action by Brem Moldovsky, LLC would be frivolous, because I never represented Mr. Moldovsky's law firm, ever. *See Villella v. Katzen*, 55 Pa. D. & C.4th 9, 20 (CCP 2001) ("Since no attorney/client relationship exists, plaintiff has neither grounds nor standing to sustain an action against defendant . . . for professional negligence."); *Oberecker v. Traud*, 30 Pa. D. & C.4th 404, 409 (CCP 1996); *see also Mursau Corp. v. Florida Penn Oil & Gas Inc.*, 638 F. Supp. 259, 262 (W.D. Pa. 1986) ("to recover for a breach of fiduciary duty by an attorney, the plaintiff has a threshold burden of showing existence of an attorney-client relationship"), *aff'd*, 813 F.2d 398 (3rd Cir. 1987).

16. *Second*, any claim by Mr. Moldovsky, personally, for professional negligence would be time-barred, because my representation of the Moldovskys in *Abrams I & II* concluded more than two years ago — and I have not represented either of them since. 42 Pa.C.S. § 5524(7).

17. *Third*, any malpractice claim against me by Moldovsky would be meritless, because Mr. Moldovsky served in *Abrams I & II* as lead counsel, and it was he who "called all the shots" and ultimately settled both matters on terms that he himself deemed acceptable. *See* Exhs. 3-5. "An attorney cannot be faulted under any legal theory for not being a mind reader." *Riverside Mgmt. Grp., LLC v. Finkelman*, 2018 Pa. Dist. & Cnty. Dec. LEXIS 2573, *42 (CCP, Jan. 16, 2018).

18. The Pennsylvania Supreme Court has stated that "a legal malpractice action in Pennsylvania requires the plaintiff to prove that he had a viable cause of action against the party he wished to sue in the underlying case and that the attorney he hired was negligent in prosecuting or

Motion - 5 -

defending that underlying case (often referred to as proving a 'case within a case')." *Kituskie v. Corbman*, 552 Pa. 275, 281 (1998).

19. In this case, Mr. Moldovsky would need to prove that, even though he himself was lead counsel in both *Abrams* matters, there was something I neglected to do, and, but for said negligence, he would have obtained a more favorable result than the terms of his settlement with Abrams.

20. *Fourth*, Moldovsky cannot demonstrate that the information is material and necessary for preparing a malpractice complaint against me, because there is no connection whatsoever between Moldovsky's discovery demands and my prior representation of Mr. Moldovsky and his wife.

21. *Fifth*, Moldovsky cannot meet the second prong of the two-prong test, i.e. that the discovery "will not cause unreasonable annoyance, embarrassment, oppression, burden, or expense to any person or party." *Tullytown*, 129 A.3d at 625. This is because any and all information that I may have relating to recordings of phone calls between Moldovsky and Lightbox is confidential under RPC 1.6.

22. Although I do not represent Lightbox as co-defendants in this present matter, I represent them in a pending state court matter in New York, *Scarola Malone & Zubatov, LLP v. Ellner et al.*, No. 651326/2017 (N.Y. Sup. Ct., N.Y. County) (the "N.Y. Matter"). In fact, Mr. Moldovsky was the one who recruited me to represent Lightbox in the N.Y. Matter in May 2017 and I have been attorney of record since June 2017, almost two years. At that time, Moldovsky represented Mr. Ellner and LBV in a related federal court matter, *Lightbox Ventures, LLC v. 3rd Home Ltd., et al.*, No. 16-cv-2379 (S.D.N.Y.) (the "3rd Home Matter"), but he withdrew from that matter in April 2018. I replaced Mr. Moldovsky in the 3rd Home Matter a couple of weeks later. That matter has been fully adjudicated, except for an appeal pending before the Second Circuit, *Lightbox Ventures, LLC v. Brem Moldovsky, LLC*, No. 18-3721 (2nd Cir.) (the "Appeal"). I am LBV's counsel of record in the Appeal.

23. Mr. Moldovsky's firm, Brem Moldovsky LLC, was named by Plaintiff as an additional defendant in the N.Y. Matter, and the Moldovsky Firm recently served thirteen cross-claims against Lightbox. There are currently three pending dispositive motions in the N.Y. Matter, including Lightbox's motions to dismiss Plaintiff's complaint and to dismiss the Moldovsky Firm's cross-claims as well.[3]

24. I did not record any phone calls myself, not personally and not through any other person or entity. To my knowledge, I did not participate in any phone calls which were recorded. Any information I may have regarding recorded phone calls was obtained in the course of representing Lightbox. Such information is confidential within the meaning of RPC 1.6.

25. Official Comment 3 to RPC 1.6 states, "The confidentiality rule . . . applies not only to matters communicated in confidence by the client but also to **all information relating to the representation, whatever its source.**" Pa. RPC 1.6, cmt. 3, 204 Pa. Code § 81.4 (emphasis added).

26. Official Comment 4 states that the general prohibition against disclosing a client's confidential information "also applies to disclosures by a lawyer that do not in themselves reveal protected information but could reasonably lead to the discovery of such information by a third person." *Id.*, cmt. 4.

27. Any unauthorized disclosure of such information to Moldovsky would likely violate my ethical and fiduciary duties owed to Lightbox. In fact, Official Comment 21 explicitly instructs that I cannot disclose this information merely because Mr. Moldovsky demands it:

> A lawyer may be ordered to reveal information relating to the representation of a client by a court or by another tribunal or governmental entity claiming authority pursuant to other law to compel

---

[3] The Moldovsky Firm initially moved for dismissal of Plaintiff's claims against it as well, but withdrew that motion and elected instead to serve the thirteen cross-claims against Lightbox in New York, while also demanding pre-complaint discovery from Lightbox and from me, personally, in Pennsylvania.

> the disclosure. ***Absent informed consent of the client to do otherwise, the lawyer should assert on behalf of the client all nonfrivolous claims that the order is not authorized by other law or that the information sought is protected against disclosure by the attorney-client privilege or other applicable law.*** In the event of an adverse ruling, the lawyer must consult with the client about the possibility of appeal to the extent required by Rule 1.4.

*Id.*, cmt. 21 (emphasis added).

28.     As for the issue of good faith: it is my position that Mr. Moldovsky, on information and belief an experienced lawyer,[4] did not act in good faith when he demanded that I disclose my clients' confidential information. He has demanded this information via email and orally any number of times in the N.Y. Matter since November 2018, shortly after he learned that two of his phone calls with Mr. Ellner had been recorded.[5] I believe that Mr. Moldovsky is fully aware that I cannot ethically disclose any information that I may have about recorded telephone calls between him and Mr. Ellner.

29.     Moreover, Mr. Moldovsky commenced this Pennsylvania action *just four days* after serving his firm's thirteen cross-claims against Lightbox in the N.Y. Matter — and now points to this Pennsylvania action as a prime reason to deprive Lightbox of my legal services in the N.Y. Matter. And Mr. Moldovsky's motion to disqualify me in the N.Y. Matter, which is essentially a rehash of his firm's previously denied federal court motion, was filed *on the exact day and time* that he and I were sitting down to engage in court-ordered mediation of the pending Second Circuit Appeal.

30.     In short, Mr. Moldovsky's commencement of a Pennsylvania action for purposes of bolstering a rehashed disqualification motion in New York, together with his issuance of pre-complaint

---

[4] *See* https://www.bremmoldovskyllc.com/attorneys-and-of-counsel/.

[5] According to Mr. Ellner's certification filed in the 3rd Home Matter in October 2018, both recordings were made in New York, not in Pennsylvania.

discovery demands for confidential client information that Mr. Moldovsky knows I cannot ethically disclose, together with the other issues described in this motion, amply demonstrate Mr. Moldovsky's palpable lack of good faith.

31. Moreover, I believe Moldovsky's discovery demands were propounded purely for improper purposes of harassment and intimidation. To the extent that Moldovsky purports to seek information relating to telephone calls and telephone records, Moldovsky has access to its own telephone logs. For example, attached hereto as **Exhibit 7** is a telephone log filed by Moldovsky in the N.Y. Matter just last week, confirming that Moldovsky has complete access to information about who called its office, when, and the length of each call. Notably, this telephone log seems to encompass five or six months' worth of calls with Mr. Ellner and/or me.

**WHEREFORE**, I respectfully request that this Honorable Court grant my motion and enter the attached proposed order.

Respectfully submitted,

Date: March 29, 2019                          /s/ Jonathan R. Miller
                                              Jonathan R. Miller, Esq., *pro se*

### VERIFICATION

I hereby state that the facts set forth by me in the foregoing Motion are true and correct to the best of my knowledge, information and belief. I understand that the statements herein are made subject to the penalties of 18 Pa.C.S. § 4904 (relating to unsworn falsification to authorities).

Date: March 29, 2019                          /s/ Jonathan R. Miller
                                              Jonathan R. Miller, Esq., *pro se*